

```
             UNITED STATES DISTRICT COURT                 United States District Court
           FOR THE SOUTHERN DISTRICT OF TEXAS               Southern District of Texas
                    BROWNSVILLE DIVISION                            FILED

ISRAEL HERNANDEZ-LEIJA,            )                            JAN 1 4 2002
CARLOS OMAR CALVILLO-LOPEZ,        )
JORGE RIVERA-PULVIDA,              )                           Michael N. Milby
JOSE ANTONIO ESPARZA, and          )                            Clerk of Court
DIONICIO GRIMALDO-BARRIENTOS,      )
   In their own name and right,    )
   and on behalf of all others     )
   similarly situated,             )
                                   )
v.                                 )    C.A. No.  01-206
                                   )
E.M. TROMINSKI, et al,             )
_____)
```

**APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION WITH INCORPORATED POINTS AND AUTHORITIES**

Israel Hernandez-Leija, Carlos Omar Calvillo-Lopez, Jorge Rivera-Pulvida, Jose Antonio Esparza, and Dionicio Grimaldo-Barrientos, on their own behalf and on behalf of all others similarly situated, file the instant Application for a Temporary Restraining Order, and Motion For Preliminary Injunction. They seek to restrain and enjoin Respondents from detaining them and other lawful permanent residents ("LPRs"), as "arriving aliens" under 8 U.S.C. §1225(b)(2) without granting a prompt hearing before an Immigration Judge or other impartial adjudicator regarding parole under §1182(d)(5), and without adjudicating, at said hearing, their entitlement to parole, with or without payment of a bond, in a manner consistent with like determinations made under 8 U.S.C. §1226(a)(2) for granting bond or "conditional parole" to otherwise similarly situated LPRs who were arrested on warrants issued by the Attorney General, and detained pending a decision on whether they are to be removed from the United States, to wit, without adjudicating such applications on the basis of whether the LPR is a flight and/or security risk.

Petitioners also seek preliminary relief on their claims involving the confiscation, and the failure to return, lawfully issued documents such as drivers licenses, and other personal papers, particularly those needed to communicate with family in the U.S..

## I. INTRODUCTION

As seen from Petitioners' First Amended Petition For Habeas Corpus and Class Action Complaint for Declaratory and Injunctive Relief, (hereinafter referred to as "the Petition," and cited as (PET:__)), parole of LPRs under 8 U.S.C. §1182(d)(5)(A) is handled in an arbitrary and inconsistent fashion. The Petition also shows that confiscation of, and failure to return, documents such as drivers licenses and Social Security cards, and personal papers needed to communicate with family, continues to be a major problem. [1]

Under 8 U.S.C. §1182(d)(5)(A), applicants for admission to the United States can be "paroled" into the country [2] on a case-by-case basis "for urgent humanitarian reasons or significant public benefit..." 8 C.F.R. §212.5(a) adds to this the proviso that the person "present neither a security risk nor a risk of absconding."

Parole applications by three named Petitioners, documenting their status as LPRs, and the fact that they were neither a security nor flight risk were denied. *See*, Exhibits A, B, E, and G. [3] None was denied because the LPR was either a security or flight risk, and no two utilized the same standards in determining whether the requests presented "urgent humanitarian reasons or significant public benefit." Nor did the denials consider the applicant's status as an LPR, and the rights attending that status, in determining whether

---

[1] In 1982, this Court issued an injunction addressing this problem for Central Americans. *Nunez v. Boldin*, 537 F. Supp. 578 (S.D.Tx.1982), *app. dismissed,* 692 F.2d 755 (5th Cir.1982) (Table). The question needs to be revisited, on behalf of all detainees.

[2] As used herein, "parole" means permitting an applicant for admission to go at liberty in the U.S., without being "admitted" as defined by 8 U.S.C. §1101(a)(13). The term "conditional parole" means that a person arrested on a warrant issued by the Attorney General is allowed to go at liberty, under specified conditions, but without paying a bond, while removal proceedings are pending.

[3] The *pro se* application of a fourth named Petitioner was granted, and the request of the fifth is still pending.

2

there was a "significant public benefit" in granting parole.

