/

United States District Court
Southern District of Texas
FILED

JAN 1 7 2002

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ISRAEL HERNANDEZ-LEIJA, et al    )
                                 )
v.                               )        C.A. No.   01-206
                                 )
E.M. TROMINSKI, et al,           )
_____ )

REQUEST FOR ORDER TO SHOW CAUSE, OR WRIT,
IN ACCORDANCE WITH 28 U.S.C. §2243
AND SUPPLEMENTAL POINTS AND AUTHORITIES IN SUPPORT THEREOF

Petitioners, through the undersigned, request that this Honorable
Court issue either the requested writs of habeas corpus, under 28
U.S.C. §2241, or an order to show cause, and conduct a prompt
hearing on their petition for a writ of habeas corpus, in
accordance with 28 U.S.C. §2243, which provides, in relevant part:

> A court, justice or judge entertaining an application for
> a writ of habeas corpus shall forthwith award the writ or
> issue an order directing the respondent to show cause why
> the writ should not be granted, unless it appears from
> the application that the applicant or person detained is
> not entitled thereto. The writ, or order to show cause
> shall be directed to the person having custody of the
> person detained. It shall be returned within three days
> unless for good cause additional time, not exceeding
> twenty days, is allowed. The person to whom the writ or
> order is directed shall make a return certifying the true
> cause of the detention. When the writ or order is
> returned a day shall be set for hearing, not more than
> five days after the return unless for good cause
> additional time is allowed. Unless the application for
> the writ and the return present only issues of law the
> person to whom the writ is directed shall be required to
> produce at the hearing the body of the person detained.

Petitioners also herewith file the instant Supplemental Points and
Authorities, in support of their petitions for a writ of habeas
corpus, and pending motion for a preliminary injunction.

## I.   SUPPLEMENTAL ISSUE ADDRESSED

**IT VIOLATES SUBSTANTIVE AND PROCEDURAL DUE PROCESS TO DETAIN (OR RETURN TO MEXICO) PETITIONERS AND THE CLASS THEY REPRESENT, PENDING REMOVAL PROCEEDINGS, WITHOUT ADVISING THEM OF THE EXISTENCE OF AND PROCEDURES FOR REQUESTING PAROLE UNDER 8 U.S.C. §1182(d)(5), AND WITHOUT PROVIDING A HEARING BEFORE AN IMMIGRATION JUDGE OR OTHER IMPARTIAL ADJUDICATOR, AND IT IS THEREFORE INCUMBENT ON THE COURT TO ADOPT ANY REASONABLE INTERPRETATION OF §1182(d)(5), EVEN TO THE POINT OF READING LIMITATIONS INTO THE STATUTE, AS IN *ZADVYDAS v. DAVIS*, TO SAVE IT FROM BEING UNCONSTITUTIONAL AS APPLIED HEREIN.**

**A.   BY VIRTUE OF THEIR STATUS AS LAWFUL PERMANENT RESIDENTS, PETITIONERS ARE ENTITLED TO PROCEDURAL DUE PROCESS IN DETERMINING WHETHER THEY ARE ENTITLED TO BE PAROLED INTO THE UNITED STATES DURING REMOVAL PROCEEDINGS**

**B.  SIMILARLY,  PETITIONERS HAVE BOTH A FUNDAMENTAL RIGHT TO JOIN FAMILY IN THE U.S., AND A LIBERTY INTEREST IN BEING FREE FROM ARBITRARY DETENTION, SUCH THAT THEY ARE ENTITLED TO SUBSTANTIVE DUE PROCESS BEFORE THESE RIGHTS AND INTERESTS MAY BE ABRIDGED**

**C.   THESE INTERESTS ARE NOT VITIATED BY THE FACT THAT PETITIONERS WERE DETAINED AT A PORT OF ENTRY, RATHER THAN WITHIN THE UNITED STATES.**

## II.   ARGUMENT

The existence of serious constitutional problems mandates that a Court seek a construction of the statute which would avoid them. *Webster v. Reproductive Health Services*, 492 U.S. 490,562 (1989) (where fairly possible, statutes must be construed to avoid serious constitutional problems); *INS v. Cardoza-Fonseca*, 94 L.Ed2d 434,459 (1987) (reaffirming "the long-standing principle of construing any lingering ambiguities in deportation statutes in favor of the alien."). *See also, Zadvydas, v. Underdown,* 121 S.Ct. 2492 (2001), wherein the Supreme Court read a "reasonable time" limitation into

2

INS' authority to detain former LPRs under deportation orders which could not be immediately effectuated.  As the Court reasoned, *id.* at 2498  (some internal citations omitted):

