9

United States District Court
Southern District of Texas
FILED

JAN 2 3 2002

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ISRAEL HERNANDEZ-LEIJA, | ) | |
| et al, | ) | |
| | ) | |
| Plaintiffs/Petitioners, | ) | |
| | ) | No. B-01-206 |
| v. | ) | |
| | ) | |
| E.M. Trominski, et al., | ) | |
| | ) | |
| Defendants/Respondents. | ) | |
| | ) | |

DEFENDANTS/RESPONDENTS' PRELIMINARY OPPOSITION
TO PLAINTIFFS/PETITIONERS' APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION
WITH INCORPORATED POINTS AND AUTHORITIES

Defendants/Respondents E.M. Trominski and John Ashcroft

(collectively referred to as "Defendants") hereby present their

preliminary opposition Application for Temporary Restraining

Order and Motion for Preliminary Injunction with Incorporated

Points and Authorities ("TRO Motion") filed by

Plaintiffs/Petitioners Israel Hernandez-Leija ("Hernandez"),

Carlos Omar Calvillo-Lopez ("Calvillo"), Jorge Rivera-Pulvida

("Rivera"), Jose Antonio Esparza ("Esparza"), and Dionicio

Grimaldo-Barrientos ("Grimaldo") (collectively referred to as

"Plaintiffs").[1]

---

[1]  Under the Court's rules, a motion is submitted twenty

(continued...)

BACKGROUND FACTS

Plaintiffs allege to be aliens admitted for lawful permanent residence.  First Amended Petition for Writ of Habeas Corpus and Class Action Complaint for Declaratory and Injunctive Relief ("First Amended Habeas Petition") at ¶¶ 3-7.

Plaintiffs' First Amended Habeas petition raises several claims, including:  (1) that they are entitled as a matter of due process to specific notice of the availability of parole; (2) that they are entitled as a matter of due process to a hearing before an "impartial adjudicator," i.e., an immigration judge, as opposed the District Director, on their applications for parole; (3) that the INS deprives them of due process when it confiscates lawfully issued documents, such as driver's licenses, Social Security cards, foreign passports; by failing to return such documents when they are no longer needed as evidence; and by

---

[1](...continued)
days after filing, and any response is due by the date of submission, unless another date is set by the Court.  Local Rules 7.3 & 7.4.  The TRO Motion was filed on January 14, 2002.  Thus, the date of submission is Monday, February 4, 2002.  No other date has been set by the Court for the submission of the TRO Motion.  Defendants, out of an abundance of caution, prepared this preliminary opposition is preparation for the hearing scheduled by the Court for January 24, 2002.  However, additional time may be needed to provide a complete opposition to the motion for a preliminary injunction and to submit additional evidence.

failing to keep an accurate and detailed inventory and chain of custody for all personal property seized from lawful permanent resident aliens.  Their claims lack merit as a matter of law.


ARGUMENT

I.   PLAINTIFFS' CLAIMS REGARDING THE FAILURE TO PROVIDE NOTICE
     OF THE AVAILABILITY OF PAROLE IS MOOT

     Plaintiffs' claim regarding the failure to provide notice of parole is moot.  A litigant must have suffered, or be threatened with, an actual injury traceable to the defendants and likely to be redressed by a favorable judicial decision.  Lewis v. Continental Bank, 494 U.S. 472, 477 (1990).  The courts may not "decide questions that cannot affect the rights of litigants in the case before them."  Lewis v. Continental Bank, 494 U.S. at 477.  A federal court may only decide "real and substantial controvers[ies] admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  Id. While a suit may have been considered alive at the inception of the suit, "[t]he parties must continue to have 'personal stake in

3

the outcome' of the lawsuit." <u>Id</u>. at 478, <u>citing</u> <u>Los Angeles v.</u>
<u>Lyons,</u> 461 U.S. 95, 101 (1990).

Here, Plaintiffs challenge the alleged failure of INS to
provide notice to them of the availability of parole.  First
Amended Habeas Petition at ¶¶ 13, (Hernandez), 19 (Calvillo), 27
(Rivera), 32 (Esparza), 39 (Grimaldo).  However, as each
Plaintiff readily admits, he received such notice, and applied
for parole.  First Amended Habeas Petition at ¶ 13 (Hernandez
admits his attorney informed him); ¶ 19 (Calvillo admits his
attorney informed him); ¶ 27 (Rivera admits same); ¶ 32 (Esparza
admits learning of parole); ¶ 39 (Grimaldo admits his attorney
informed him).  Indeed, in at least one case, that of Esparza,
parole was ultimately granted.  <u>See</u> Plaintiffs' Exhibit F.
Accordingly, as each alien was aware of the availability of
parole and has never during the course of the lawsuit been
without some notice, each of their claims regarding the lack of
notice is moot, and the Court lacks authority to grant an
injunction.

II.  SECTION 242(a)(2)(B)(ii) OF THE INA PRECLUDES THE DISTRICT
     COURT'S EXERCISE OF JURISDICTION OVER DISCRETIONARY ACTS OF
     THE ATTORNEY GENERAL AND HER DELEGATES, SUCH AS RELEASE FROM
     DETENTION

The district court's review of the custody determination of the immigration judge is precluded by Section 242(a)(2)(B)(ii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252(a)(2)(B)(ii) (Supp. 1997).  Section 242(a)(2)(B)(ii) of the INA provides that:  "Notwithstanding any other provision of law, no court shall have jurisdiction to review -- (ii) any other decision or action of the Attorney General the authority for which is specified under this title [title II of the INA] to be in the discretion of the Attorney General . . . ."  8 U.S.C. § 1252(a)(2)(B)(ii).

Section 242(a)(2)(B)(ii) applies to bar review of any discretionary decisions by the Court.  However, this bar to jurisdiction does not preclude the Court from entertaining any substantial constitutional questions presented.  Cf Montero-Martinez v. INS, ___ F.3d ___, 2002 WL 54640 (9th Cir. Jan. 16, 2002) (holding that INA § 242(a)(2)(B)(i) still permits review of constitutional questions).[2]

---

[2]   It bears mentioning that the Fifth Circuit held that language similar to § 242(a)(2)(B)(ii) barred review of even constitutional questions.  See Loa-Herrera v. Trominski, 231 F.3d 984 (5th Cir. 2000) (holding that INA § 236(e) bars judicial review of constitutional questions).  The government disagrees with the conclusion reached by the Fifth Circuit.  Nevertheless, because in this case Plaintiffs urge that the Attorney General
                                        (continued...)

