United States District Court
Southern District of Texas
FILED

MAY 2 0 2002

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ISRAEL HERNANDEZ-LEIJA, et al )
                              )
v.                            )        C.A. No.  01-206
                              )
E.M. TROMINSKI, et al.        )
_____)


PLAINTIFFS' RESPONSE TO DEFENDANTS/RESPONDENTS' PRELIMINARY
OPPOSITION TO PLAINTIFFS/PETITIONERS' APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION


TABLE OF CONTENTS

I.  JURISDICTION ........................................... 1
    A.  8 U.S.C. §1252(A)(2)(B)(ii) ....................... 1
        1.  EVEN AS A CHALLENGE TO THE EXERCISE OF
        DISCRETION BY INS, THIS COURT HAS JURISDICTION
        IN HABEAS CORPUS AND ADMINISTRATIVE PROCEDURE
        ACT, 5 U.S.C. §702 et seq. ........................ 3
        2.  AS A CHALLENGE TO THE CONSTITUTIONALITY OF
        THE PROCEDURES ADOPTED BY RESPONDENTS FOR
        ADJUDICATING THE REQUESTS, THIS COURT ALSO HAS
        JURISDICTION IN HABEAS CORPUS .................... 6
    B. NOR DOES 8 U.S.C. §1252(f)(1) BAR JURISDICTION .... 6

II.  THE CLAIM REGARDING NOTICE OF PAROLE IS NOT MOOT ..... 8

III. PETITIONERS ARE ENTITLED TO PRELIMINARY RELIEF ....... 8
    A.  HABEAS CORPUS ................................... 9
        1.  UNDER ZADVYDAS, PETITIONERS HEREIN HAVE A
        LIBERTY INTEREST IN PAROLE ...................... 10
        2.  THE "URGENT HUMANITARIAN REASONS OR
        SIGNIFICANT PUBLIC BENEFIT" CRITERIA OF 8
        U.S.C. §1182(d)(5)(A) SHOULD BE CONSTRUED
        AS SATISFIED BY PETITIONERS' STATUS AS PERMANENT
        RESIDENTS ....................................... 12

      3.  THE ADDITIONAL VALUE OF A HEARING IS SELF-
      EVIDENT, PARTICULARLY IN LIGHT OF INS' STATED
      REASONS FOR DENYING PETITIONERS' APPLICATIONS
      FOR PAROLE ......................................   15
  B. NOTICE OF THE POSSIBILITY OF, MEANS FOR REQUESTING
     PAROLE, AND HEARINGS ON PAROLE APPLICATIONS ......   16
  C.  CONFISCATION OF PERSONAL DOCUMENTS ..............   18
  D.  CONFISCATION OF PERSONAL PAPERS..................   19
  E.  IRREPARABLE HARM ................................   19

CERTIFICATE OF SERVICE ...................................   20

## TABLE OF AUTHORITIES

### CASES

*Ascencio-Guzman et al v. Trominski et al,*
    CA B-94-215 (S.D.Tx), pending . . . . . . . . 2, 9, 17, 18

*Atkins v. Parker,*
    472 U.S. 115 (1985) . . . . . . . . . . . . . . . . . 18

*Bernal-Vallejo v. INS,*
    195 F.3d 56 (1st Cir. 1999) . . . . . . . . . . . . . . 2

*Bolling v. Sharpe,*
    347 U.S. 497 (1954) . . . . . . . . . . . . . . . . . 14

*Calcano v. INS,*
    121 S.Ct. 2268 (2001) . . . . . . . . . . . . . . . . 2

*Cantu-Salinas et al v. Trominski,*
    C.A. B-97-183 (S.D.Tx. 1998) . . . . . . . . . . . 11, 12

*Carlson v. Landon,*
    342 U.S. 524 (1952) . . . . . . . . . . . . . . . . 11

*City of West Covina v. Perkins,*

525 U.S. 234 (1999) . . . . . . . . . . . . . . . . . 18

*Dominguez-Infante v. Trominski,*
    CA B-99-051 (S.D.Tx. 1998) . . . . . . . . . . . . . 11

*Gisbert v. U.S. Attorney General,*
    998 F.2d 1437 (5th Cir. 1993) . . . . . . . . . . . 10

*Gonzalez-Noyola v. Trominski,*
    C.A. No. B-01-058 (S.D.Tx. 2001) . . . . . . . . . 15, 16

*Heikkila v. Barber,*
    345 U.S. 229 (1953) . . . . . . . . . . . . . . . . 2, 3

*Hoang v. Comfort,*
    282 F.3d 1247 (10th Cir. 2002) . . . . . . . . . . . 2

*Ignacio v. INS,*
    955 F.2d 295 (5th Cir. 1992) . . . . . . . . . . 19, 20

*INS v. St. Cyr,*
    121 S.Ct. 2271 (2001) . . . . . . . . . . . . . . 2, 11

*Jama v. INS,*
    2002 WL 507046 (D.Minn.) . . . . . . . . . . . . . . 3

*Jimenez-Orosco v. Trominski,*
    CA B-97-223 (S.D.Tx. 1998) . . . . . . . . . . . . . 11

*Kim v. Ziglar,*
    276 F.3d 523 (9th Cir. 2002) . . . . . . . . . . . . 2

*Kwock Jan Fat v. White,*
    253 U.S. 454 (1920) . . . . . . . . . . . . . . 4-6, 16

*Landon v. Plasencia,*
    459 U.S. 21 (1982) . . . . . . . . . . . . . . . 10, 15

*Loa-Herrera v. Trominski,*

231 F.3d 984 (5th Cir. 2000) . . . . . . . . . . . . . 1, 2, 9

*Manuel Made v. Ashcroft,*
01Civ - 1039 (D.N.J. 2001), app. dismissed . . . . 7, 8, 13

*Marcello v. Bonds,*
349 U.S. 302 (1955) . . . . . . . . . . . . . . . . . . 16

*Mathews v. Eldridge,*
424 U.S. 319 (1976) . . . . . . . . . . . . . . . . 15, 17

*Molina v. Sewell,*
983 F.2d 676 (5th Cir. 1993) . . . . . . . . . . . . . 10

*Mullane v. Central Hanover Bank & Trust,*
339 U.S. 306 (1950) . . . . . . . . . . . . . . . . . . 17

*Nunez v. Boldin,*
537 F. Supp. 578 (S.D.TX. 1982),
app. dis., 692 F.2d 755 (5th Cir. 1982) (Table) . . . . 19

*Patel v. Zemski,*
275 F.3d 299 (3rd Cir. 2001) . . . . . . . . . . . . . . 2

*Plyler v. Doe,*
102 S.Ct. 2382 (1982) . . . . . . . . . . . . . . . . . 14

*Reyna-Montoya et al v. Trominski et al,*
C.A. B-02-026 (S.D.Tx), pending . . . . . . . . . . 15, 20

*Roe v. Wade,*
410 U.S. 113 (1973) . . . . . . . . . . . . . . . . . . 8

*Rosenberg v. Fleuti,*
374 U.S. 449 (1963) . . . . . . . . . . . . . . . . . . 7

*Sierra v. INS,*
258 F.3d 1213 (10th Cir. 2001) . . . . . . . . . . . 3, 6

*Vermont Yankee v. Natural Resources Defense Council,*
    435 U.S. 519 (1978) . . . . . . . . . . . . . . . . . . . . 2

*Zadvydas v. Davis,*
    121 S.Ct. 2492 (2001) . . . . . . . . . . . . 2, 5, 10, 15


**STATUTES**

28 U.S.C. §1331 . . . . . . . . . . . . . . . . . . . . . . . 7

28 U.S.C. §1346(a)(2) . . . . . . . . . . . . . . . . . . . . 7

28 U.S.C. §2201 . . . . . . . . . . . . . . . . . . . . . . . 7

28 U.S.C. §2241 . . . . . . . . . . . . . . . . . . . . . 3, 9

5 U.S.C. §702 . . . . . . . . . . . . . . . . . . . . . . . . 3

8 U.S.C. §1101(a)(13) . . . . . . . . . . . . . . . . . . . 13

8 U.S.C. §1101(a)(13)(C) . . . . . . . . . . . . . . . . . . 16

8 U.S.C. §1182(d)(5)(A) . . . . . . . . . 1, 7, 12, 14, 16, 17

8 U.S.C. §1221 . . . . . . . . . . . . . . . . . . . . . . . 8

8 U.S.C. §1225(b)(2) . . . . . . . . . . . . . . . . . . 7, 16

8 U.S.C. §1225(b)(2)(A) . . . . . . . . . . . . . . . . . . . 7

8 U.S.C. §1226(a) . . . . . . . . . . . . . . . . . . . . . 14

8 U.S.C. §1226(e) . . . . . . . . . . . . . . . . . . . 1, 2, 6

8 U.S.C. §1252 . . . . . . . . . . . . . . . . . . . . . . . 2

8 U.S.C. §1252(a)(2)(B) . . . . . . . . . . . . . . . . . . . 3

8 U.S.C. §1252(A)(2)(B)(ii) . . . . . . . . . . . . . . . . . 1, 2

8 U.S.C. §1252(f)(1) . . . . . . . . . . . . . . . . . 6-8, 16

8 U.S.C. §1252(g) . . . . . . . . . . . . . . . . . . . . . . 3

Illegal Immigration Reform and Immigrant Responsibility Act,
    §309(c)(4)(E) . . . . . . . . . . . . . . . . . . . . . . 2

## REGULATIONS

8 C.F.R. Part 3 . . . . . . . . . . . . . . . . . . . . . . 16

8 C.F.R. §212.5(b) . . . . . . . . . . . . . . . . . 6, 12, 13

8 C.F.R. §212.5(b) . . . . . . . . . . . . . . . . . . 14, 17

8 C.F.R. §212.5(b)(3) . . . . . . . . . . . . . . . . . . . 13

8 C.F.R. §212.5(b)(5) . . . . . . . . . . . . . . . . . . . 14

8 C.F.R. §212.5(d) . . . . . . . . . . . . . . . . . 9, 13, 14

8 C.F.R. §235.3(b) . . . . . . . . . . . . . . . . . . . . . 12

8 C.F.R. §235.3(c) . . . . . . . . . . . . . . . . . . 12, 13

8 C.F.R. §236.1(c)(3) . . . . . . . . . . . . . . . . . . . 14

8 C.F.R. §264.5. . . . . . . . . . . . . . . . . . . . . . . 10

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ISRAEL HERNANDEZ-LEIJA, et al )
)
v. )        C.A. No.  01-206
)
E.M. TROMINSKI, et al. )
_____)

PLAINTIFFS' RESPONSE TO DEFENDANTS/RESPONDENTS' PRELIMINARY
OPPOSITION TO PLAINTIFFS/PETITIONERS' APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION

Petitioners/Plaintiffs herein, by and through counsel, file the
instant response to the "preliminary" opposition to Petitioners'
application for a temporary restraining order, and motion for
preliminary injunction filed by Respondents/Defendants, (herein
cited as (RsOPP:_). Respondents indicated therein that a more full
opposition would be forthcoming, [1] but none has been filed.