In Response to Petitioners' Freedom of Information Act request for documents "which would contain or relate to the 'current guidelines' for granting parole under 8 U.S.C. §1182(d)(5) to an LPR applying for admission," Respondent Trominski replied, in pertinent part, as follows, (*id.* at page 6) (emphasis added):

> We have searched for records that relate to your request and determined that **if such records exist**, they would be maintained under the jurisdiction of the INS office at the following address:
> HQ FOIA/PA OPERATIONS SECTION
> 425 I STREET, NW
> 2ⁿᵈ Floor ULLICO Bldg.
> Washington, DC 20536

In other words, Respondent Trominski denied Petitioner Calvillo's request for parole "based upon current guidelines," (*id.* at p. 1), but when asked for a copy of said "current guidelines," he replied that, "if such [guidelines] exist," they would be located in the Washington D.C., office, and referred the request to that office for reply. That no such guidelines, (if they exist), are found or utilized in the Harlingen Office is corroborated by the different reasons given for denying parole. Only the denial of Petitioner Calvillo's request even mentioned the statutory criteria, (*id.* at p. 1). Petitioner Hernandez' request was denied on the grounds that it was not "in the best interest of the service or the public," (*id.* at p. 2), and Petitioner Grimaldo's, (*id.* at p. 4), because:

> [I]t has been decided that it is not in the best interest of the U.S. Immigration and Naturalization Service to release Mr. GRIMALDO pending a decision in his case by the Immigration Court.

In no known case involving requests for parole under §1182(d)(5) have Respondents stated whether the applicant's status and rights as an LPR was considered in determining whether parole would serve a "significant public benefit," within the meaning of that section.

3

It is the position of Petitioners that, because of their status as LPRs, they have both fundamental rights and liberty interests in being at liberty, and able to rejoin their families in the U.S. while their cases are pending. *See, e.g., Landon v. Plasencia*, 459 U.S. 21,34 (1982), citing *Bridges v. Wixon*, 326 U.S. 326 U.S. 135,154 (1945); *Moore v. City of East Cleveland*, 431 U.S. 494,499 (1977), and *Stanley v. Illinois*, 405 U.S. 645, 651 (1972):

> Plasencia's interest here is, without question, a weighty one. She stands to lose the right "to stay and live and work in this land of freedom," ... Further, she may lose the right to rejoin her immediate family, a right that ranks high among the interests of the individual. ...

This claim is underscored by the recent decision of the Supreme Court in *Zadvydas v. Underdown*, 121 S.Ct. 2492 (2001), which also involved a liberty interest, to wit, indefinite detention of aliens under deportation orders which could not be promptly effectuated. By applying Substantive Due Process analysis to this issue, the Court reaffirmed its continued vitality. *See also, Patel v. Zemski*, ___ F.3d ___ (3rd Cir. 2001), 2001 WL 1636227, (applying the same analysis to mandatory detention of LPRs under 8 U.S.C. §1226(c)).

Petitioners further assert that the fundamental rights and liberty interests at issue herein can be effectuated by concluding that to not unconstitutionally abridge these rights and liberties is, in and of itself, a "significant public benefit," as that phrase is used in 8 U.S.C. §1182(d)(5)(A) and 8 C.F.R. §212.5(a). Read in this way, the pertinent criteria under 8 C.F.R. §212.5(a) for deciding whether to grant such parole to an LPR would depend on a showing that the applicant presented "neither a security risk nor a risk of absconding." Not coincidentally, this is the same test utilized for determining whether an otherwise similarly situated person arrested within the United States "on a warrant issued by the Attorney General," should be granted bond or "conditional parole" under 8 U.S.C. §1226(a)(2). *See, e.g., Matter of Drysdale*,

4

20 I&N Dec. 815 (BIA 1994) ("Once it is determined that an alien does not present a danger to the community or any bail risk, then no bond should be required."); *Matter of Patel*, 15 I&N Dec. 666 (BIA 1976) (Where it appeared from the record that respondent was living with his wife and U.S. citizen child, had worked for the same employer for almost two years and had kept the Immigration and Naturalization Service informed of his address changes; and that respondent had never been arrested or convicted of any crime and had never been involved with narcotics or involved in any subversive or immoral activities, there was no reason to justify holding respondent under even a minimal bond, and respondent was ordered released from custody of his own recognizance).[4]

As in *Plasencia, supra*, Petitioners also assert that the right to procedural Due Process which flows from these liberty interests and fundamental rights requires this Court to invoke the balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 334-335 (1976), to determine whether they should be granted a hearing on their parole requests before an Immigration Judge or other impartial adjudicator. As set forth in *Plasencia, supra*, this would entail the following:

> In evaluating the procedures in any case, the courts must consider the interest at stake for the individual, the risk of an erroneous deprivation of the interest through the procedures used as well as the probable value of additional or different procedural safeguards, and the interest of the government in using the current procedures rather than additional or different procedures.