> "[I]t is a cardinal principle" of statutory interpretation, however, that when an Act of Congress raises "a serious doubt" as to its constitutionality, "this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided."  ...  We have read significant limitations into other immigration statutes in order to avoid their constitutional invalidation.  See United States v. Witkovich, 353 U.S. 194, 195, 202, 77 S.Ct. 779, 1 L.Ed.2d 765 (1957) (construing a grant of authority to the Attorney General to ask aliens whatever questions he "deem [s] fit and proper" as limited to questions "reasonably calculated to keep the Attorney General advised regarding the continued availability for departure of aliens whose deportation is overdue").  For similar reasons, we read an implicit limitation into the statute before us.  In our view, the statute, read in light of the Constitution's demands, limits an alien's post-removal- period detention to a period reasonably necessary to bring about that alien's removal from the United States.  It does not permit indefinite detention.

Respondents' failure to advise Petitioners, and the class they seek to represent, of the existence of and procedures for requesting parole under 8 U.S.C. §1182(d)(5), or with a hearing with respect thereto, raises grave constitutional concerns.  This Court must therefore seek a construction of §1182(d)(5) which avoids these problems, even if, as in *Zadvydas,* this requires the Court to read additional limitations into the statute.

A statute may violate Due Process on its face, or, (as is the case herein), as applied in a particular situation.  *See, Troxel v. Granville*, 120 S.Ct. 2054 (2000) (As applied, Washington statute providing that any person may petition court for visitation at any time, and that court may order visitation rights for any person when visitation may serve best interest of child, violated

3

substantive due process rights of mother). *See also, Zadvydas, supra,* applying Substantive Due Process analysis, and reaffirming the continued vitality of that doctrine, even for non-citizens.

Two Courts of Appeals recently reached similar conclusions with respect to the mandatory detention provisions of 8 U.S.C. §1226(c). *Kim v. Ziglar,* __ F.3d. __ (9th Cir. 2002), 2002 WL 21987, and *Patel v. Zemski,* __ F.3d __ (3rd Cir. 2001), 2001 WL 1636227. In *Kim,* the Ninth Circuit found a Procedural Due Process violation, and in *Patel,* the Third Circuit reached the same conclusion by means of a Substantive Due Process approach. In both cases, the Courts ordered that individualized hearings be conducted, to determine whether the LPRs presented flight risks, or were a danger to the community.

**A.  BY VIRTUE OF THEIR STATUS AS LAWFUL PERMANENT RESIDENTS, PETITIONERS ARE ENTITLED TO PROCEDURAL DUE PROCESS IN DETERMINING WHETHER THEY ARE ENTITLED TO BE PAROLED INTO THE UNITED STATES DURING REMOVAL PROCEEDINGS**

There is no question but that LPRs are entitled to Due Process when seeking to return to their lawful domiciles in the United States. As reiterated in *Molina v. Sewell,* 983 F.2d 676,680 (5th Cir. 1993):

> *Landon v. Plasencia*, [459 U.S. 21 (1982)] recognized that, unlike an alien seeking to enter the United States for the first time, a returning resident alien retains a constitutional right to due process.  459 U.S. at 32-33.

> The fact that an alien is subject to deportation proceedings does not affect his status as a permanent resident alien.  A permanent resident alien's status terminates only when the order of deportation is affirmed by the BIA or otherwise becomes administratively final. *Rivera v. INS*, 810 F.2d 540, 542 (5th Cir.1987); *see also* 8 U.S.C.A. § 1101(a)(20) (West 1970) (defining "lawfully admitted for permanent residence" as "the status of having been lawfully accorded the privilege of residing permanently in the U.S.... such status not having changed") (emphasis added).

4

Lozano was indisputably a permanent resident alien when
he departed to Mexico.    Although he was subject to
deportation proceedings, no final order had issued.    To
conclude that upon his return to the United States Lozano
effected an "entry" as a matter of law is inconsistent
with the due process requirements of Landon and contrary
to the subjective inquiry mandated by *Fleuti*.

In addition to recognizing the LPR's Due Process rights, in
*Plasencia, supra*, at 34, the Supreme Court also noted that:

The government's interest in efficient administration of
the immigration laws at the border also is weighty.
Further, it must weigh heavily in the balance that
control over matters of immigration is a sovereign
prerogative, largely within the control of the executive
and the legislature.

The Court resolved the seeming tension between these principles as
follows, *id.*, at 34-35:

The role of the judiciary is limited to determining
whether the procedures meet the essential standard of
fairness under the Due Process Clause and does not extend
to imposing procedures that merely displace congressional
choices of policy.