Decisions respecting release from custody, including parole under INA § 212(d)(5)(A), are discretionary determinations falling within title II of the INA.  See Carlson v. Landon, 342 U.S. 524, 538 (1952).  Moreover, the choice of procedures to afford under INA §§ 235 & 236 are discretionary choices of the Attorney General.  Vermont Yankee v. Natural Resources Defense Council, 435 U.S. 519, 544 (1978).

Here, Plaintiffs' due process challenge centers on the "unfettered discretion" enjoyed by the Attorney General in granting parole.  First Amended Habeas Petition at ¶ 49.  In other words, Plaintiffs allege that the INS improperly balanced the factors in deciding whether they should be granted parole.  That, however, is a "discretionary challenge in constitutional garb," and the Court should hold that it lacks jurisdiction over the issue.  Bernal-Vallejo v. INS, 195 F.3d 56, 63 (1st Cir. 1999).  Indeed, to the extent Plaintiffs challenge the Attorney General's discretionary choice of procedures to afford parole, they attack a decision within the Attorney Generals discretion,

---

² (...continued)
must afford them the same procedures extant under INA § 236(a),
INA § 236(e) may also pose a barrier to this action.

and accordingly, the Court lacks jurisdiction over the
challenge.[3]

### III. PLAINTIFFS FAIL TO MAKE A SHOWING THAT THEY ARE ENTITLED TO A TEMPORARY RESTRAINING ORDER OR A PRELIMINARY INJUNCTION

The courts give consideration to four factors in deciding
preliminary injunctions:   (1) whether there is a substantial
likelihood of success on the merits; (2) whether an irreparable
harm would occur if a stay is not granted; (3) whether the
potential harm to the movant outweighs the harm to the opposing
party if a stay is not granted; and (4) whether the granting of a
stay serves the public interest.   See, e.g., Ignacio v. INS, 955
F.2d 295, 299 (5th Cir. 1992); Jenkins v. INS, 32 F.3d 11, 14 (2d
Cir. 1994); Zardui-Quintana v. INS, 768 F.2d 1213, 1215 n.7 (11th
Cir. 1985).   "The preliminary injunction is an extraordinary and
drastic remedy not to be granted unless the movant 'clearly
carries the burden of persuasion as to the . . . prerequisites.'"

---

[3]   Defendants respectfully submit that the Court lacks
person jurisdiction over the Defendants for the purpose of
issuing any injunction.   Fed. R. Civ. P. 4(i) specifies that in
order to effectuate service on the federal government, the party
must serve the United States Attorney, the federal agency, and
the Attorney General by certified or registered mail.   To date,
the Attorney General has not received any copy of the summons by
certified or registered mail.   Thus, service of summons is
incomplete, and the Court lacks personal jurisdiction over the
Defendants.   Thus, the TRO Motion should be denied.

7

<u>Zardui-Quintana</u>, 768 F.2d at 1216, (<u>quoting</u> <u>U.S. v. Jefferson</u>
<u>County</u>, 720 F.2d 1511, 1519 (11th Cir. 1983)).   Plaintiffs,
however, fail to meet their burden to obtain this "extraordinary
and drastic" form of relief.

     A.   Plaintiffs Do Not Show A Substantial Likelihood Of
           Success On The Merits

As an initial matter, Plaintiffs utterly fail to explain why
they have a substantial likelihood of prevailing on the merits.
In their TRO Motion, Plaintiffs make only a cursory assertion
that they "have an excellent chance of success on the merits.
Similar relief was previously granted in the related case of
<u>Ascencio-Guzman v. Trominski</u>, C.A. B-94-215. . . ."  TRO Motion
at 6.[4]  This cursory suggestion falls well short of the specific
articulation required to obtain a preliminary injunction.
Accordingly, the injunction should be denied.

Moreover, their suggestion actually misinforms the Court of
the nature of the <u>Ascencio-Guzman</u> case.  While it is true that
the Fifth Circuit vacated the district court decision in
<u>Ascencio-Guzman</u> without altering the legal conclusions stated by

_____

    [4]  The Court should note that while Plaintiffs refer to
"<u>Ascencio-Guzman v. Trominski</u>," the Court's docket actually
reflects the case name as "<u>Loa-Herrera v. Trominski</u>."  However,
for consistency's sake, the case will be referred to by the
former name.

8

the district court, Plaintiffs are not being forthright regarding what was done in the district court.  The Fifth Circuit expressly noted that:

> More troubling is the government's contention that the district court failed to give the government an opportunity to present argument before issuing its order. . . .  [W]e vacate the order and remand for further proceedings, during which the INS assuredly will have ample opportunity to press any additional legal or factual arguments it wishes to make and thereby to cure any procedural defects regarding the order.

Loa-Herrera, 231 F.3d at 988.  In light of the district court's need to afford the government an opportunity to present its arguments in in Ascencio-Guzman, Plaintiffs reliance on that decision alone as sufficient to establish a "likelihood of success on the merits" is misplaced, and the Court should deem them to have failed to meet their burden of proof.

Nevertheless, even considering Plaintiffs' claims in the absence of argumentation, they do not show a substantial likelihood of success on the merits.

> 1.   Plaintiffs are not entitled to particular notice regarding the availability of parole

Plaintiffs are not entitled to individualized notice of the availability of parole.  Plaintiffs' sole argument that they are entitled to individualized notice is based on due process.  TRO

9

Motion at 4.   It also appears   but is unclear   that Plaintiffs
wish to use the procedural due process test enunciated in <u>Mathews</u>
<u>v. Eldridge</u>, 424 U.S. 319 (1976).   TRO Motion at 5.   Plaintiffs'
arguments utterly lack merit.

The Supreme Court recently explained that, in evaluating
whether individualized notice is required, the <u>Mathews</u> test is
not the appropriate test.   <u>Dusenbury v. United States</u>, ___ S.Ct.
___, 2002 WL 15403 (U.S. Jan. 8, 2002).   "[W]e have never viewed
<u>Mathews</u> as announcing an all-embracing test for deciding due
process claims."   <u>Id</u>. at 4.   As the Supreme Court explained, "The
<u>Mathews</u> balancing test was first conceived in the context of a
due process challenge to the adequacy of administrative
procedures used to terminate Social Security disability
benefits."   <u>Id</u>.   However, "since [<u>Mullane v. Central Hanover bank</u>
<u>& Trust</u>, 339 U.S. 306 (1950)] was decided, we have regularly
turned to it when confronted with questions regarding the
adequacy of the method used to give notice."   <u>Id</u>. (citations
omitted).   Under the <u>Mullane</u> test, the relevant question before
the Court is whether notice was "reasonably calculated under all
the circumstances."   <u>Dusenbury</u>, 2002 WL 15403 at 5; <u>Mullane</u>, 339
U.S. at 309-310.