## I.  JURISDICTION
### A.  8 U.S.C. §1252(A)(2)(B)(ii)

Respondents first assert that all decisions respecting release from
custody, "including parole under INA §212(d)(5)(A) [8 U.S.C.
§1182(d)(5)(A)], are discretionary determinations falling with
title II of the INA." (RsOPP:6), and that review of such decisions
is therefore precluded by §1252(a)(2)(B)(ii) (RsOPP:5). In this
context, Respondents note that *Loa-Herrera v. Trominski,* 231 F.3d
984 (5th Cir. 2000), held that 8 U.S.C. §1226(e) barred review even
of constitutional issues arising from the administration of the
parole authority under §1226(a). (RsOPP:5,n.2). Although they now
disagree with "the conclusion reached by the Fifth Circuit," *id.*,
Respondents fail to note that it was they who urged this position,
and the Fifth Circuit's decision on this issue adopted the language

_____

[1]    *See,* (RsOPP:1-2,n.1). Nor has an Answer or Return been
filed, although service on all Respondents was complete as of
February 23, 2002, and returns of service were filed March 8, 2002.

of INS' brief nearly verbatim. [2]   Respondents also fail to note
that this holding can no longer be considered good law, following
*INS v. St. Cyr,* 121 S.Ct. 2271,285-86 (2001), citing *Heikkila v.
Barber,* 345 U.S. 229 (1953) (In the immigration context, the terms
"judicial review" or "jurisdiction to review" have historically
distinct meanings from "habeas corpus"). *See also, Calcano v. INS,*
121 S.Ct. 2268 (2001) and *Zadvydas v. Davis,* 121 S.Ct. 2492 (2001).

Respondents cite no cases decided after June of 2001 in support of
their claim that 8 U.S.C. §1252(a)(2)(B)(ii) deprives the Court of
jurisdiction. [3] Since the issuance of the *St. Cyr, Calcano,* and
*Zadvydas* trilogy, the federal courts have been all but unanimous in
holding that the jurisdictional bars enacted by IIRIRA, including
8 U.S.C. §1226(e), [4]  and those found in 8 U.S.C. §1252, [5] do not

---

[2]   The pertinent pages of Respondents' Fifth Circuit brief in
*Loa-Herrera* were filed on or about December 4, 2001 as Plaintiffs'
Exhibit "TT" in connection with Plaintiffs' Motion for Rule 11
Sanctions in *Ascencio-Guzman et al v. Trominski et al,* CA B-94-215.

[3]   INS cites *Vermont Yankee v. Natural Resources Defense
Council,* 435 U.S. 519,544 (1978) (RsOPP:6). That case involved the
"basic tenet of administrative law that agencies should be free to
fashion their own rules of procedure," *id* at 543, and concluded,
*id.* at 544, that agencies should normally be allowed to exercise
discretion in deciding how to best develop any needed evidence.

*Bernal-Vallejo v. INS,* 195 F.3d 56,63 (1st Cir. 1999), also cited
at (RsOPP:6), actually supports Petitioners' contentions. It held,
*id.* at 59-60, that IIRIRA §309(c)(4)(E) precluded the exercise of
jurisdiction only where: (1) the agency decision as to which review
is sought is a "decision under" one of the enumerated sections, and
(2) the agency decision rests on a ground that is committed to
agency discretion, and rejected INS' position that any decision
related to a final order under one of the enumerated sections was
within the scope of §309(c)(4)(E)'s prohibition of judicial review.

[4]   *See, e.g., Hoang v. Comfort,* 282 F.3d 1247 (10th Cir. 2002);
*Kim v. Ziglar,* 276 F.3d 523 (9th Cir. 2002), and *Patel v. Zemski,*
275 F.3d 299 (3rd Cir. 2001), all of which held that §1226(e) did

apply to habeas proceedings under 28 U.S.C. §2241.

Respondents also assert, (RsOPP:6), that:

> ... Plaintiffs allege that the INS improperly balanced
> the factors in deciding whether they should be granted
> parole. That, however, is a 'discretionary challenge in
> constitutional garb,' and the Court should hold that it
> lacks jurisdiction over the issue.

The instant case is primarily a constitutional challenge to INS'
refusal to provide parole hearings for LPRs, not to the exercise of
discretion in any given case. But even to the extent that
Petitioners challenge INS' denial of their individual applications
for parole, the Court has jurisdiction over such claims under 28
U.S.C. §2241, coupled with the Administrative Procedure Act.

### 1. EVEN AS A CHALLENGE TO THE EXERCISE OF DISCRETION BY INS, THIS COURT HAS JURISDICTION IN HABEAS CORPUS, TOGETHER WITH THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §702 *et seq*.

Since the named Petitioners whose parole requests were denied are,
by definition, still in Respondents' custody, there would be no bar
to conducting habeas review, under 28 U.S.C. §2241, of INS' denial
of their requests for parole. The ample scope of such jurisdiction
is seen from cases decided in the *Heikkila* period, when the only
review of deportation orders available was that of habeas corpus.

---

not bar constitutional challenges to §1226(c).

[5] *See, for example, Sierra v. INS*, 258 F.3d 1213,1217 (10th
Cir. 2001) (8 U.S.C. §1252(a)(2)(B) does not bar review of
constitutionality of parole procedures, both because it does not
apply in habeas proceedings, and because "[i]t is never within the
Attorney General's discretion to act unconstitutionally."); 
*Montero-Martinez v. Ashcroft*, 277 F.3d 1137 (9th Cir. 2002) (BIA's
determination that adult daughter did not qualify as a "child" was
not a "judgment" regarding the granting of relief, and thus was not
protected from judicial review under 8 U.S.C. §1252(a)(2)(B)); and
*Jama v. INS*, 2002 WL 507046 (D.Minn.) (8 U.S.C. §1252(g) does not
deprive the Court of jurisdiction under 28 U.S.C. §2241 to bar INS
from executing a removal order).

For example, in a moving and masterful opinion by Justice Clarke, the Court held that even the sweeping powers granted under the Chinese Exclusion Act to the Secretary of Labor were circumscribed by constitutional principles, and remanded for a hearing on a petition challenging an order under that Act. *Kwock Jan Fat v. White*, 253 U.S. 454,457-458 (1920) (internal citations omitted):

> It is fully settled that the decision by the Secretary of Labor, of such a question as we have here, is final, and conclusive upon the courts, unless it be shown that the proceedings were "manifestly unfair," were "such as to prevent a fair investigation," or show "manifest abuse" of the discretion committed to the executive officers by the statute,... or that "their authority was not fairly exercised, that is, consistently with the fundamental principles of justice embraced within the conception of due process of law," .... The decision must be after a hearing in good faith, however summary, ... and it must find adequate support in the evidence, ...

And *id.*, at 464:

> The acts of Congress give great power to the Secretary of Labor over Chinese immigrants and persons of Chinese descent. It is a power to be administered, not arbitrarily and secretly, but fairly and openly, under the restraints of the tradition and principles of free government applicable where the fundamental rights of men are involved, regardless of their origin or race. It is the province of the courts, in proceedings for review, within the limits amply defined in the cases cited, to prevent abuse of this extraordinary power .... It is better that many Chinese immigrants should be improperly admitted than that one natural born citizen of the United States should be permanently excluded from his country.

The power given to Respondents over LPRs seeking readmission is no greater than the "extraordinary power" over persons of Chinese descent seeking readmission previously ceded to the Secretary of Labor by the Chinese Exclusion Act. In both cases, the power must be exercised in accord with Constitutional restraints. INS' denial of parole of the named Petitioners who are still detained clearly

4

fail Justice Clarke's test: Petitioner Grimaldo was denied because
INS concluded that it was "not in the best interest of the U.S.
Immigration and Naturalization Service" to release him pending a
decision in his case. (Exhibit G, at p. 3). Petitioner Hernandez'
request was denied because INS determined that it was "not in the
best interest of the service [i.e., INS] or the public" to grant
him parole. (Exhibits A and E). [6] If the consequences were not so
grave both denials would be laughable: for the lack of procedural
safeguards, and for the reasons given. In neither case was there
"hearing in good faith, however summary." Neither decision finds
"adequate support in the evidence." It is also a "manifest abuse"
of discretion to deny parole because it is not in the interest of
**INS**, whether in whole or in part. This was the sole ground given
in the case of Petitioner Grimaldo, and in Mr. Hernandez' case,
INS' interests were allegedly considered together with those of
"the public." But the sentencing judge in his criminal case found
probation, (i.e., conditional liberty), to be in the best interest
of the public, and INS has articulated no reason for ignoring this
finding. Therefore, even with this additional element, the denial
is also a "manifest abuse" of discretion.

Under *Zavydas, supra*, Petitioners are entitled to an even more
generous scope of review than under the Chinese Exclusion Act.
*Zavydas* recognized the fundamental liberty interest at stake, and
explicitly applied a Substantive Due Process analysis, concluding,
at 2498-9 (emphasis in original)(internal citations omitted), that:

---

[6]    Respondents assert, (RsOPP:17), that:

   After entertaining the applications for parole file by
   the Plaintiffs through their respective counsel, each was
   denied because, in the judgment of the District Director,
   their release would not be "in the public's interest or
   of an urgent humanitarian nature."