Petitioners further assert that in applying this test, the balance swings sharply in their favor. Their interest in being released from custody, and rejoining their families, is invaluable. Removal proceedings can last for years, before all appeals are exhausted, and most LPRs faced with the Hobson's choice of foregoing their

---

[4] Note the use of the phrase "released from custody of his own recognizance." This is a synonym for release on "conditional parole," as used in 8 U.S.C. §1226(a)(2)(B).

residency, or remaining in custody for years, chose the former. The risk of erroneous deprivation of their interests is extremely high, as seen by the arbitrary and capricious manner in which parole requests are currently determined, (e.g., based on whether it is in **Respondents'** interest to grant parole. (Exhibit E, at p. 4)). If granted a hearing, it is highly likely that many LPRs whose requests for parole have been denied, including the Petitioners herein, would be granted parole, possibly in conjunction with a bond, by an Immigration Judge or other impartial adjudicator. Further, procedures are already in place for conducting bond and other hearings, both for persons detained within the U.S. and for those returned to Mexico to await their removal hearings, so there would be very little administrative inconvenience for Respondents.

## II.   BASIS FOR GRANTING PRELIMINARY RELIEF

To be eligible for temporary relief, Petitioners must make certain showings. As reiterated in *Valley v. Rapides Parish School Bd.*, 118 F.3d 1047 (5th Cir. 1997), preliminary relief should only be granted where the movant demonstrates substantial likelihood of success on the merits, substantial threat of irreparable harm if such relief is not granted, that the threatened injury outweighs any harm that may result to the opposing party, and that such an action will not undermine the public interest. *See also*, Fed. Rules of Civil Procedure, Rule 65. These criteria are met herein.

### A.   LIKELIHOOD OF SUCCESS ON THE MERITS

Petitioners have an excellent chance of success on the merits. Similar relief was previously granted by this Court in the related case of *Ascencio-Guzman v. Trominski*, C.A. B-94-215, both with respect to confiscation of documents, and the parole issues. The documents claim was untouched by the Fifth Circuit, and the order on the parole issues was reversed without reaching its merits, because Respondents incorrectly claimed that jurisdiction over the

6

issue was barred by 8 U.S.C. §1226(e). Since said claim was first urged after the record was closed, Plaintiffs could not make the factual showing necessary to rebut it, i.e., that such persons are not arrested **"on a warrant issued by the Attorney General,"** a precondition to triggering said jurisdictional bar. But given the pendency of Plaintiffs' Rule 11 motion therein, it is unlikely that Respondents will attempt to make a similar argument herein.

Further, the Fifth Circuit reminded INS that "the executive branch, of course, has an independent duty to uphold the Constitution, irrespective of whether its actions are subject to judicial review." *Loa-Herrera v. Trominski,* 231 F.3d 984,991 (5th Cir. 2000).

### B. THERE IS A SUBSTANTIAL RISK OF IRREPARABLE HARM IF PRELIMINARY RELIEF IS NOT GRANTED

The detention of Petitioners, without bond, and without access to a hearing before an impartial adjudicator, is causing irreparable harm, both to them, and to their U.S. citizen families, who depend on them for financial and moral support. The harm caused thereby increases with each passing day, and is irreparable, in that there is no means of retroactively restoring the time and income lost.

It also appears that Respondents are more "stingy" with parole than previously. *See, e.g.,* Respondents' admission in *Ascencio-Guzman, supra,* (R:810-11) (footnotes omitted) (emphasis added):

> When a lawful permanent resident applies for admission as a returning resident at a port of entry under the jurisdiction of the Harlingen, Texas, INS Office, and Respondents have reason to believe that said person has committed an act which would subject him or her to exclusion proceedings, if criminal prosecution is also contemplated, it is the practice of Respondents to parole the individual into the United States for prosecution, and place him or her under exclusion proceedings. If the prosecution results in a conviction, it is the practice of Defendants to detain said individual at the Service Processing Center at Los Fresnos, Texas, pending exclusion proceedings. **Upon request of counsel, and in**

7

**some cases upon payment of a bond, such persons are frequently paroled into the United States.** If criminal prosecution is <u>not</u> contemplated, it is the practice of Defendants to initiate exclusion proceedings, and, in most instances, return said person to Mexico, without advising him or her of the possibility of being paroled into the United States.