The Court then applied the balancing test of *Mathews v. Eldridge*,
424 U.S. 319, 334-335 (1976), and concluded that exclusion
procedures were not *per se* constitutionally defective, but that
there was a question as to whether or not the procedures actually
received had been adequate, and remanded for further proceedings.
In other words, the Court did *not* find that Congress' plenary
control over immigration diminished the fundamental right involved.
To the contrary, the Court analyzed the case as one involving Due
Process, to which INS conceded she was entitled. *Id.* at 33:

In evaluating the procedures in any case, the courts must
consider the interest at stake  for the individual, the
risk of an erroneous deprivation of the interest through
the procedures used as well as the probable value  of
additional or different procedural safeguards, and the
interest  of  the  government  in  using  the  current

5

> procedures rather than additional or different
> procedures. *Mathews v. Eldridge*, ...

As previously discussed, in applying this test herein, the balance swings sharply in Petitioners' favor. Their interest in being released from custody, and rejoining their families, is invaluable. Removal proceedings can last for years, before all appeals are exhausted, and most LPRs faced with the Hobson's choice of foregoing their residency, or remaining in custody indefinitely, chose the former. The risk of erroneous deprivation of Petitioners' interests is extremely high, as seen by the arbitrary and capricious manner in which parole requests are currently determined, (e.g., based on whether it is in **Respondents'** interest to grant parole. (Exhibit E, at p. 4)). If granted a hearing, it is highly likely that many LPRs whose requests for parole have been denied, including the Petitioners herein, would be granted parole, possibly in conjunction with a bond, by an Immigration Judge or other impartial adjudicator. Further, procedures are already in place for conducting bond and other hearings, both for persons detained within the U.S. and for those returned to Mexico to await their removal hearings, so there would be very little administrative inconvenience for Respondents.

This is very similar to the Ninth Circuit's conclusion in *Kim, supra,* where the Court held that, as applied to a lawful permanent resident held indefinitely without bail during pendency of removal proceedings against him, 8 U.S.C. §1226(c) violated the LPR's due process right to an individualized determination of whether he posed risk of flight or danger to community.

> **B. SIMILARLY, PETITIONERS HAVE BOTH A FUNDAMENTAL RIGHT TO JOIN FAMILY IN THE U.S., AND A LIBERTY INTEREST IN BEING FREE FROM ARBITRARY DETENTION, SUCH THAT THEY ARE ENTITLED TO SUBSTANTIVE DUE PROCESS BEFORE THESE RIGHTS AND INTERESTS MAY BE ABRIDGED**

As lawful permanent residents, Petitioners also have a fundamental right to live and work in this country, and to remain here with their families. *See, Landon v. Plasencia, supra* at 34:

> Plasencia's interest here is, without question, a weighty one. She stands to lose the right "to stay and live and work in this land of freedom," ... Further, she may lose the right to rejoin her immediate family, a right that ranks high among the interests of the individual. ...

In reaching this conclusion, the Supreme Court cited *Bridges v. Wixon,* 326 U.S. 326 U.S. 135,154 (1945), as well as *Moore v. City of East Cleveland*, 431 U.S. 494,499 (1977), and *Stanley v. Illinois*, 405 U.S. 645, 651 (1972), both of which recognize family relationships as fundamental rights.

The existence of this fundamental right, which, it must be emphasized, is enjoyed only by those who have a *right* to reside in this country, (i.e., by lawful permanent residents), triggers a "compelling state interest" analysis in determining whether a given abridgement passes Substantive Due Process muster. *Washington v. Glucksberg,* 521 U.S. 702,721 (1997):

> As we stated recently in [*City of Boerne v.] Flores,* the Fourteenth Amendment "forbids the government to infringe ... 'fundamental' liberty interests *at all,* no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." 507 U.S., at 302, 113 S.Ct., at 1447.

*See also, Washington v. Glucksberg, supra* at 720 (The Fourteenth Amendment's Due Process Clause has a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests," including parents' fundamental right to make decisions concerning the care, custody, and control of their children); *M.L.B. v. S.L.J.*, 117 S.Ct. 555,557 (1996) ("The interest of parents in their

relationship with their children is sufficiently fundamental to
come within the finite class of liberty interests protected by the
Fourteenth Amendment").

In *Patel, supra,* the challenge was framed as an "as applied"
violation of both Substantive and Procedural Due Process.   The
Court upheld the Substantive Due Process rights claim, and thus did
not reach the procedural issues.   As the Court reasoned, *id.* at *5
(footnote omitted) (brackets and emphasis added):