The instant case is governed by the Supreme Court's <u>Mullane</u>
decision and its progeny, including <u>City of West Covina v.</u>
<u>Perkins</u>, 525 U.S. 234 (1999). In <u>West Covina</u>, the Supreme Court
considered whether the City of West Covina provided adequate
notice of available remedies where a litigant was informed of the
search and seizure of certain property by the police, but where
the litigant was not given individualized notice of the available
remedies for recovering property. <u>Id</u>. at 236-37. The Supreme
Court held that individualized notice of the available procedures
for getting back seized property was not required by due process.
<u>Id</u>. at 241. The Court observed that notice of the seizure of
property was necessary

> because the property owner would have no
> other reasonable means of ascertaining who
> was responsible for his loss.

<u>Id</u>. at 241. However, the Court pointedly noted:

> No similar rationale justifies requiring
> individualized notice of state law remedies
> which, like those at issue here, are
> established by published, generally available
> state statutes and case law. Once the
> property owner is informed that his property
> has been seized, he can turn to these public
> sources to learn about the remedial
> procedures available to him. The City need
> not take other steps to inform him of his
> options.

11

Id. at 241 (citations omitted).  The Supreme Court has long held
that publication of government procedures is sufficient notice of
those procedures.  Federal Crop Insurance, Corp. v. Merrill, 332
U.S. 380, 384 (1947).

     The instant case is not different from West Covina or
Dunesbury.  Here, each Plaintiff was given individualized notice
that he was being placed in, and detained pursuant to, removal
proceedings under INA § 240.  The availability of parole, like
other forms of administrative relief, are all a matter of public
record, located both in Title 8 of the United States Code (8
U.S.C. § 1182(d)(5)(A)) and Title 8 of the Code of Federal
Regulations (8 C.F.R. § 212.5).  Once put on notice that their
detention is the result of removal proceedings, it is up to
Plaintiffs to pursue their remedies.  See Atkins v. Parker, 472
U.S. 115 (1985) ("The entire structure of our democratic
government rests on the premise that the individual citizen is
capable of informing himself about the particular policies that
affect his destiny").  Thus, under West Covina, this form of
notice regarding the particular administrative remedies available
is sufficient.

          2.   Plaintiffs' due process challenge lacks merit
               because Congress' decision to confer "unfettered
               discretion" to the Attorney General and the

                              12

> Attorney General's decision to delegate such
> authority to the District Director rather than
> immigration judges is supported by a facially
> legitimate and bona fide reason

            a.    Standard of review

     The standard of review  the Attorney General's decision not

to parole an alien into the United States is an extremely

deferential one.   United States ex rel. Barbour v. District

Director, 491 F.2d 573 (5th Cir. 1974), cert. denied, 419 U.S.

873 (1974); see also Garcia-Mir v. Smith, 766 F.2d 1478, 1485

(11th Cir. 1985); Jean v. Nelson, 727 f.2d 957, 976 (11th Cir.

1987).   The Supreme Court has held that Congress and the Executive have

extraordinarily broad power in the immigration arena to draw distinctions

between aliens "that would be unacceptable if applied to citizens."   Fiallo.

430 U.S. at 792 (1977).   As the Court explained:

> We are dealing here with an exercise of the Nation's
> sovereign power to admit or exclude foreigners in
> accordance with the perceived national interests.
> Although few, if any, countries have been as generous
> as the United States in extending the privilege to
> immigrate, or in providing sanctuary to the oppressed,
> limits and classifications as to who shall be admitted
> are traditional and necessary elements of legislation
> in this area . . . In the inevitable process of 'line
> drawing,' Congress has determined that certain classes
> of aliens are more likely than others to satisfy
> national objectives without undue cost, and it has
> granted preferential status only to those classes

13

430 U.S. at 787 n.6.   Because of the concurrent authority of Congress and the Executive, the Court's review of Executive decisions is similarly narrow. Jean v. Nelson, 727 F.2d 957, 976 (11th Cir. 1984).

For aliens at the border seeking admission, there is no constitutional right to enter or be paroled into the United States.  Kleindienst v. Mandel, 408 U.S. 753, 762 (1972); Galvan v. Press, 347 U.S. 522, 530-32 (1954); Harisiades v. Shaughnessy, 342 U.S. 580, 592 (1952); Jean v. Nelson, 727 F.2d 957, 967 (11th Cir. 1984).[5]

The proper standard of review for evaluating the Executive's decision to deny parole is whether such denial is based upon a "facially legitimate and bona fide reason."  Fiallo v. Bell, 430 U.S. 787, 794 (1977), quoting Kleindienst v. Mandel, 408 U.S. 753, 770 (1972); Jean, 727 F.2d at 976-77; Almario v. Attorney

_____

[5]   While aliens who have been permitted to enter the United States and are permitted to remain for a long time and establish ties with this country are afforded some due process protections in determining whether they have a right to remain in the United States, the Supreme Court has been clear that "[t]he role of the judiciary is limited to determining whether the procedures meet the essential standard of fairness under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy."  Landon v. Plasencia, 459 U.S. 24, 32-33 (1982).   Thus, whatever minimal procedural protections, lawful permanent residents remain subject to the minimal procedures afforded to them, so long as those procedures are adequate for evaluating their right to remain.   Id.

General, 872 F.2d 147, 151 (6th Cir. 1989) ("the holdings of

Kleindienst and Fiallo require that we exercise a very narrow

standard of review assuming the classification at issue in this

case is supported by a facially legitimate and bona fide

reason"); Matter of Longstaff, 716 F.2d 1439, 1442-443 (5th Cir.