Unless Respondents are equating INS' interest and the "public's
interest or ... urgent humanitarian nature," this is not true.

> [T]his Court has said that government detention violates
> that Clause unless the detention is ordered in a *criminal*
> proceeding with adequate procedural protections,... or,
> in certain special and "narrow" non-punitive
> "circumstances," where a special justification, such as
> harm-threatening mental illness, outweighs the
> "individual's constitutionally protected interest in
> avoiding physical restraint."

The Court rejected the two such "special justifications" tendered
by INS, to wit, risk of flight, and danger to the community. Not
coincidentally, these are the same criteria mentioned in 8 C.F.R.
§212.5(b), and are the very criteria under which Petitioners assert
that their applications for parole should be **adjudicated**. *See,*
*Kwock Jan Fat v. White, supra,* requiring that the "decision must be
after a hearing in good faith, however summary, ... and it must
find adequate support in the evidence." Petitioners are entitled
to no less, (and quite possibly more), but they received neither.

**2.   ALSO AS A CHALLENGE TO THE CONSTITUTIONALITY OF THE
PROCEDURES ADOPTED BY RESPONDENTS FOR ADJUDICATING THE
REQUESTS, THIS COURT HAS JURISDICTION IN HABEAS CORPUS.**

INS also asserts, (RsOPP:6-7), as follows:

> [T]o the extent Plaintiffs challenge the Attorney
> General's discretionary choice of procedures to afford
> parole, they attack a decision within the Attorney
> Generals discretion, and accordingly, the Court lacks
> jurisdiction over the challenge.

This is equally bogus, as conceded when Respondents admitted that
§1226(e) does not bar judicial review of constitutional issues.
(RsOPP:5,n.2). As expressed in *Sierra v. INS, supra,* "[i]t is never
within the Attorney General's discretion to act unconstitutionally"

**B. NOR DOES 8 U.S.C. §1252(f)(1) BAR JURISDICTION HEREIN**

Respondents' final jurisdictional argument, found at the very end
of their brief, is that a class-wide injunction would be barred by
8 U.S.C. §1252(f)(1) (RsOPP:38-39).  If the injunction were

properly formulated, §1252(f)(1) would not create an obstacle.

By its terms, §1252(f)(1) applies only to injunctions restraining the operation of Chapter 4 of title II, [8 U.S.C. §1221 et seq], and does not apply to the means by which the parole authority of 8 U.S.C. §1182(d)(5) is administered. An injunction would not "enjoin or restrain the operation" of any provision of chapter 4, Title II if it simply mandated that Respondents inform all LPRs detained under 8 U.S.C. §1225(b)(2) of the existence of, and means for requesting, parole under 8 U.S.C. §1182(d)(5), and prior to denying a request, provide a "hearing in good faith, however summary." The fact that the person was detained pursuant to §1225(b)(2), like the fact that he or she is a lawful permanent resident, would simply be part of the definition of the group to whom the injunction applies, and would not affect the "operation" of chapter 4, Title II.

Similarly, §1252(f)(1) would not bar a class-wide declaratory judgment, under 28 U.S.C. §2201 et seq, together with 28 U.S.C. §1331 (federal question), and §1346(a)(2) (actions against Officers of the United States). And, by its terms, §1252(f) does not bar injunctions in individual cases, even where they go beyond the issue of parole, into the merits of the case. See, Manuel Made v. Ashcroft, 01Civ - 1039 (D.N.J. 2001), app. dismissed, holding that that LPRs seeking readmission after Fleuti-type departures are not "arriving aliens" under 8 U.S.C. §1225(b)(2)(A), because IIRIRA did not abolish the Fleuti doctrine. [7] (Petitioners' Exhibit K, herein incorporated by reference). [8] Nor would class-wide declaratory

---

[7]   Rosenberg v. Fleuti, 374 U.S. 449 (1963) (LPR who makes an innocent, casual, and brief trip abroad is not seeking "entry" on his return, and is not subject to exclusion proceedings).

[8]   In Made, which was virtually identical to the posture of the Petitioners herein, the resident was not only released on recognizance, but proceedings were terminated on the basis that he

relief, coupled with a procedure under which class members could receive expedited treatment of individual habeas petitions, be prohibited by §1252(f), even where the content of the declaratory judgment, and individual injunctions, addressed matters within the scope of Chapter 4, Title II, of the Act. [8 U.S.C. §1221 et seq].

## II. THE CLAIM WITH RESPECT TO NOTICE OF PAROLE IS NOT MOOT

INS' first argument on the merits is that Plaintiffs' notice claim is moot, (RsOPP:3-4). However, this is a quintessential example of a situation that is capable of repetition, yet evading review. *See, e.g., Roe v. Wade*, 410 U.S. 113 (1973). Respondents never informed Petitioners of the existence of parole, much less of the means to request it. The fact that, through counsel, Petitioners learned of the existence of parole, and requested it, is beside the point. Petitioners seek notice not just of the right to *request* parole, but also of the *means* of requesting it, and that they be given a hearing, before such a request is finally denied.

That this claim is not moot is illustrated by those Petitioners who have been released on parole. They are LPRs, and could find themselves in a confrontation with INS at the border at some point in the future, when counsel was not readily available to explain the mechanics of requesting parole, much less, to prepare and file the request on their behalf. Plaintiffs urge that they, and the class they seek to represent, be given this information by Respondents at the time of such encounters, so that they would have the necessary information to request parole on their own.

## III. PETITIONERS HAVE SHOWN ENTITLEMENT TO PRELIMINARY RELIEF

Respondents next urge that Petitioners have not shown entitlement

---

was not seeking admission. INS appealed to the BIA, but essentially abandoned its appeal, and the BIA sustained the order of the Immigration Judge terminating proceedings. *Id.*

to preliminary relief.  In this context, Petitioners would note that they have not yet sought class certification, so the relief sought is, at this stage, limited to their individual cases. [9]

Petitioners also vigorously reject Respondents' accusation, (RsOPP:8,9), that Petitioners have "actually misinform[ed] the Court of the nature of the *Ascencio-Guzman* case," and that "Plaintiffs are not being forthright regarding what was done in the district court." [10]  This charge goes far beyond the "Pot calling the Kettle black."  *See,* Petitioners' pending Rule 11 motion in *Ascencio-Guzman*.  The record in *Ascencio-Guzman* speaks for itself.

## A.  HABEAS CORPUS

Petitioners assert that their detention violates both Substantive and Procedural Due Process, as well as international law and U.S. treaty obligations with their native country of Mexico, which claims are cognizable in habeas corpus under 28 U.S.C. §2241. They seek preliminary and permanent injunctions, requiring Respondents to provide hearings on their parole requests before an Immigration Judge or other impartial adjudicator, and that at said hearing, their parole requests be adjudicated on the basis of whether they present a flight risk, or constitute a danger to the community, and the criteria of 8 C.F.R. §212.5(d).  They further urge that, upon release from custody, all lawfully possessed personal papers and other property or documents, (with the exception of their "green

_____

[9]  In her phone message on May 13, 2002, regarding the motion to add Ruben Prado as a Petitioner, the undersigned also requested that Mr. Molina advise her as to his position with respect to class certification.  Although he has not yet returned the call, it is virtually a foregone conclusion that he will oppose such a motion, which motion Petitioners plan to file in the near future.

[10]  It should be noted that the Fifth Circuit was troubled only by "the government's **contention**" of procedural problems before the District Court, and did not **find** that any such irregularities existed. *Loa-Herrera v. Trominski*, 231 F.3d 988.  Petitioners are also "troubled" by these contentions, which are totally baseless.

cards"), confiscated by Respondents be returned, and that they be given appropriate proof of their status as LPRs. 8 C.F.R. §264.5.

### 1. UNDER *ZADVYDAS*, THERE CAN BE NO QUESTION BUT THAT THE PETITIONERS HEREIN HAVE A LIBERTY INTEREST IN PAROLE.

Respondents claim, (RsOPP:20-24), that Petitioners have no "liberty interest" in parole, citing several pre-*Zadvydas* cases, including *Gisbert v. U.S. Attorney General,* 998 F.2d 1437 (5th Cir. 1993). [11] Said case did, in fact, hold that excludable aliens had no liberty interest in parole, and that the indefinite detention of Mariel Cubans did not violate their substantive or procedural due process rights. But, unlike the Petitioners herein, the aliens in *Gisbert* were not LPRs. [12]  And the Court's conclusion in *Gisbert* that indefinite detention **of any person** does not implicate fundamental liberty interests cannot survive *Zadvydas, supra* at 2498:

A statute permitting indefinite detention of an alien

---

[11]  Respondents urge, (RsOPP:21) (emphasis added), that the conclusion that Plaintiffs have no liberty interest in parole is:

> particularly appropriate for an alien at the border, like the Plaintiffs, **where the only rights an alien has are those afforded by Congress**.

This is a blatant misstatement of the law. It is settled law that LPRs, such as the Petitioners, are entitled to Due Process when seeking readmission. *Landon v. Plasencia,* 459 U.S. 21,33 (1982); *Molina v. Sewell,* 983 F.2d 676,680 (5th Cir. 1993):

> *Landon* recognized that, unlike an alien seeking to enter the United States for the first time, a returning resident alien retains a constitutional right to due process. 459 U.S. at 32-33. The fact that an alien is subject to deportation proceedings does not affect his status as a permanent resident alien. A permanent resident alien's status terminates only when the order of deportation is affirmed by the BIA or otherwise becomes administratively final.

[12]  Similarly, the petitioner in *Sierra v. INS, supra,* was a Mariel Cuban, not an LPR, so the Court found no Due Process violation, even though it exercised jurisdiction over his petition.

> would raise a serious constitutional problem.  The Fifth
> Amendment's Due Process Clause forbids the Government to
> "depriv[e]" any "person ... of ... liberty ... without
> due process of law."    Freedom from imprisonment--from
> government custody, detention, or other forms of physical
> restraint--lies at the heart of the liberty that Clause
> protects.