The harm caused by the failure to notify LPRs detained as "arriving aliens" of the possibility of parole, and the means for requesting it, and by the confiscation without just cause, and failure to return, documents such as drivers licenses, and personal papers with the information required to contact friends or relatives, is both egregious, and irreparable. For example, Petitioner Esparza spent almost a month in custody, without knowing that such a thing as "parole" existed, and without being able to communicate with family members in the United States. As a result, he was on the verge of accepting his deportation (even though he is not even removable as charged), simply out of desperation. (Exhibit F).

### III. THE THREATENED INJURY FAR OUTWEIGHS ANY INJURY TO DEFENDANTS OF GRANTING THE REQUESTED RELIEF

Other than the trivial inconvenience of conducting a few additional hearings, there is absolutely no harm which will accrue to the Respondents, or the public, if this Court grants Petitioners the right to a hearing before an Immigration Judge or other impartial adjudicator on their requests for parole. Similarly, there is no legally cognizable harm to Respondents from permitting LPRs to communicate with family and friends while in detention, and from keeping track of, and returning all personal property confiscated, either as evidence, or for safekeeping, once the LPR is released.

### IV. THE REQUESTED RELIEF IS IN THE PUBLIC INTEREST

To the contrary, such relief will benefit not only the Petitioners, and their families, but the public at large. It will further the impression, as well as the reality, of justice. It will also

forestall the necessity that their families seek public assistance, and prevent the Respondents from manipulating the legal system in such a manner that Petitioners are unable to receive full and fair consideration of any arguments that they are not removable as charged, and to pursue any applications for relief from removal.

Petitioners therefore request that a Temporary Restraining Order, and ultimately, both a preliminary and permanent injunction issue, restraining and enjoining Respondents from detaining LPRs as "arriving aliens" under 8 U.S.C. §§1101(a)(13)(C) and 1225(b)(2):

> (1) without advising them of the possibility of, and procedures for requesting parole under 8 U.S.C. §1182(d)(5), and
> (2) without affording them a prompt hearing on any request for parole before an Immigration Judge or other impartial adjudicator, and
> (3) without adjudicating, at said hearing, their entitlement to parole, with or without payment of a bond, in a manner consistent with determinations made under 8 U.S.C. §1226(a)(2) for granting bond or "conditional parole" to otherwise similarly situated LPRs arrested on warrants issued by the Attorney General, and detained pending a decision on whether they are to be removed from the U.S., to wit, without (a) recognizing that because they are LPRs, Petitioners have certain liberty interests and fundamental rights which in and of themselves satisfy the "urgent humanitarian reasons or significant public interest" criteria of 8 U.S.C. §1182(d)(5)(A), and therefore, (b) adjudicating such applications on the basis of whether the LPR presents a "security risk [or] risk of absconding," which are the additional criteria of 8 C.F.R. §212.5(a), and the same criteria employed in determining whether otherwise similarly situated LPRs should be granted bond or "conditional parole" under 8 U.S.C. §1226(a)(2).

It is further urged that a Temporary Restraining Order, and ultimately, both a preliminary and permanent injunction issue, restraining and enjoining Respondents:

> (1)(a) absent a good faith belief that such items constitute bona fide evidence of unlawful conduct,

9

confiscating from LPRs placed in removal proceedings such personal items as address books, and slips of paper with names, addresses, or other information needed to communicate with friends, relatives, or other contacts in the United States, and

(b) not providing copies of such personal items to the LPR if and when they are confiscated,

(c) not promptly returning any such personal items once they are no longer needed as evidence, and

(d) not keeping an accurate and detailed inventory of all personal property seized from LPRs detained by them, and appropriate documentation regarding the chain of custody of such items, and

(2) absent a good faith belief that such materials constitute bona fide evidence of unlawful conduct, or for the purpose of safeguarding them while Petitioners are in their physical custody, from confiscating from LPRs placed in removal proceedings lawfully issued personal documents, such as drivers' licenses, Social Security cards, foreign passports, and from not promptly returning such documents once they are no longer needed as bona fide evidence of unlawful conduct or the LPR is no longer physically detained, and from failing to maintain appropriate documentation as to the chain of custody of such items.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226
(956) 421-3423 (fax)
Fed. ID. 1178
Texas Bar 03052800

Thelma O. Garcia, Attorney
301 E. Madison
Harlingen, TX 78550
(956) 425-3701
(956) 428-3731 (fax)

**CERTIFICATE OF SERVICE**

I, Lisa S. Brodyaga, hereby certify that a copy of the foregoing was personally delivered to the office of Lisa Putnam, SAUSA, at 1701 Zoy St., Harlingen, Texas, this 14th day of January, 2002.

10