> "It is well established that the Fifth Amendment entitles
> aliens to due process of law in deportation proceedings."
> *Reno v. Flores,* 507 U.S. 292, 306 (1993). Although due
> process rights can be denied to aliens seeking **[initial]**
> admission to the United States, *Landon v. Plasencia*, 459
> U.S. 21, 32 (1982), aliens who have entered the country
> are entitled to the protection of the Due Process Clause
> whether their presence in this country is lawful or not.
> See *Zadvydas v. Davis,* 121 S.Ct. 2491, 2501 (2001)
> ("[A]liens who have once passed through our gates, even
> illegally, may be expelled only after proceedings
> conforming to traditional standards of fairness
> encompassed in due process of law.") (quoting *Shaughnessy
> v. United States ex rel. Mezei,* 345 U.S. 206, 212
> (1953)); Landon, 459 U.S. at 32 ("[O]nce an alien gains
> admission to our country and begins to develop the ties
> that go with permanent residence, his constitutional
> status changes accordingly.").  Thus Patel, a lawful
> permanent resident, is entitled to due process protection
> against unlawful or arbitrary restraint, a legal
> proposition the government does not contest.

As discussed below, the term "initial" was added in brackets to the
foregoing quotation, in order to comport with the actual holding,
and reasoning of the Supreme Court in *Landon v. Plasencia, supra.*

### C.   **THESE INTERESTS ARE NOT VITIATED BY THE FACT THAT PETITIONERS WERE DETAINED AT A PORT OF ENTRY, RATHER THAN WITHIN THE UNITED STATES.**

As seen from *Landon v. Plasencia, supra,* the determining factor

with respect to the entitlement to Due Process is not whether a
non-citizen is seeking admission, but whether he or she is seeking
*initial* admission, or is a returning lawful permanent resident. As
the Supreme Court explained therein, *id*. at 32-33 (most internal
citations omitted) (emphasis added):

> This Court has long held that an alien seeking initial
> admission to the United States requests a privilege and
> has no constitutional rights regarding his application,
> for the power to admit or exclude aliens is a sovereign
> prerogative. ... Our recent decisions confirm that view.
> ... As we explained in *Johnson v. Eisentrager*, 339 U.S.
> 763, 770, 70 S.Ct. 936, 939, 94 L.Ed. 1255 (1950),
> however, **once an alien gains admission to our country and
> begins to develop the ties that go with permanent
> residence his constitutional status changes accordingly**.
> Our cases have frequently suggested that a continuously
> present resident alien is entitled to a fair hearing when
> threatened with deportation,... and, although we have
> only rarely held that the procedures provided by the
> executive were inadequate, we developed the rule that a
> continuously present permanent resident alien has a right
> to due process in such a situation. ...
>
> The question of the procedures due a returning resident
> alien arose in *Kwong Hai Chew v. Colding, supra*. There,
> the regulations permitted the exclusion of an arriving
> alien without a hearing. **We interpreted those regulations
> not to apply to Chew, a permanent resident alien** who was
> returning from a five-month voyage abroad as a crewman on
> an American merchant ship. We reasoned that, "For
> purposes of his constitutional right to due process, we
> assimilate petitioner's status to that of an alien
> continuously residing and physically present in the
> United States." 344 U.S., at 596, 73 S.Ct., at 477.
> **Then, to avoid constitutional problems, we construed the
> regulation as inapplicable. Although the holding was one
> of regulatory interpretation, the rationale was one of
> constitutional law**. Any doubts that *Chew* recognized
> constitutional rights in the resident alien returning
> from a brief trip abroad were dispelled by *Rosenberg v.
> Fleuti, supra*, where we described *Chew* as holding "that
> the returning resident alien is entitled as a matter of

> due process to a hearing on the charges underlying any
> attempt to exclude him." 374 U.S., at 460, 83 S.Ct....

Applying Substantive Due Process analysis, it is respectfully
submitted that 8 U.S.C. §1182(d)(5) is not "narrowly tailored" to
serve a "compelling state interest," and that unless a right to a
hearing for lawful permanent residents is read into the statute (or
implementing regulations), as applied herein, it would violate
Substantive Due Process. The fact that he or she is returning from
a brief jaunt to Mexico does not create a greater "state interest"
in detaining, without bond, LPRs who received deferred adjudication
for a controlled substance offense some time ago, than there is in
detaining those who have just been released from serving time after
having been convicted of a like offense. And the interest in
detaining one who was just *acquitted* of such an offense, or whose
criminal case is still pending, is even less compelling.


Respectfully Submitted,



Lisa S. Brodyaga, Attorney          Thelma O. Garcia, Attorney
17891 Landrum Park Road             301 E. Madison
San Benito, TX 78586                Harlingen, TX 78550
(956) 421-3226                      (956) 425-3701
(956) 421-3423 (fax)                (956) 428-3731 (fax)
Fed. ID. 1178
Texas Bar 03052800

### CERTIFICATE OF SERVICE

I, Lisa S. Brodyaga, hereby certify that a copy of the foregoing,
was mailed to Lisa Putnam, SAUSA, P.O. Box 1711, Harlingen, Texas,
78551, this 17th day of January, 2002.