1983) ("The constraints of rationality imposed by the

constitutional requirements of substantive due process and of

nondiscrimination exacted by the equal protection component of

the due process clause do not limit the federal government's

power to regulate either immigration or naturalization").  The

government has no obligation to produce evidence to sustain the

rationality of a classification.  Heller v. Doe, 509 U.S. 312,

319 (1993).  A decision by the Executive bears a "strong

presumption of validity," and those attacking the rationality of

the decision have "the burden to negate every conceivable basis

which might support it, whether or not the basis has a foundation

in the record."  Id. at 320 (internal citation omitted).  Once a

"facially legitimate and bona fide" reason is adduced, it is

improper for a court to look behind that decision.  Kleindienst,

408 U.S. at 770 ("when the Executive exercises this power

negatively on the basis of a facially legitimate and bona fide

reason, the courts will neither look behind the exercise of that

15

discretion, nor test it by balancing its justification against [constitutional] interests. . ."); <u>Jean</u>, 727 F.2d at 977; <u>Campos v. INS</u>, 961 F.2d 309, 316 (1st Cir. 1992).  The Court's only task is to determine whether the officials acted "within the scope of their delegated powers."  <u>Jean</u>, 727 F.2d at 977.

This narrow standard of review applies even where other constitutional rights may be implicated.  For example, in <u>Kleindienst</u>, the alien was challenging the denial of a visa to enter the United States for the purpose of providing lectures at several universities.  <u>Kleindeinst</u>, 408 U.S. at 761.  The alien challenged the denial of a visa, arguing that the denial denied the American people their right to hear the alien, and that the ground of exclusion violated equal protection, due process and statutory rights.  <u>Id</u>. 408 U.S. at 760.  The Supreme Court held that the official denying the visa had provided a "facially legitimate and bona fide" reason for the denial of the visa. <u>Kleindeinst</u>, 408 U.S. at 769.

> The fact remains, however, that the official empowered to make the decision stated that he denied a waiver because he concluded that previous abuses by Mandel made it inappropriate to grant a waiver again.  With this, we think the Attorney General validly exercised the plenary power that Congress delegated to the Executive. . . .

*          *          *

16

In summary, plenary congressional power to make policies and rules for exclusion of aliens has long been firmly established. . . . Congress has delegated conditional exercise of this power to the Executive. We hold that when the Executive exercises this power negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justifications against the First Amendment interests of those who seek person communication with the applicant.

Kleindeinst, 408 U.S. at 69-70.

> b. The District Director denied parole to Plaintiffs on the basis of a facially legitimate and bona fide reason

In the instant case, the District Director denied parole to each of the Plaintiffs on the basis of a facially legitimate and bona fide reason. After entertaining the applications for parole filed by the Plaintiffs through their respective counsel, each was denied because, in the judgment of the District Director, their release would not be "in the public's interest or of an urgent humanitarian nature." See Plaintiffs' Exhibit B. Congress has specified that in order to be granted parole, an applicant for admission must satisfy one of the two requirements. Thus, in finding that the Plaintiffs did not satisfy the requirements, the District Director provided a facially legitimate and bona fide reason. It is not for the Court to test or look behind that finding. Kleindeinst, 408 U.S. at 69-70.

17

Plaintiffs' TRO motion actually makes no effort to show a substantial likelihood of prevailing on the merits other than to cite the Court's decision in <u>Ascencio-Guzman</u>.  TRO Motion at 6. For that reason alone, the TRO motion should be denied.  However, even looking to the First Amended Habeas Petition for some idea of what is being argued, Plaintiffs' claims lack merit. Plaintiffs urge that, as lawful permanent residents, their entry should be deemed as "urgent humanitarian reasons or significant public interest," <u>per se</u>.  However, that is an effort to look behind the facially legitimate and bona fide reason for their detention, which the Court is not authorized to do.  Moreover, there is no question that Congress has the authority to subject lawful permanent resident aliens at the border to different procedures from aliens who never left.  <u>Plasencia</u>, 459 U.S. at 34-35.

Furthermore, Plaintiffs urge that there are no written guidelines which (1) distinguish between lawful permanent resident aliens and other aliens; (2) specify as a factor in favor of parole the alien's lawful permanent resident alien status; and (3) take into consideration the "weighty interests" of lawful permanent resident aliens.  First Amended Habeas Petition at ¶ 48.  As a result, they suggest, Congress has

18

essentially given "unfettered discretion" in deciding parole.

Id. at ¶ 49.  This represents little more than an effort to have

the Court look behind the facially legitimate and bona fide

reasons given by the District Director, which the Court is not

permitted to do.[6]

       3.    Even under the <u>Mathews</u> due process analysis,
            Plaintiffs' claims lack merit

       a.   The <u>Mathews</u> test

Under the traditional <u>Mathews v. Eldridge</u> test for

procedural due process, where a liberty or property interest is

implicated, the Court will conduct a balancing of three factors:

> the interest at stake for the individual, the risk of
> an erroneous deprivation of the interest through the
> procedures used as well as the probable value of
> additional or different procedural safeguards, and the
> interest of the government in using the current
> procedures rather than additional or different
> procedures.

<u>Mathews v. Eldridge</u>, 424 U.S. 319, 334-35 (1976).  In performing this

analysis, however, the Court must bear in mind that "[t]he role of the

judiciary is limited to determining whether the procedures meet the essential

---

     [6]  Perhaps more importantly, it is simply an effort to
introduce "abuse of discretion" review in the guise of a due
process challenge.  The Court should reject such a challenge, as
the Court cannot entertain challenges to the discretion of the
Attorney General, and habeas corpus does not permit such a
challenge.

standard of fairness under the Due Process Clause and <u>does not extend to</u> <u>imposing procedures that merely displace congressional choices of policy</u>." <u>Landon v. Plasencia</u>. 459 U.S. 21. 34-35 (1982) (emphasis added). Additionally. to raise an adequate due process claim. the alien must have been actually or substantially prejudiced by the alleged inadequacy of the process afforded. <u>Mejia-Rodriguez v. Reno</u>. 178 F.3d 1139. 1146 (11th Cir. 1999). <u>cert</u>. <u>denied</u>. 121 S.Ct. 563 (2000).