Nor do older Supreme Court cases go nearly so far as Respondents claim.  For example, *Carlson v. Landon*, 342 U.S. 524, 545-546 (1952), upheld temporary detention of an alien during deportation proceedings, but noted that the "problem of ... unusual delay" was not present.  Petitioners' cases clearly present problems of "unusual delay."  The legal issues involved are complex, and will doubtless be resolved only at the Fifth Circuit, if not before the Supreme Court.  They must exhaust their administrative remedies through the BIA before their constitutional claims can even be heard:  in the first instance, before this Court, in habeas corpus, and thereafter, at the Fifth Circuit, if not the Supreme Court.

For example, the issues raised by the series of habeas petitions headed by *Cantu-Salinas et al v. Trominski,* C.A. B-97-183, were not resolved until 2001, when the Supreme Court decided *INS v. St. Cyr, supra.*  Some of those petitioners were in deportation proceedings for a decade or longer before their cases were finally concludeded. *See, e.g., Jimenez-Orosco v. Trominski,* CA B-97-223.  Mr. Jimenez was placed in deportation proceedings in 1988, and was just granted §212(c) relief on May 13, 2002.  Some are still under proceedings. *See, e.g., Dominguez-Infante v. Trominski*, CA B-99-051.    Mr. Dominguez was placed in proceedings in 1990, and although his case was remanded by the BIA on January 9, 2002, it has not been rescheduled before the Immigration Judge, due to a computer glitch, which the Immigration Court has not yet been able to resolve. [13]

---

[13]   The Immigration Court's computer does not reflect the remand, and therefore refuses to schedule a hearing.

The issues in the cases at bar [14] are even more complex than those in the *Cantu* series, and will be just as hard fought.  As such, Petitioners face a "problem of ... unusual delay."  And most crucially, the "unusual delay," coupled with their inability to be released, generates enormous pressure to forego the legal struggle, and return deported, so that they may support their families.

    **2.  FOR 8 U.S.C. §1182(d)(5)(A) TO PASS CONSTITUTIONAL MUSTER, THE "URGENT HUMANITARIAN REASONS OR SIGNIFICANT PUBLIC BENEFIT" CRITERIA THEREOF SHOULD BE CONSTRUED AS SATISFIED BY PETITIONERS' STATUS AS PERMANENT RESIDENTS.**

Although the parole requests were denied, in whole or part, for the stated reason that it was not **in INS' interest** to release the Petitioners on parole, Respondents now argue that the requests did not present "urgent humanitarian reasons or significant public benefit," within the meaning of 8 U.S.C. §1182(d)(5) (RsOPP:25-27).

This is the heart of the case.  8 U.S.C. §1182(d)(5)(A), restricts parole to "urgent humanitarian reasons or significant public benefit." With the proviso that the applicant "present neither a security risk nor a risk of absconding," 8 C.F.R. §212.5(b) lists some situations which may fulfill the statutory criteria:

> (b) The parole of aliens within the following groups who have been or are detained in accordance with §235.3(b) or (c) of this chapter would generally be justified only on a case-by-case basis for "urgent humanitarian reasons" or "significant public benefit," provided the aliens present neither a security risk nor a risk of absconding.
>
> > (1) Aliens who have serious medical conditions in which continued detention would not be appropriate;
> > (2)  Women who have been medically certified as pregnant;
> > (3)  Aliens who are defined as juveniles in § 236.3(a) of this chapter. ...

---

    [14] *See, for example, Salazar-Regino v. Trominski,* CA B-02-045, which presents many of the same constitutional concerns as are present in the cases of the named Petitioners herein.

    (4)    Aliens who will be witnesses in proceedings being, or to be, conducted by judicial, administrative, or legislative bodies in the United States; or

    (5)    Aliens whose continued detention is not in the public interest as determined by the district director or chief patrol agent.

Notably absent is a category specifically addressing LPR status. It is even more notable that the list is formulated in a non-restrictive manner, and does not **preclude** parole based on other criteria, such as LPR status. [15]    8 C.F.R. §212.5(b) must also be read together with §212.5(d), [16]   which provides as follows:

    d)--Conditions. In any case where an alien is paroled under paragraph (b) or (c) of this section, the district director or chief patrol agent may require reasonable assurances that the alien will appear at all hearings and/or depart the United States when required to do so. Not all factors listed need be present for parole to be exercised. The district director or chief patrol agent should apply reasonable discretion. The consideration of all relevant factors includes:

    (1)    The giving of an undertaking by the applicant, counsel, or a sponsor to ensure appearances or departure, and a bond may be required on Form I-352 in such amount as the district director or chief patrol agent may deem appropriate;

    (2)    Community ties such as close relatives with known addresses; and

    (3)    Agreement to reasonable conditions (such as periodic reporting of whereabouts).

Ironically, §212.5(b) reflects genuine concern for undocumented children, but none at all for the impact on U.S. citizen children of the detention of their LPR parents. Under §212.5(b)(3), for example, someone traveling with an undocumented minor could be paroled, but this subsection would not encompass parole of an LPR with dependent USC children, either accompanying her, or waiting at

---

    [15]    A very similar analysis of 8 U.S.C. §1101(a)(13) was utilized in *Manuel Made v. Ashcroft, supra.*

    [16]    8 C.F.R. §212.5(c) does not apply to Petitioners, who are in removal proceedings, and thus fall under 8 C.F.R. §235.3(c).

home for the breadwinner. In fact, no subsection of §212.5(b) addresses the conditions under which such an LPR could be paroled, with the possible exception of §212.5(b)(5), when the district director or chief patrol agent finds it in the "public interest."

This is the key to Petitioners' argument. They urge that, in order for 8 U.S.C. §1182(d)(5)(A), as implemented by 8 C.F.R. §212.5(b), to pass even minimal Due Process or Equal Protection analysis, [17] the "public interest" test of §212.5(b)(5) must be construed as satisfied by the fact that the applicant for admission is an LPR. To qualify for parole, such an LPR would still need to show that s/he presented "neither a security risk nor a risk of absconding," with the meaning of §212.5(b). This is a condition for releasing any applicant on parole under §212.5(b), and, not coincidentally, the same criteria as required for releasing on bond or "conditional parole," (personal recognizance), an otherwise similarly situated LPR arrested on a warrant, inside the U.S. 8 C.F.R. §236.1(c)(3). Parole would also be subject to §212.5(d), and could entail a bond.

Petitioners also urge that it violates Equal Protection for LPRs with criminal convictions arrested on a warrant, within the U.S., pursuant to 8 U.S.C. §1226(a), to be afforded bond hearings, while otherwise similarly situated LPRs seeking admission are not. LPRs within the U.S. who were released from criminal custody prior to the expiration of the transitional rules, (October 8, 1998), are eligible for release, and are entitled to bond hearings. 8 C.F.R. §236.1(c)(3). And even those LPRs who were released thereafter are being granted bond hearings, and bond, in ever greater numbers, as

---

[17]    As previously noted, it is settled law that LPRs are entitled to Due Process, even at the border. It is equally settled that the Equal Protection mandate of the Fourteenth Amendment may be applied in the federal context through the Due Process Clause of the Fifth Amendment. *Bolling v. Sharpe*, 347 U.S. 497 (1954). *See also, Plyler v. Doe*, 102 S.Ct. 2382 (1982) (even aliens unlawfully present in the country are entitled to Equal Protection).

a groundswell of federal courts around the country conclude that 8 U.S.C. §1226(c) is unconstitutional as applied to LPRs. *See, e.g.,* the Magistrate Judge's Report and Recommendation, issued May 13, 2002, in *Reyna-Montoya et al v. Trominski et al,* C.A. B-02-026.

### 3.  THE ADDITIONAL VALUE OF A HEARING IS SELF-EVIDENT, PARTICULARLY IN LIGHT OF INS' STATED REASONS FOR DENYING PETITIONERS' APPLICATIONS FOR PAROLE.

Respondents claim that the value of a hearing with an Immigration Judge would be "negligible," (RsOPP:25). This is not borne out by cases such as *Gonzalez-Noyola v. Trominski,* C.A. No. B-01-058, where an Immigration Judge ordered INS to release an LPR on recognizance, and INS continued to hold him without bond. It is also belied by the stated grounds for denying Petitioners' applications for parole, including assertions, in both cases, that it would not be in INS' interest to grant parole. In neither case was the denial based on a claim that the Petitioner was a flight risk, or danger to the community. Petitioners urge that the fact that it does not serve **INS'** interests to release them on parole, while doubtless true, should not be a consideration. To the contrary, INS' invocation of their own interest as a basis for denying the requests of Petitioners Grimaldo and Hernandez illustrates the inherent unfairness of having the prosecutor (*i.e.,* INS), also be responsible for adjudicating the request. [18]

---

[18]  Respondents' discussion of the "standard of review" and their claim that the "District Director denied parole to Plaintiffs on the basis of a facially legitimate and bona fide reason, (RsOPP:13-19), are frivolous. The standard of review discussion is based solely on *pre-Zadvydas* cases, and all but ignores both Petitioners' status as LPRs, and *Landon v. Plasencia,* 459 U.S. at 34, invoking the balancing test of *Mathews v. Eldridge,* 424 U.S. 319 (1976). And, to deny parole because it is not in **INS' interest** is not a "facially legitimate and bona fide" reason.

In fact, viewed from their role as "prosecutor," the parole of Petitioners would **not** serve INS' "interests" Parole would relieve

And there is no comparison between a cold paper record, such as that on which INS decides whether or not to grant parole, and a "hearing in good faith, however summary," as required by *Kwock Jan Fat, supra*.    Particularly where the issue is whether the person presents a flight risk, or danger to the community, the ability of the adjudicator to hear live testimony, from the applicant him or herself, and possibly from family members, can be crucial.

For this reason as well, INS' reliance on *Marcello v. Bonds*, 349 U.S. 302,311 (1955), is misplaced. (RsOPP:27).  Here, there was **no** hearing at all. *See, Kwock Jan Fat, supra*.  In *Marcello,* the issue was the alleged lack of independence of the hearing examiner. Since *Marcello*, the Executive Office for Immigration Review ("EOIR"), has been removed from the jurisdiction of INS, and placed directly under the Attorney General. 8 C.F.R. Part 3.