In the instant case. Plaintiffs raise a due process challenge to the absence of an impartial adjudicator in their cases.  First Amended Habeas Petition at 15.  They desire to have hearings before an immigration judge rather than making their request to the District Director.  Their claim is utterly without merit.

          b.    Plaintiffs have no liberty interest in parole

Plaintiffs have no liberty interest in receiving parole into the United States, their lawful permanent resident status notwithstanding.  An alien subject to exclusion proceedings (now an alien charged with being inadmissible) has no liberty interest in parole.  <u>Gisbert v. U.S. Attorney General</u>, 998 F.2d 1437, 1443 (5th Cir. 1993); <u>see also</u> <u>Connecticut Bd. of Pardons v. Dumschat</u>. 452 U.S. 458. 264-65 (1982) (no liberty interest in discretionary relief); <u>Finlay v. INS</u>. 210 F.3d 556 (5th Cir. 2000). <u>citing</u> <u>Tefel v. Reno</u>, 180

F.3d 1286, 1299-1300 (11th Cir. 1999), <u>cert</u>. <u>denied</u>, 530 U.S.
1228 (2000) (no liberty interest in discretionary relief from
removal); <u>Cervantes-Gonzales v. INS</u>. 232 F.3d 684. 688 (9th Cir. 2000)
(alien has no right to relief): <u>Amanullah v. Nelson</u>, 811 F.2d 1, 8
(1st Cir. 1987) (no liberty interest in parole); <u>Jean v. Nelson</u>,
727 F.2d 957, 972 (11th Cir. 1984) (no liberty interest in
parole).  Indeed, this is particularly appropriate for an alien
at the border, like the Plaintiffs, where the only rights an
alien has are those afforded by Congress.  <u>Gisbert</u>, 988 F.2d at
1442.

Plaintiffs appear to suggest that by virtue of their lawful
permanent resident status, they obtain a liberty interest in
parole.  <u>See</u>, <u>e.g.</u>, TRO Motion at 4 ("[T]hey have both
fundamental rights and liberty interests in being at liberty, and
able to rejoin their families in the U.S. while their cases are
pending").  Plaintiffs overstate their rights.  It is true that
in determining whether or not a lawful permanent resident alien
will be excluded from the United States, the alien may have some
liberty interests, <u>see</u> <u>Landon v. Plasencia</u>, 459 U.S. 21, 33
(1982).  That, however, does not translate into a liberty
interest to be at liberty in the United States pending those

21

proceedings. The Supreme Court specified that such aliens remain subject to the procedures Congress imposes and that whatever the scope of that right, courts are not empowered to displace congressional choices. Id. Lawful permanent residents at the border have very limited rights, and the extent of their rights is consummate only with those procedures necessary to determine whether they will be excluded. The Fifth Circuit has rejected claims of a general liberty interest in freedom as the basis for a challenge to the denial of parole.[7]

Indeed, parole is not among the "rights" enjoyed by lawful permanent resident aliens. Congress specified that criminal aliens such as the Plaintiffs are deemed to be seeking admission

---

[7] The Supreme Court's decision in Zadvydas v. Davis, 121 S. Ct. 2491 (2001), is not to the contrary. Plaintiffs suggest that Zadvydas involved a "liberty interest, to wit, indefinite detention of aliens under deportation orders which could not be promptly effectuated," and that this represents the continued vitality of the Due Process rights at issue here. TRO Motion at 4. Plaintiffs are mistaken. Zadvydas made no finding regarding a liberty interest. Rather, the Supreme Court merely commented that to hold that a deportable alien could be held indefinitely would present a serious constitutional question. Zadvydas, 121 S. Ct. at 2498. Indeed, the Zadvydas Court expressly noted that aliens at the border do not possess the same rights as aliens within the United States, acknowledging that the former type of alien is not "in" the United States and does not obtain the protection of the Fifth Amendment. Id. at 2500. The Plaintiffs here are all detained at the border and are not within the scope of Zadvydas. Therefore, their due process rights are at a minimum. Landon v. Plasencia, 459 U.S. at 33.

upon their return to the United States.  INA § 101(a)(13)(A) &

(C), 8 U.S.C. § 1101(a)(13)(A) & (C) (Supp. 1997).  As such, they

are subject to the procedures specified by Congress for aliens

seeking admission.  These procedures include inspection upon

application for admission under INA § 235(a)(3), 8 U.S.C. §

1225(a)(3) (Supp. 1997).  Upon their inspection, Congress

provides that "in the case of an alien who is an applicant for

admission, if the examining immigration officer determines that

an alien seeking admission is not clearly and beyond a doubt

entitled to be admitted, the alien <u>shall be detained</u> for a

proceeding under [INA § 240, 8 U.S.C. § 1229a (Supp. 1997)]."

INA § 235(a)(2)(A), 8 U.S.C. § 1225(a)(2)(A) (Supp. 1997)

(emphasis added).  Congress also directed that aliens arrving on

land from a contiguous foreign territory may be returned to the

foreign territory pending their removal proceedings.  INA

§ 235(a)(2)(C), 8 U.S.C. § 1225(a)(2)(C) (Supp. 1997).  As a part

of the decision whether to detain the alien, Congress specified

that such arriving aliens may apply for parole under INA §

212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A) (1994).

Even with respect to the availability of parole, the Fifth

Circuit has explained the tenuous interest an alien has in

parole:

> The petitioners' interest in immigration
> parole is created by the immigration statutes
> and is subject to the exercise of discretion
> by the Attorney General.   8 U.S.C. §
> 1182(d)(5)(A).   The language of the statute
> does not require the Attorney General to
> parole any alien, nor does it mandate parole
> on any particular finding or findings or
> place any substantive restriction on the
> authority to deny parole.   Because
> petitioners' interests here are contingent
> upon the Attorney General's discretion, they
> have no liberty interest in being paroled.

Gisbert, 988 F.2d at 1443.   It is important to note that Congress

specifically chose not to exempt lawful permanent resident aliens

from the need to make a showing regarding parole.   Indeed, while

Congress generally provided that returning lawful permanent

resident aliens are generally not subject to parole requirements

by virtue of not "seeking admission," Congress specifically

exempted certain criminal aliens, such as the Plaintiffs, from

that general exception, indicating an intent to make such aliens

face parole requirements.   Accordingly, Plaintiffs have no

liberty interest in parole and can raise no due process claim

regarding the procedures they are afforded.

> c.   The balance of due process factors favors the
> government

The balance of the risk of erroneous deprivations is

minimal, the value of additional procedures is de minimus, and

24

\

government retains a strong interest in the procedures presently afforded for parole.