### B. NOTICE OF THE POSSIBILITY OF, AND MEANS FOR REQUESTING PAROLE, AND HEARINGS ON PAROLE APPLICATIONS

Petitioners also seek a class-wide injunction, (and a corresponding declaratory judgment), to the effect that when they detain LPRs as "arriving aliens" under 8 U.S.C. §§1101(a)(13)(C) and 1225(b)(2), Respondents be enjoined and restrained from: [19]

> (1) Not providing notice of the possibility of, and procedures for requesting parole under 8 U.S.C. §1182(d)(5), and
> (2) Not afford a prompt hearing on any request for parole before an Immigration Judge or other impartial adjudicator, and
> (3) at said hearing, not adjudicating their entitlement

---

the pressure on Petitioners to forego the struggle to save their LPR status, and accept deportation. This is what occurred in *Gonzalez-Noyola*, precisely because INS, the "prosecutor," refused to obey the order of the Immigration Judge that he be released.

[19] The wording of the relief sought has been modified slightly, to conform to the discussion of 8 U.S.C. §1252(f)(1), *supra*.

> to parole, with or without payment of a bond on the basis
> of whether the LPR presents a "security risk [or] risk of
> absconding," in accordance with 8 C.F.R. §212.5(b).

Respondents object to the use of the test of *Mathews v. Eldridge*, *supra*, in evaluating this claim, and assert that the proper test is that of *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306 (1950). As interpreted by Respondents, *Mullane* focuses on whether the notice provided was "reasonably calculated under all the circumstances." (RsOPP:10). However, the *only notice* of the availability of parole under 8 U.S.C. §1182(d)(5) is that provided by the statute itself. And **nowhere** known to the undersigned is there any published explanation of the procedures for requesting it, even in English, much less, a Spanish language explanation available to Petitioners and the class they seek to represent.

For example, in the *Ascencio* case, neither the Immigration Judge nor the INS Trial Attorney, could explain to Ms. Ascencio how to request parole. [20]   And, as shown at the hearing in the case at bar, the law books, in which someone well versed in English (if not law) might locate 8 U.S.C. §1182(d)(5)(A), is of little assistance to Petitioners. As "convicted" criminals, (wearing red jumpsuits), they cannot go to the PISPC library without an escort, who are difficult, if not impossible, to obtain. And even with an escort, they have no assistance in deciphering law books, (assuming the PISPC library contains them), or even the ability to browse freely.

Under these circumstances, it cannot be said that the mere existence of a statute constitutes notice which is reasonably calculated under all the circumstances to inform Petitioners of the existence of parole, much less, of how to request it. No named

---

[20]   *See*, Record of Proceedings, *Ascencio-Guzman et al v. Trominski et al*, CA B-94-215, Vol. 4, pp. 969-972.

Petitioner, either in the instant case, or in *Ascencio,* was able to do so *pro se.*  In each case, the request was made by counsel.

This is not analogous to *City of West Covina v. Perkins,* 525 U.S. 234 (1999).  There, a free man could spend unlimited time in a law library, or go at will to the Courthouse, to learn about the procedures for reclaiming seized property.  "Under all the circumstances," it would be unreasonable to expect Petitioners, and the class they seek to represent, to obtain information about the existence of parole, and the means of requesting it, on their own.

And it is absurd to suggest that Petitioners are similarly situated to the litigants in *Atkins v. Parker,* 472 U.S. 115 (1985), cited for the proposition that the "entire structure of our democratic government rests on the premise that the individual citizen is capable of informing himself about the particular policies that affect his destiny." (RsOPP:12).  *Atkins* is also premised on the ability of a free person, at liberty within the United States, to obtain information.  The Petitioners herein are not so situated.

### C.  CONFISCATION OF PERSONAL DOCUMENTS

Petitioners also seek a class-wide injunction, (and corresponding declaratory relief), enjoining and restraining Respondents, (absent a good faith belief that such documents constitute bona fide evidence of unlawful conduct, or for the purpose of safeguarding them while Petitioners are in their physical custody), from confiscating from LPRs placed in removal proceedings lawfully issued documents, such as drivers' licenses, Social Security cards, foreign passports, and from not promptly returning such documents once they are no longer needed as evidence, and from not keeping an accurate and detailed inventory of personal property seized from LPRs detained by Respondents, and from not maintaining appropriate documentation regarding the chain of custody of such items.

18

Respondents' claim, (RsOPP:31), that Mr. Esparza lacks standing to complain about the retention of his documents because he has been released from detention is frivolous. There has been no showing that his documents were ever returned, and, so far as counsel is aware, he still does not have them. And their assertion, (RsOPP:32) that "limitations on personal property held by detainees is reasonable" is completely disingenuous. Petitioners have no objection to Respondents safeguarding such property while they are detained. They just want it back when they are released.

## D. CONFISCATION OF PERSONAL PAPERS

Petitioners further seek an injunction, similar to that provided for Salvadorans and Guatemalans in *Nunez v. Boldin,* 537 F. Supp. 578 (S.D.TX. 1982), *app. dis.,* 692 F.2d 755 (5th Cir. 1982) (Table) and corresponding declaratory relief, prohibiting Respondents from depriving them of access to address books, telephone numbers, and like papers, needed to communicate with friends, relatives, or other contacts within the United States. Respondents do not appear to oppose such relief. Indeed, they claim it is already their policy. (RsOPP:34). However, the procedures they outline, (RsOPP:34-35), for protecting Petitioners' interests do not address the problem of multiple agency contact at the border, which is where personal property, and papers, are most often lost.

## E. IRREPARABLE HARM

Finally, Respondents urge that Petitioners do not face "irreparable harm" if denied an injunction. Primarily, this is based on their assertion that *Ignacio v. INS*, 955 F.2d 295,299 (5th Cir. 1992) stands for the proposition that "an alien should not be able to equate deportation with irreparable harm." (Rs:OPP:35). This does not accurately characterize *Ignacio*. Rather, *Ignacio* reiterated that requests for stays of deportation are adjudged under the same criteria as motions for preliminary injunctions, including the likelihood of success on the merits, or, if a serious legal

19

question is involved, "a substantial case on the merits," and that the petitioner therein had not shown a "a likelihood of success or substantial merit as required under the first prong." *Id.*. The language to which Respondents refer was the statement, *id.,* that:

> Further, although he undoubtedly will suffer some hardship as a result of the denial of a stay, we do not find that this represents the irreparable harm that a stay aims to prevent.

Petitioners herein do not seek a stay of deportation, and the likelihood of success on the merits refers to their arguments that they should be given meaningful access to parole. Respondents' claim that their deportation is not, *per se*, irreparable harm should be viewed as an admission that, in the absence of parole, it is unlikely that Petitioners will be able to pursue their cases on the merits. In *Ignacio,* that struggle had already been lost. The Petitioners herein stand at the very beginning of the process.

Therefore, as in *Reyna-Montoya v. Trominski supra,* it is urged that Mr. Hernandez and Mr. Grimaldo be given hearings on their requests for parole, so that they may meaningfully pursue their cases.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney                Thelma O. Garcia, Attorney
17891 Landrum Park Road                   301 E. Madison
San Benito, TX 78586                      Harlingen, TX 78550
(956) 421-3226; 421-3423 (fax)            (956) 425-3701; 428-3731 (fax)
Fed. ID.  1178
Texas Bar 03052800

### CERTIFICATE OF SERVICE

I certify that a copy of the foregoing, with Exhibit K, was mailed, first class postage prepaid, to Ernesto Molina, Attorney, OIL, P.O. Box 878, Ben Franklin Sta., Washington, D.C. 20044, May 20, 2002.

20

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ISRAEL HERNANDEZ-LEIJA, | ) | |
| CARLOS OMAR CALVILLO-LOPEZ, | ) | |
| JORGE RIVERA-PULVIDA, | ) | |
| JOSE ANTONIO ESPARZA, and | ) | |
| DIONICIO GRIMALDO-BARRIENTOS, | ) | |
|   In their own name and right, | ) | |
|   and on behalf of all others | ) | |
|   similarly situated, | ) | |
| | ) | |
| v. | ) | C.A. No.  01-206 |
| | ) | |
| E.M. TROMINSKI, INS DISTRICT | ) | |
|   DIRECTOR, and | ) | |
| JOHN ASHCROFT, ATTORNEY | ) | |
|   GENERAL OF THE UNITED STATES. | ) | |

EXHIBIT "K" IN SUPPORT OF

PLAINTIFFS' RESPONSE TO "DEFENDANTS/RESPONDENTS' PRELIMINARY
OPPOSITION TO PLAINTIFFS/PETITIONERS' APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION
WITH INCORPORATED POINTS AND AUTHORITIES"

FROM :R FERNANDEZ          FAX NO. :9734240400          May. 14 2002 10:25AM P2

<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

2001 MAY 31  ⊃ 2: 35

| | |
|---|---|
| MANUEL MADE | 01Civ.-1039(WGB) |
| Petitioner, | |
| v. | **M E M O R A N D U M<br>O P I N I O N** |
| JOHN ASHCROFT, Attorney General, USA, MARY ANN WYRSCH, Acting Commissioner INS, ANDREA QUARANTILLO, District Director INS Newark, LORELI VALVERDE, Assistant Director for Detention & Deportation INS; and RALPH GREEN, Warden, Hudson County Correctional Center, | |
| Respondents. | |

**ORIGINAL FILED
MAY 3 1 2001
WILLIAM T. WALSH, CLERK**

<u>Appearances</u>:

Cindi L. Dresdner, Esq.
The National Newark Building
744 Broad St., Suite 1807
Newark, NJ 07102

    Attorneys for Petitioner

Colette R. Buchanan
Assistant U.S. Attorney
970 Broad Street, Suite 700
Newark, NJ 07102

    Attorneys for Respondents

BASSLER, DISTRICT JUDGE

    Petitioner Manuel Made ("Petitioner") seeks an Order to Show

Cause why his application for a writ of habeas corpus pursuant to

28 U.S.C. § 2241 should not be granted and his detention declared

unlawful.  The Order to Show Cause was heard on May 31, 2001.

For the reasons noted herein, the petition for writ of habeas corpus is granted to the extent that Petitioner is entitled to an individualized hearing before an Immigration Judge to determine his immigration status, and whether and under what circumstances he is eligible for parole pending a final decision in the removal proceedings.