The risk of an erroneous deprivation of parole is minimal. Congress has placed parole within the unfettered discretion of the Attorney General. Indeed, as the Fifth Circuit has stated: "The language of the statute does not require the Attorney General to parole any alien, nor does it mandate parole on any particular finding or findings or place any substantive restriction on the authority to deny parole." Gisbert, 988 F.2d at 1443. Because there is no case in which the Attorney General must grant parole, the risk of an erroneous deprivation is minimal.[8]

Moreover, the value of additional procedures   namely, a hearing before an immigration judge   is negligible. Plaintiffs point to nothing that can be done in a request to an immigration judge which cannot be presented to the District Director. Indeed, looking at their particular cases, Plaintiffs made a minimal effort to make any showing to the District Director. For

_____

[8]  It bears emphasizing that Plaintiffs appear to want to force the INS to grant parole to all lawful permanent residents. First Amended Habeas Petition at 15. That, however, is expressly contrary to the finding of the Fifth Circuit that the statute does not mandate the grant of parole in any case. Gisbert, 988 F.2d at 1443.

25

example, in the case of Plaintiff Calvillo, his request for bond from the immigration judge makes little to no effort to demonstrate the merits of his request for release.  <u>See</u> Plaintiffs' Exhibit "C" (Attachment to Petition for Writ of Habeas Corpus and Class Action Complaint for Declaratory and Injunctive Relief).  His request for parole was equally lacking in any effort to make a substantial showing of "urgent humanitarian reasons" or the "interests of the United States," alleging only by way of his attorney's description that:

> Respondent entered the U.S. in 1982 and became an LPR in 1991.  He resides with his parents in San Benito, Texas.  Respondent's step-father is a United States citizen and his mother is an LPR.  He has two brothers whom are LPR[s] and one sister and step-brother whom are both USC[s].
>
> Respondent at the time of apprehension was a student at Texas State Technical College pursuing a technical degree as a biotechnical technician.  Respondent was also employed by Mail-Pak Your Box Store in Harlingen.

Plaintiffs' Exhibit B at 3.  His attorney's letter was accompanied only by a photocopy of (1) a Permanent Resident Card belonging to Juana Lopez-Parga (presumably his mother), (2) a certificate of citizenship belonging to Victoriano Munoz (relationship unknown), (3) a social security card belonging to Jose Jairo Calvillo (relationship unknown), (4) a Permanent

26

Resident Card belonging to Agustin Calvillo-Lopez (relationship unknown), (5) a birth certificate issued from the State of Texas for Victor Manuel Munoz (relationship unclear), (6) a Certificate of Naturalization for Roxana Fabiola Calvillo (presumably Calvillo's sister), (7) a letter from Pamela Allen, owner of Mail-Pak Your Box Store, expressing the performance of Plaintiff Calvillo, and (8) a Student File Inquiry for Plaintiff Calvillo. This goes to demonstrate that even without a hearing before an immigration judge, Plaintiffs were able to submit in support of their parole requests a variety of different forms of evidence.[9] Indeed, Plaintiffs have not suggested that there is anything which can be submitted to the immigration judge which cannot be submitted to the District Director.  Thus, the probable value of additional procedures would be minimal.  This last point cannot be overstated.  The Supreme Court has previously held that due process   even the due process afforded to lawful permanent resident aliens   does not require an "independent adjudicator." Marcello v. Bonds, 349 U.S. 302, 311 (1955).

---

[9]  Of course, these documents make almost no effort to show urgent humanitarian interests or a significant public benefit.

27

As for the government interest in the present procedures, the Supreme Court has already stressed the weighty interest of the government:

> The government's interest in efficient
> administration of the immigration laws at the
> border also is weighty.  Further, it must
> weigh heavily in the balance that control
> over matters of immigration is a sovereign
> prerogative, largely within the control of
> the executive and the legislature.

Plasencia, 459 U.S. at 34.  Here, the Attorney General has elected to delegate parole authority to the District Director. The importance of this choice cannot be underestimated, particularly in today's world climate.  The parole decision is one of sovereign prerogative, and stands as a last protection against the entry of aliens whose presence Congress and the Executive deems to be not in the national interest.  The Attorney General's delegation reflects a desire to reserve that sovereign authority in a manner more accountable to the needs of the Executive.  Plaintiffs suggest that the harm to the government is only that the procedures for evaluating parole before immigration judge is already in place and would therefore pose little "administrative inconvenience."  TRO Motion at 6.  Plaintiffs vastly underestimate the procedures they seek to impose.  The imposition of hearings before immigration judge would require the

28

Executive to exhaust greater administrative resources.  There
would have to be notices of hearings before immigration judge;
there would be possible delays by aliens and their counsel; there
would be rescheduling efforts, there would be translator costs;
there would be the time expended by INS attorneys needed to be at
the hearing; there would be the time required by the immigration
judge to adjudicate more requests; there would be the preparation
of decisions by the immigration judges; there would be the time
spent notifying the parties of decisions; there would be the time
spent on appeal to the Board; there would be transcription costs
in case of an appeal to the Board; there would be time spent
briefing the issue to the Board; there would be the time spent by
the Board considering each appeal; there would be the time spent
preparing a decision in each appeal; and there would be the time
spent notifying the parties of such decisions.  All that time
would affect the government's ability to adjudicate other cases.
Far from a minimal inconvenience, Plaintiffs seek to place a huge
administrative burden on the INS, while Plaintiffs are presently
able to fully develop their cases before the District Director.
The government's interest clearly outweighs the utility of
additional procedures.

d.   Plaintiffs show no actual prejudice

29

Furthermore, Plaintiffs fail to show actual prejudice in the denial of a hearing before an immigration judge.  First and foremost, the case of Plaintiff Esparza demonstrates that a returning lawful permanent resident alien seeking admission can obtain parole even without a hearing before an immigration judge. Plaintiffs must affirmatively show that the result would be different for an immigration judge applying the same criteria set forth in § 212(d)(5)(A).  They cannot.  Plaintiffs have had every opportunity to develop their parole requests to the District Director.  There is no reason to believe that an immigration judge applying § 212(d)(5)(A) would reach any different result, especially on the sparse showings made by Plaintiffs to the District Director.  Accordingly, their due process claims lack merit.