I.   BACKGROUND

Petitioner is a 26 year old native and citizen of the Dominican Republic.  He entered the United States as a permanent resident on July 24, 1993.

When Petitioner was 21 years old, he engaged in a sexual relationship with his 15 year old girlfriend, which resulted in the birth of a male child.  Criminal charges were lodged against Petitioner due to the girl's age.[1]  On December 5, 1995, Petitioner plead guilty to a third degree charge of endangering the welfare of a child by engaging in sexual conduct that would impair or debauch the morals of a child, in violation of N.J.S.A. 2C:24-4a.  On January 17, 1996, Petitioner was sentenced to two years of probation and ordered to acknowledge and support his son.

---

[1]  Pursuant to then N.J.S.A. 2C:14-2(c)(5), anyone who is more than 19 years old and has intercourse with a 15 year old commits the crime of second degree sexual assault.  Consent of the minor is not a defense.

FROM :R FERNANDEZ                    FAX NO. :9734240400           May. 14 2002 10:26AM  P4

Petitioner complied with the criminal sentence and provided financial support to his son, Christopher.  Both the son and his mother currently reside in Santo Domingo, Dominican Republic.

On January 4, 2001, when Petitioner returned from a two week trip to the Dominican Republic, which he alleges was a trip he took to visit his son, the Immigration and Naturalization Service ("INS") took Petitioner into custody and housed him at Hudson County Jail.  The INS charged Petitioner with being an alien seeking admission into the United States, pursuant to 8 U.S.C. § 1101(a)(13)(C)(v)[2] because he had been convicted of a crime involving moral turpitude, in violation of 8 U.S.C. § 1182(a)(2)(A)(i)(I)[3].

Petitioner made a bond request to the Immigration Judge ("IJ") and a parole request to the INS District Director.  To date, the District Director has yet to grant or deny parole to Petitioner.

On January 26, 2001, an IJ denied Petitioner's bond request pursuant to 8 C.F.R. § 3.19(h)(2)(i)(B), which provides in pertinent part: "an immigration judge may not redetermine conditions of custody imposed by the Service with respect to . . . (B) [a]rriving aliens in removal proceedings . . .."  The IJ

---

[2]  Immigration and Nationality Act ("INA") § 101(a)(13)(C)(v).

[3]  INA § 212(a)(2)(A)(i)(I).

concluded that he had no authority to set a bond because
Petitioner was an arriving alien under the BIA's interpretation
of 8 U.S.C. § 1101(a)(13)(C)(v), as set forth in In re Collado-
Munoz, 21 I. & N. 1061, 1998 WL 95929 (BIA 1998),[4] a decision by
which the IJ was bound.   (See Order and Memorandum of IJ,
attached as Ex. 5 to Respondents' Answer and Opp'n to Habeas
Corpus Petition.)   Petitioner has appealed the bond decision to
the Board of Immigration Appeals ("BIA").   That appeal is
pending.

Petitioner filed an application for a writ of habeas corpus
on March 1, 2001.   Then, on March 14, 2001, Petitioner filed an
Order to Show Cause, requesting that this Court order INS to
release him from custody because he is not an alien seeking
admission into the United States pursuant to 8 U.S.C. §
1101(a)(13)(C)(v).[5]   Alternatively, Petitioner seeks a hearing
before an Immigration Judge to determine whether he has properly
been charged as an alien seeking admission.   He also seeks an
individualized bond hearing.   Petitioner argues that his
detention is in violation of the INA, Supreme Court precedent,
the Fifth Amendment Due Process Clause, and the Eighth Amendment
prohibition against excessive bail.

While Petitioner's Order to Show Cause application was

_____

[4]   Discussed supra.

[5]   INA § 101(a)(13)(C)(v).

pending before this Court, on May 14, 2001, the IJ ruled on
Petitioner's motion to terminate the removal proceedings.   The IJ
granted Petitioner's motion and ordered the proceedings
terminated with prejudice, finding that Petitioner's conviction
for endangering the welfare of a child did not constitute a crime
of moral turpitude.   The Government's appeal of that decision to
the BIA is pending.   Meanwhile, Petitioner continues to remain in
INS' custody.

II.   **DISCUSSION**

    A.   **Exhaustion of Administrative Remedies**

    As a threshold matter, Petitioner contends, and the Court
agrees, that this Court has subject matter jurisdiction despite
his failure to exhaust his administrative remedies.   Exhaustion
is not a jurisdictional prerequisite, but instead, a matter
within the "sound discretion of the court."   See **Haitian Refugee
Center v. Smith**, 676 F.2d 1023, 1032 (5th Cir. 1982).   Moreover,
in this case, because the BIA has already ruled on the issues
raised in Petitioner's habeas application, see **In re Collado-
Munoz**, 21 I. & N. 1061, discussed _infra_, exhaustion would be
futile.   See **Richardson v. Reno**, 994 F. Supp. 1466, 1471 (S.D.
Fla. 1998), **rev'd and vacated on other grounds**, 162 F.2d 1338
(11th Cir. 1998), **cert. granted, judgment vacated**, 526 U.S. 1142
(1999).

    Moreover, the Government has not argued that this Court

lacks subject matter jurisdiction based on Petitioner's failure to exhaust his administrative remedies. Accordingly, the Court will retain jurisdiction without awaiting the final decision in the administrative appeal pending before the BIA.

B.   Alien Seeking Admission

Under the immigration laws, generally, an alien accorded the status of "lawfully admitted for permanent residence"[6] in the United States is treated differently than an alien seeking "admission" into the United States.  See 8 U.S.C. § 1101(a)(13)(C).  An alien seeking admission into the United States is subject to exclusion under the INA.  In contrast, the status of a lawful permanent resident ("LPR") "carries several important privileges" including the ability to "return to this country after a temporary absence abroad."  Saxbe v. Bustos, 419 U.S. 65, 72 (1974).

Petitioner contends that he should be considered a returning LPR rather than an "alien seeking admission" because his departure from the country was "innocent, casual, and brief" under the standard set forth in Rosenberg v. Fleuti, 374 U.S. 449 (1963).  At the very least, Petitioner claims that due process entitles him to a hearing before an IJ on the threshold question

---

[6]  "The term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed."  8 U.S.C. § 1101(a)(20).

6

of whether he is properly considered an alien seeking admission.
In Fleuti, the respondent had been a lawful permanent resident
who had lived in the United States continuously since 1952 except
for a couple hour visit to Mexico in August of 1956.  The INS
sought to deport Fleuti claiming that at the time of his return
from Mexico, he was an excludable alien because as a homosexual,
he was "afflicted with psychopathic personality," as set forth in
then 8 U.S.C. § 1182(a)(4).  Fleuti, however, disputed that his
return to the country constituted an "entry" within the meaning
of 8 U.S.C. § 1101(a)(13), which at that time stated:

> The term "entry" means any coming of an alien
> into the United States, from a foreign port
> or place or from an outlying possession,
> whether voluntarily or otherwise, except that
> an alien having a lawful permanent residence
> in the United States shall not be regarded as
> making an entry into the United States for
> the purposes of the immigration laws if the
> alien proves to the satisfaction of the
> Attorney General that is departure to a
> foreign port or place or to an outlying
> possession was not _intended_ or reasonably to
> be expected by him or his presence in a
> foreign port or place or in an outlying
> possession was not voluntary: Provided, That
> no person whose departure from the United
> States was occasioned by deportation
> proceedings, extradition, or other legal
> process shall be held to be entitled to such
> exception.

(emphasis added).  The Supreme Court concluded that the "intent
exception" meant "an intent to depart in a manner which can be
regarded as meaningfully interruptive of the alien's permanent
residence."  Fleuti, 374 U.S. at 462  Accordingly, the Court

7

held that if a trip is "innocent, casual, and brief," it does not constitute an "intended" departure within the meaning of 8 U.S.C. § 1101(a)(13). In that case, the alien is not to be regarded as seeking "entry" into the United States for immigration purposes. Id. at 461. Because the record before the Court contained no details of Fleuti's trip to Mexico other than that he was gone "about a couple hours" and was "just visiting," the case was remanded. Id. at 462-63.

The INS, however, maintains that Petitioner cannot rely on the Fleuti doctrine because it has effectively been abolished by the 1996 amendments to the INA, enacted in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (1996). See In re Collado-Munoz, 21 I. & N. 1061 (finding that Fleuti doctrine did not survive enactment of IIRIRA). Section 1101(a)(13)(C)(v) states in pertinent part:

> An alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien –
>> (v) has committed an offense identified in section 1182(a)(2) of this title, unless since such offense the alien has been granted relief under section 1182(h) or 1229b(a) of this title[7] . . .

---

[7] There is no dispute that Petitioner has not been granted relief under §§ 1182(h) or 1229b(a).

8

(footnote added).  Section 1182(a)(2) provides that any alien convicted of, or who admits committing "acts which constitute the essential elements of - (I) a crime involving moral turpitude . . . or an attempt or conspiracy to commit such a crime" is inadmissible.

The IIRIRA eliminated the terms "entry" and "intended," the definitions of which were central to the Court's decision in Fleuti.  See In re Collado-Munoz, 21 I. & N. 1061.  On this basis, the BIA concluded that the IIRIRA specifically defines lawful permanent residents who have committed a crime enumerated in 8 U.S.C. § 1182(a)(2) as, seeking admission "without regard to whether the alien's departure from the United States might previously have been regarded as 'brief, casual, and innocent' under the Fleuti doctrine."  See id.  Therefore, the INS claims that notwithstanding the nature and duration of Petitioner's trip outside the country, under 8 U.S.C. § 1101(a)(13)(C)(v), Petitioner is an alien seeking admission because he has committed a crime involving moral turpitude and is therefore not entitled to a hearing to determine his immigration status.

To resolve this dispute, the Court must first consider what amount of deference must be given to the BIA decision.  "[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."  Chevron

v. Natural Resources Defense Council, 467 U.S. 837, 843 (1984).

Any ambiguities are to be construed in favor of the alien.   INS

v. Cardoza-Fonseca, 480 U.S. 421, 449 (1987).

Here, even if the BIA's interpretation of 8 U.S.C. §

1101(a)(13)(C)(v) is reasonable, Petitioner contends that it is

not a permissible construction of the statute.   "The judiciary is

the final authority on issues of statutory construction . . . ."