> 4.   The government's decision to relieve Plaintiffs of personal property during their detention at a government facility does not violate due process because the government's rules are reasonable

>> a.   Plaintiffs' lack standing to raise the challenge to the holding of personal property

While Plaintiffs seek an injunction regarding the holding of a detainees personal property while in detention, only Plaintiff Esparza makes any allegations regarding the possession of personal property.  First Amended Complaint at ¶ 33.  A litigant

must have suffered, or be threatened with, an actual injury
traceable to the defendants and likely to be redressed by a
favorable judicial decision.  Lewis v. Continental Bank, 494 U.S.
472, 477 (1990).  The courts may not "decide questions that
cannot affect the rights of litigants in the case before them."
Lewis v. Continental Bank, 494 U.S. at 477.  A federal court may
only decide "real and substantial controvers[ies] admitting of
specific relief through a decree of a conclusive character, as
distinguished from an opinion advising what the law would be upon
a hypothetical state of facts."  Id.  While a suit may have been
considered alive at the inception of the suit, "[t]he parties
must continue to have a 'personal stake in the outcome' of the
lawsuit."  Id. at 478, citing Los Angeles v. Lyons, 461 U.S. 95,
101 (1990).

However, Esparza is no longer in detention.  See Plaintiffs'
Exhibit F at 3.  Thus, his claims are moot, and he lacks standing
to obtain an injunction regarding the confiscation of personal
property while in detention on his behalf.  Moreover, as he is no
longer in detention and lacks standing, he can no longer pursue
injunctive relief on a class-wide basis.  Lewis v. Casey, 116 S.
Ct. 2174, 2183 (1996).

31

b.   Plaintiffs demonstrate no substantial
likelihood of success on the merits because
the limitations on personal property held by
detainees is reasonable

Plaintiffs show no substantial likelihood of succeeding in
their due process challenge to the INS's decision to hold the
"property" of inmates at federal detention facilities.
Plaintiffs do no more than cite to the Court's prior decision in
Ascencio-Guzman to suggest that the Court previously decided the
issue of document confiscation.   TRO Motion at 6.   That
suggestion is false.   The Court's Order held that "Defendants act
arbitrarily and capriciously, inconsistent with Due Process, when
they confiscate green cards from non-arriving permanent residents
placed under expulsion proceedings and not held in custody,
without making the determination on a case by case basis as
required by the McNary Memo. . . ."   Ascencio-Guzman, No. 94-215,
Docket Entry 104 at 3.   This was not a finding with respect to
whether the INS could relieve an alien being held in detention of
personal property during the alien's detention.   Thus,
Plaintiffs' reliance is improper.

Moreover, Plaintiffs' reliance is improper for a second
reason.   Presently, this Court in Ascencio-Guzman is in the
process of determining whether the issue was even properly before

32

it, following the Fifth Circuit's vacatur and remand.  Thus,
Plaintiffs' reliance on the Court's initial decision is
precipitate and misplaced.

Additionally, Plaintiffs' due process argument is without
merit because their analysis is incorrect.  The Fifth Circuit has
determined that in evaluating whether detainees may retain
personal property during their detention at a federal facility,
the <u>Mathews</u> balancing test is improper; rather, the Fifth Circuit
has explained that a detention facility's decision to limit the
personal property held by a detainee while in custody must be
upheld unless it is unreasonable and arbitrary.  <u>Sullivan v.
Ford</u>, 609 F.2d 197, 198 (5th Cir. 1980).  However, under that
review, "[j]udicial interference with prison administration
should be avoided whenever possible. . . ."  <u>Sullivan</u>, 609 F.2d
at 198.  "Prison inmates necessarily suffer a limitation of
rights, including property rights, enjoyed by ordinary citizens."
<u>Id</u>., <u>citing</u> <u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974).  "A
state has a compelling interest in maintaining security and order
in its prisons and, to the extent that it furthers this in
reasonable and nonarbitrary ways, property claims by inmates must
give way."  <u>Sullivan</u>, 609 F.2d at 198.

33

Here, as federal detainees, Plaintiffs have a minimal due process interest in possessing personal property while at a federal detention facility.  INS acts reasonably when it prohibits the possession of personal property during an alien's detention, as the possession of a variety of personal property may be deemed to be inconsistent with the security needs of the facility.  <u>Sullivan</u>, 609 F.2d at 198.  In the instant case, INS has detailed procedures regarding the relieving of personal property.  Under that policy, alien detainees are permitted to retain:  (1) small religious items; (2) softbound religious and secular reading material and correspondence; (3) legal documents and papers, including property receipts; (4) no more than ten pictures measuring 5" x 7" or smaller; (5) prescription glasses; (6) dentures; (7) personal address book or pages; (8) wedding ring; and (9) other items approved by the Chief Detention Enforcement Officer.  Alien detainees are not permitted to retain:  (1) cash; (2) negotiable instruments; (3) jewelry; (4) other items of value, <u>e.g.</u>, cameras, radios, stereos; (5) personal clothing and hygiene items when the facility provides those; (6) prohibited publications; and (7) drugs and medications.

34

As for cataloguing property, INS has in place a triple-redundant system.  If it is determined that the alien possesses property which they should not retain during detention, two officers must be present to relieve the alien of the property. The two officers must complete a G-589, on which they record an inventory in the detainee's presence.  Upon completion of the inventory, the two officers and the detainee sign the form and its copies.  One copy of the form is given to the detainee, one to the alien's file, and one copy accompanies the envelope containing the property.  The envelope and a copy of the G-589 are then given to a processing officer, who logs in the entry of the property and places the property and the G-589 in a safe. Afterward, a supervisory officer verifies the correctness of the G-589 and records each item in a supervisor's property log.

These policies permit an alien to retain such property as will be useful in the prosecution of their cases, while prohibiting property which poses a danger to the security of a facility.  Thus, it is quite reasonable, the alien's interest in property must give way, and the Court should not insert itself into detention facility policy.  Id.[10]

----

[10]  Alternatively, Plaintiffs' due process claim should fail
(continued...)

35

B.    Plaintiffs Do Not Face Irreparable Harm

Plaintiffs will not suffer irreparable harm if denied an injunction.  Parole may be granted only in the discretion of the Attorney General.  As the Fifth Circuit has indicated, there is no circumstance in which the Attorney General must be given parole.  <u>Gisbert</u>, 988 F.2d at 1442.  It has also been determined that an alien should not be able to equate deportation with irreparable harm.  <u>See</u> <u>Ignacio</u>, 955 F.2d at 299.

With regard to the alleged "property claims," as was previously explained, alien detainees are permitted to retain a wide variety of personal property.  Moreover, the only alien making a personal property claim obtained counsel and obtained parole.  Thus, he no longer faces irreparable harm.

---

[10](...continued)
because there is no allegation of the intentional misplacing of property.  If the INS has negligently mislain property, that does not give rise to a due process claim.  <u>Daniels v. Williams</u>, 474 U.S. 327, 332 (1986).