Chevron, 467 U.S. at 843 n.9.

Unfortunately, other than the BIA decision, only one other

federal court has directly dealt with this issue - Richardson,

994 F. Supp. 1466.[8]  The Southern District Court of Florida

agrees with the dissent in In re Collado, 21 I. & N. 1061 that

Fleuti remains good law.  Although the district court's decision

in Richardson was appealed, the Eleventh Circuit never reached

the question of how 8 U.S.C. § 1101(a)(13)(C) is to be construed

_____

     [8]    While other courts have mentioned the INS's
interpretation of 8 U.S.C. § 1101(a)(13)(C) as set forth in In re
Collado, in those cases, the alien's status as an arriving alien
seeking admission was not contested.  See Velasquez v. Reno, 37
F. Supp.2d 663, 665 n.2 (D.N.J. 1999) (recognizing); Zargo v.
Reno, Civ. No. 99-1938, at 3 n.2 (D.N.J. July 7, 1999) (same).
Therefore, the focus of the courts' inquiries did not require an
examination of whether Fleuti is still good law.  Rather, as
Petitioner and the Government both acknowledge, the central issue
in those two cases was whether the mandatory detention provision
contained in 8 U.S.C. § 1226(c), INA § 236(c), could be applied
to an alien who had been released from custody prior to the
effective date of the statute.  Finding that the statute could
not be applied retroactively, both cases were remanded for
hearings before an IJ.  Therefore, although Petitioner relies on
Velasquez and Zargo, presumably because the facts therein are
similar to those here, those cases are inapplicable.

because it held that INA § 242(g) repealed 28 U.S.C. § 2241
habeas jurisdiction over immigration decisions and directed the
district court to dismiss the habeas petition for lack of subject
matter jurisdiction.  <u>Richardson v. Reno</u>, 162 F.2d 1338 (11th
Cir. 1998), <u>cert. granted, judgment vacated</u>, 526 U.S. 1142
(1999).

> 1.    <u>Plain Language</u>

The Court agrees with the rationale and decision reached by
the district court in <u>Richardson</u> and the dissent in <u>In re
Collado</u>.  It is clear from the express language of §
1101(a)(13)(C) that an LPR is prohibited from being regarded as
"seeking admission" unless any of the six exceptions listed in
the statute applies.  If, however, one of the six exceptions does
apply, the statute is silent as to whether it is mandatory or
permissible for an LPR to then be considered to be "seeking
admission".  See <u>In re Collado</u>, 21 I. & N. 1061 (dissent).  In
other words, § 1101(a)(13)(C)

> simply specified which returning lawful
> permanent residents *may not* be regarded as
> "seeking admission."  It does not provide a
> statutory bright line for determining which
> returning lawful permanent residents *shall* be
> considered to be "seeking admission."

See <u>Richardson</u>, 994 F. Supp. at 1471.

In contrast, the Government's reading of the statute assumes
that if any of the six exceptions applies, "then the negative
proscription --- 'shall not be regarded as an arriving alien' ---

11

becomes a positive one: 'shall be regarded as an arriving
alien.'" _In re Collado_, 21 I. & N. 1061 (dissent).  Other
statutes involving "shall not . . . unless," however, are not so
construed.  For example, 28 U.S.C. § 2254(b) provides that a writ
of habeas corpus "shall not be granted unless . . . the applicant
has exhausted the remedies available in the courts of the State."
While a petitioner must exhaust state remedies as a prerequisite
to being granted a writ, once that condition is satisfied, the
district court is not then obligated to issue a writ.  _See_ _Id._
(dissent).[9]

    Had Congress intended that a returning LPR _must_ be regarded
as "seeking admission" when one of the six categories applied, it
could have, for example, easily stated the following:

> an alien lawfully admitted for permanent
> resident status in the United States shall
> not be regarded as seeking admission into the
> United States for purposes of the immigration
> laws; but if the alien has committed an
> offense in section 212(a) such alien _shall_ be
> regarded as seeking admission.

_Richardson_, 994 F. Supp. at 1471 n.4.

    2.   **Congressional Intent, Principles Underlying Fleuti
and Due Process**

    Moreover, Congress was aware of the _Fleuti_ decision and yet,
did not expressly reverse or repeal it when it enacted the
IIRIRA.  _See_ H.R. Rep. No. 104-469, pt. 1, at 225-26 (1996);

---

   [9] _See_ _In re Collado_, 21 I. & N. 1061 (dissent) for more
examples.

Richardson, 994 F. Supp. at 1471.  The fact that "entry" and
"intended" have been eliminated from 8 U.S.C. § 1101(a)(13)(C) is
of no moment.  Although the Supreme Court's decision focused on
defining those words, as noted by the district court in
Richardson, the principle behind the Fleuti decision is to avoid
a "wooden" construction of the statute and the overly harsh
consequence of requiring an alien who briefly steps not of the
country before returning, to forfeit "privileges which may be,
and often are, of the most grave importance to him."  Fleuti, 374
U.S. at 454 (citing Pasquale v. Karnuth, 158 F.2d 878, 879 (2nd
Cir. 1947)).  The rationale behind the Fleuti decision still
supports the statutory construction suggested by Petitioner and
the dissent in In re Collado.

     In contrast, the interpretation of 8 U.S.C. § 1101(a)(13)(C)
advanced by the Government and by the majority in In re Collado
would produce undesirable results.  First, it would require in
this case, the INS, which is the prosecuting party, to decide a
legal question; whether a crime is one involving moral turpitude
is a legal issue with which many courts have grappled.  See
Babafunmi v. INS, 210 F.3d 360, 2000 WL 338987, at *1 (4th Cir.
March 31, 2000).

     Second, and more importantly, such a statutory construction
would implicate constitutional concerns.  The Government's
proposed interpretation of 8 U.S.C. § 1101(a)(13)(C) would

13

require the INS, rather than a neutral quasi-judicial decision
maker such as an IJ or the BIA, to determine an alien's status
and concomitant rights and privileges, what charges are to be
brought against the individual, and what relief is available to
that person, all without any procedural due process afforded to
the LPR.  Among the rights that an LPR is entitled to, but would
be denied should the LPR be regarded as an alien seeking
admission, is the right to due process.  See Shaughnessy v.
United States ex rel. Mezei, 345 U.S. 206, 212 (1953) (drawing
distinction between aliens who have "passed through our gates,
even illegally," and those who are "on the threshold of initial
entry.")  Courts should, of course, construe statutes in a way
that avoids constitutional questions.  See United States ex rel.
Attorney General v. Delaware & Hudson Co., 213 U.S. 366, 408
(1909).

In sum, as set forth by the dissent in In re Collado and
adopted by the district court in Richardson, the Court agrees
that it is evident from the plain language of 8 U.S.C. §
1101(a)(13)(C)(v) and the principle underlying the Fleuti
decision that the Fleuti decision has survived the enactment of
the 1996 INA amendments.  The duration and nature of Petitioner's
trip outside the United States remains relevant to the
determination of the LPR's status upon returning to the United
States.  Therefore, if any of the six enumerated exceptions set

14

forth in 8 U.S.C. § 1101(a)(13)(C) applies, then the relevant
inquiry to be made by the IJ on a case-by-case basis is whether
the LPR's travel was "innocent, casual, and brief."

In this case, the record before the Court is insufficient to
determine whether the nature and duration of Petitioner's trip to
the Dominican Republic was "innocent, casual, and brief" such
that Petitioner is a returning LPR rather than an alien seeking
admission.  Therefore, Petitioner is entitled to a hearing before
an IJ to determine such issues.  The adjudication of Petitioner's
immigration status by an IJ will impact whether and under what
circumstances Petitioner is entitled to parole pending completion
of his removal proceedings.  Accordingly, the Court need not
address the Government's contention that Petitioner is an alien
seeking admission who is lawfully detained without parole
pursuant to 8 U.S.C. § 1225(b)(2)(A)[10] and 8 U.S.C. §
1182(d)(5)(A).[11]

_____

[10] INA § 235(b)(2)(A), codified at 8 U.S.C. § 1225(b)(2)(A),
provides in pertinent part:

> . . . in the case of an alien who is an
> applicant for admission, if the examining
> immigration officer determines that an alien
> seeking admission is not clearly and beyond a
> doubt entitled to be admitted, the alien
> shall be detained for a proceeding under
> section 1229a of this title.

[11] INA § 212(d)(5)(A), codified at 8 U.S.C. § 1182(d)(5)(A),
in relevant part, states:

> The Attorney General may, . . . in his

15

## III. CONCLUSION

For the foregoing reasons, Petitioner's request that this Court order INS to release him from custody is **denied.** Petitioner's writ of habeas corpus is **granted** to the extent that this case is remanded to the INS for further proceedings consistent with this Opinion. Petitioner is entitled to an individualized hearing to be held by no later than **June 13, 2001,** for a determination by the IJ as to whether Petitioner is an arriving alien, and whether and under what conditions Petitioner may be released from custody pending the appeal before the BIA.

An appropriate Order follows.

Dated:   <u>May 31</u>, 2001

_____
William G. Bassler, U.S.D.C.

---

discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States . . .

FROM :R FERNANDEZ                          FAX NO. :9734240400                    May. 14 2002 10:35AM P18

CLOSED #

NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

RECEIVED
WILLIAM T. WALSH. CLERK

2001 MAY 31 ▷ 2: 35

---

MANUEL MADE

      Petitioner,

v.

JOHN ASHCROFT, Attorney General,
USA, MARY ANN WYRSCH, Acting
Commissioner INS, ANDREA
QUARANTILLO, District Director INS
Newark, LORELI VALVERDE, Assistant
Director for Detention & Deportation
INS; and RALPH GREEN, Warden, Hudson
County Correctional Center,

      Respondents.