Moreover, it is unclear whether it was INS or the U.S. Customs Service which allegedly confiscated Esparza's wallet, if it ever existed.  While a border patrol officer did initially detain and process Esparza, he was immediately paroled to the U.S. Customs Service for prosecution.  Thus, it may be the U.S. Customs Service which has the wallet as potential evidence of Esparza's unlawful conduct.

Regardless, it is clear that Esparza cannot seek an injunction prohibiting the INS future actions because it is not absolutely certain that he will ever be subjected to them again. <u>Los Angeles v. Lyons,</u> 461 U.S. 95, 101 (1990).

C.    The Hardship Favors The INS In This Case

The hardships in this case favor the INS.  The granting of a injunction would have a negative impact on the INS.  As previously discussed, requiring the INS to conduct parole hearings before immigration judges would represent a serious strain on the INS's resources.  The diversion of personnel and resources would greatly compromise the agency's ability to effectively and expediently adjudication parole requests.

D.    The Public Interest Is Not Served by Issuing An Injunction

Granting Plaintiffs' request for an injunction would not serve the public interest.  As IIRIRA reflects, it is in the public interest to remove illegal aliens as expeditiously as possible.  Senate Report at 7.  Congress has noted that the presence of illegal aliens has a dramatic impact on public policy because those aliens who contravene the immigration laws cause public sentiment to turn sour against even those aliens who are in the United States legally.  Id.  The Senate Judiciary Committee's report states that

> [a]liens who enter or remain in the United
> States in violation of our law are
> effectively taking immigration opportunities
> that might otherwise be extended to others,
> potential legal immigrants whose presence
> would be more consistent with the judgment of

37

>       the elected government of this country about
>       what is in the national interest.

Id.; see also House Rep. No. 104-469(I), 1996 WL 168955 at 366,

104th Cong., 2d Sess. (1996) ("In short, our immigration laws

should enable the prompt admission of those who are entitled to

be admitted, the prompt exclusion or removal of those who are not

so entitled, and the clear distinction between those

categories").  As a Senate Committee Report states:

>       Aliens who violate U.S. immigration law
>       should be removed from this country as soon
>       as possible.  Exceptions should be provided
>       only in extraordinary cases specified in the
>       statute and approved by the Attorney General.
>       Aliens who are required by law or the
>       judgment of our courts to leave the United
>       States are not thereby subjected to a
>       penalty.  The opportunity that U.S.
>       immigration law extends to aliens to enter
>       and remain in this county is a privilege, not
>       an entitlement.

S. REP. No. 104-249, 104th Cong., 2d Sess. 7 (1996) ("Senate

Report").  Plaintiffs' per se rules requiring additional hearings

and mandatory grants of parole to aliens otherwise found in the

congressional judgment to be dangerous would undermine the

security of the nation's borders.  It is in the public interest

to uphold the immigration laws and to execute congressional

intent.  Plaintiffs should therefore be denied an injunction.

III. THE COURT LACKS JURISDICTION TO ISSUE CLASS-WIDE INJUNCTIONS

38

The Court should deny Plaintiffs' effort to seek class-wide relief. The Court lacks jurisdiction to issue class-wide relief regarding detention procedures under INA §§ 235 & 236. INA § 242(f)(1) provides:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of chapter 4 of title II, as amended by the Illegal Immigration Reform and Immigration Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such chapter [part] have been initiated.

8 U.S.C. § 1252(f)(1) (Supp. 1997).

In the instant case, Plaintiffs seek to enjoin the operation of INA § 235, which is in chapter 4 of title II of the INA. First Amended Complaint at 13-16. In particular, they seek an injunction requiring the INS to conform the operation of INA § 235 to the procedures outlined at INA § 236. While they may seek such injunctions on their own behalf (where appropriate), they cannot seek an injunction for other aliens. Thus, the request for a class-wide injunction is improper.[11]

---

[11] It also bears mentioning that Plaintiffs' seek an
(continued...)

39

CONCLUSION

For the foregoing reasons, Plaintiffs' TRO Motion and Motion

for Preliminary Injunction should be denied.

Respectfully submitted,

ROBERT D. MCCALLUM                GREGORY A. SERRES
Assistant Attorney General        United States Attorney
Civil Division                    Southern District of Texas

DAVID V. BERNAL                   LISA M. PUTNAM
Assistant Director                Special Assistant U.S. Attorney
Office of Immigration             Ga. Bar No. 590315/
      Litigation                  Federal Bar No. 23937
                                  P.O. Box 1711
                                  Harlingen, Texas 78551
                                  Tel:  (956) 389-7051
                                  Fax:  (956) 389-7057

for  Ernesto H. Molina, Jr.
Senior Litigation Counsel
Attorney in Charge
Ca. Bar No. 18134
U.S. Dept. of Justice
Civil Division
Office of Immigration
      Litigation
P.O. Box 878                      DATE:   January 23, 2002
Washington, DC  20044
Tel:  (202) 616-9344
Fax:  (202) 616-4975

---

[11](...continued)
injunction on behalf of all aliens returned to Mexico under INA §
235(b)(2)(C).  However, none of the Plaintiffs are in that
circumstance, and an injunction for such a hypothetical person is
improper.  Lewis v. Casey, 116 S. Ct. 2174, 2183 (1996).
Moreover, such person are presently the subject of litigation in
Ascencio-Guzman, litigating the same or similar issues.
Therefore an injunction on their behalf is improper.

40

CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2002, a copy of the

foregoing document was served on Plaintiffs by U.S. Mail

addressed to:

> Lisa Brodyaga
> 17891 Landrum Park Road
> San Benito, TX  78586

> LISA PUTNAM
> Special Assistant U.S. Attorney

41

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ISRAEL HERNANDEZ-LEIJA,          )
    et al,                       )
                                 )
    Plaintiffs/Petitioners,      )
                                 )   No. B-01-206
    v.                           )
                                 )
E.M. Trominski, et al.,          )
                                 )
    Defendants/Respondents.      )
_____)

ORDER

    Upon consideration of Plaintiffs' Application for Temporary
Restraining Order and Motion for Preliminary Injunction with
Incorporated Points and Authorities, and the response filed by
Defendants, it is:

    ORDERED, that Application for Temporary Restraining Order
and Motion for Preliminary Injunction with Incorporated Points
and Authorities is DENIED.

Done at Brownsville, Texas,
this _____ day of _____, 2002.


                             _____

                             United States District Judge