---

01Civ.-1039 (WGB)

ENTER ORDER
ON
THE DOCKET

MAY 31 2001

WILLIAM T. WALSH, CLERK

(Deputy Clerk)

FILED

MAY 3 1 2001

AT 8:30
WILLIAM T. WALSH, M
CLERK

---

This matter having come before the Court on the application

of Petitioner for an Order to Show Cause why his writ of habeas

corpus pursuant to 28 U.S.C. § 2241 should not be granted and his

detention declared unlawful; and

The Court having considered the submissions of counsel; and

The Court having heard oral argument on May 31, 2001; and

For the reasons set forth in the Court's Memorandum Opinion

issued this day; and

For good cause shown;

It is on this _31_ day of _May_ 2001 hereby ORDERED

that Petitioner's writ of habeas corpus is granted in part and

denied in part; and

IT IS FURTHER ORDERED that Petitioner's request to be

released from INS custody is denied; and

IT IS FURTHER ORDERED that Petitioner's request for an
individualized hearing before an Immigration Judge for a
determination as to whether Petitioner is an arriving alien, and
whether and under what conditions Petitioner may be released from
custody pending the final outcome of the removal proceeding is
granted; and

IT IS FURTHER ORDERED that Petitioner's individualized
hearing be held by no later than June 13, 2001; and

IT IS FURTHER ORDERED that this case be remanded to the INS
for further proceedings consistent with this Order and
accompanying Memorandum Opinion; and

IT IS FURTHER ORDERED that the Clerk of the Court shall
close this case.


_____
WILLIAM G. BASSLER, U.S.D.J.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MANUEL MADE,
           Petitioner,

     v.                                                         01Civ. - 1039 (WGB)

JOHN ASHCROFT, Attorney General
of the United States, KEVIN ROONEY,
Acting Commissioner of the Immigration and
Naturalization Service, ANDREA
QUARANTILLO, District Director of INS, Newark,
New Jersey, LORELI VALVERDE, Assistant
Director for Detention and Deportation, and
RALPH GREEN, Warden, Hudson County
Correctional Center,
           Respondents.

## RESPONDENTS' NOTICE OF APPEAL

    The respondents, John Ashcroft, Attorney General of the United States, Kevin Rooney,

Acting Commissioner of the Immigration and Naturalization Service, Andrea Quarantillo,

District Director of the Immigration and Naturalization Service, Newark, New Jersey, Loreli

Valverde, Assistant Director for Detention and Deportation, and Ralph Green, Warden, Hudson

County Correctional Center, appeal to the United States Court of Appeals for the Third Circuit

from the district court's May 31, 2001, order granting Manuel Made's petition for a writ of habeas

corpus.

ROBERT J. CLEARY
United States Attorney
District of New Jersey

COLETTE BUCHANAN
Assistant United States Attorney
Peter Rodino Federal Building
Suite 700
970 Broad Street
Newark, New Jersey 07102-2535
Tel: 973/645-2700
Fax: 973/645-2702

STUART E. SCHIFFER
Acting Assistant Attorney General
United States Department of Justice
Civil Division

CHRISTOPHER C. FULLER
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation

ALISON MARIE IGOE
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Tel: 202-/616-9707
Fax: 202/616-9777
Email: Alison.Igoe@USDOJ.gov

Page -2-



CCF:AMI
DJ# 39-48-1058

U.S. Department of Justice

Civil Division

202-616-9707

October 5, 2001

Honorable Marcia Waldron, Clerk
United States Court of Appeals for the Third Circuit
U. S. Courthouse  Room 21400
601 Market Street
Philadelphia, PA  19106

     Re:   *Made v. Ashcroft*, 01-3073

Dear Ms. Waldron:

    I have enclosed for filing the original and three copies of Respondents' Notice
Withdrawing Appeal. I have served the petitioner/appellee as indicated in the certificate of
service attached to the motion.

                          Sincerely,

                          ALISON MARIE IGOE
                          United States Department of Justice
                          Civil Division
                          Office of Immigration Litigation

Enclosures

cc:    Regis Fernandez, Esq.
       The National Newark Building
       Suite 1807
       744 Broad Street
       Newark, New Jersey 07102

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
No. 01-3073

MANUEL MADE,
Petitioner/Appellee,

v.

JOHN ASHCROFT, Attorney General
of the United States, KEVIN ROONEY,
Acting Commissioner of the Immigration and
Naturalization Service, ANDREA
QUARANTILLO, District Director of INS, Newark,
New Jersey, LORELI VALVERDE, Assistant
Director for Detention and Deportation, and
RALPH GREEN, Warden, Hudson County
Correctional Center,
Respondents/Appellants.

## RESPONDENTS' NOTICE WITHDRAWING APPEAL

The respondents, John Ashcroft, Attorney General of the United States, Kevin Rooney,

Acting Commissioner of the Immigration and Naturalization Service, Andrea Quarantillo,

District Director of the Immigration and Naturalization Service, Newark, New Jersey, Loreli

Valverde, Assistant Director for Detention and Deportation, and Ralph Green, Warden, Hudson

County Correctional Center, move, pursuant to Rule 42 of the Federal Rules of Appellate

Procedure,[1] to withdraw their appeal with prejudice, with each party to bear their own costs and

fees.

_____

[1] Consistent with the rule, Regis Fernandez, Esq., counsel for the petitioner/respondent
Manuel Made, agreed with the terms of the respondents/appellants' motion

UNITED STA  3 COURT OF APPEALS FOR THE  THIRD CIRCUIT

No. 1-3073

Made

vs.

Ashcroft, et al.

John Ashcroft, et al., Appellants

(New Jersey District Civil No. 01-cv-01039)

O R D E R

In accordance with the agreement of the parties in the above entitled case, it is entered dismissed by the Clerk under the authority conferred upon her by Rule 42(b), Federal Rules of Appellate Procedure with prejudice and with each party to bear their own costs and fees.

*Marcia M. Waldron*

Clerk
United States Court of Appeals
for the Third Circuit

Date: October 11, 2001

cc:
    Regis Fernandez, Esq.
    Colette R. Buchanan, Esq.

**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5201 Leesburg Pike, Suite 1300*
*Falls Church, Virginia 22041*

Dresdner, Cindi L.                          Office of the District Counsel/NE
744 Broad Street, Suite 1807                P.O. Box 1085
Newark, NJ 07102-0000                       Newark, NJ 07101-1085

Name: MADE, MANUEL                          A44-043-339

Date of this notice: 04/01/2002

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Very Truly Yours,

Lori Scialabba

Lori Scialabba
Acting Chairman

Enclosure

Panel Members:
    HOLMES, DAVID B.
    HURWITZ, GERALD S.
    MILLER, NEIL P.



FROM :R FERNANDEZ                FAX NO. :9734240400              May. 14 2002 10:44AM P12

**U.S. Department of Justice**                    Decision of the Board of Immigration Appeals
Executive Office for Immigration Review

Falls Church, Virginia 22041

File:    A44 043 339 - Newark                          Date:

In re:  MANUEL MADE                                                   APR - 1 2002

IN BOND PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:    Regis Fernandez, Esquire

ORDER:

    PER CURIAM. This bond case was previously before us on July 16, 2001, when we dismissed
the respondent's appeal from an Immigration Judge's decision finding that he did not have
jurisdiction to redetermine the respondent's custody status because he was an "arriving alien." In
our decision, we relied in part on our precedent in *Matter of Collado*, 21 I&N Dec. 1061 (BIA 1998).
At the time we entered that decision, we were unaware of a May 31, 2001, decision made in the case
by the United States District Court for the District of New Jersey. That decision rejected the
reasoning of *Matter of Collado, supra*, and remanded the case to the Immigration Judge for further
consideration of the question whether the respondent is an arriving alien.

    It appears that, following the district court's decision, the Immigration Judge concluded that the
respondent's departure from the United States was "brief, casual and innocent," and he released the
respondent on his own recognizance. It also appears that the government chose not to seek further
review of the district court's May 31, 2001, decision in this case. Under these circumstances, our
decision in the case dated July 16, 2001, must be and hereby is vacated.

                          _____
                               FOR THE BOARD

### U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

---

*5201 Leesburg Pike, Suite 1300*
*Falls Church, Virginia 22041*

Fernandez, Regis
744 Broad Street, Suite 1807,
Newark, NJ 07102-0000

Office of the District Counsel/NE
P.O. Box 1085
Newark, NJ 07101-1085

Name: MADE, MANUEL                      A44-043-339

Date of this notice: 04/01/2002

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Very Truly Yours,

*Lori Scialabba*

Lori Scialabba
Acting Chairman

Enclosure

Panel Members:
HOLMES, DAVID B.
HURWITZ, GERALD S.
MILLER, NEIL P



**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

File: A44 043 339 - Newark

Date:

In re: MANUEL MADE

IN REMOVAL PROCEEDINGS

APR — 1 2002

APPEAL

ON BEHALF OF RESPONDENT: Regis Fernandez, Esquire

ON BEHALF OF SERVICE:    Alan Wolf
                             Assistant District Counsel

ORDER:

     PER CURIAM. The appeal is dismissed. The appellant, the Immigration and Naturalization Service, checked Box 6 on the Notice of Appeal (Form EOIR-26) indicating that a separate written brief or statement would be filed in addition to the reasons for appeal accompanying the Notice of Appeal. Block 6 is immediately followed by a clear warning that the appeal may be subject to summary dismissal if the appellant indicates that such a brief or statement will be filed and, "within the time set for filing, you fail to file the brief or statement and do not reasonably explain such failure." The Service was granted the opportunity to submit a brief or statement in support of the appeal. However, the record indicates that Service did "not file such brief or statement, or reasonably explain its failure to do so, within the time set for filing." 8 C.F.R. § 3.1(d)(2)(i)(D). Moreover, considering *inter alia* the issues raised by the United States District Court for the District of New Jersey, we are not persuaded that the Immigration Judge's ultimate resolution of this case was in error.[1] Accordingly, we find that summary dismissal is appropriate pursuant to the provisions of 8 C.F.R. § 3.1(d)(2)(i)(D).

FOR THE BOARD

---

[1] On December 18, 2001, the Board provided the parties a further opportunity to submit briefs subsequent to the district court's decision in the related bond proceedings in this case and to update the Board regarding the status of this case, including advising the Board whether the respondent was still in the United States and whether the Service still wished to pursue its appeal from the Immigration Judge's May 14, 2001, decision which ordered the termination of these proceedings. The record does not reflect that the Service filed a brief or response to this inquiry.