21

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

**MAY 2 8 2002**

Michael N. Milby
Clerk of Court

| | |
|---|---|
| ISRAEL HERNANDEZ-LEIJA,<br>CARLOS OMAR CALVILLO-LOPEZ,<br>JORGE RIVERA-PULVIDA,<br>JOSE ANTONIO ESPARZA, and<br>DIONICIO GRIMALDO-BARRIENTOS,<br>  In their own name and right,<br>  and on behalf of all others<br>  similarly situated,<br><br>v.<br><br>E.M. TROMINSKI, INS DISTRICT<br>  DIRECTOR, and<br>JOHN ASHCROFT, ATTORNEY<br>  GENERAL OF THE UNITED STATES. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    C.A. No. 01-206<br>)<br>)<br>)<br>)<br>)<br>) |

*Response*

**TABLE OF CONTENTS**

I.  RESPONDENTS' CLAIMS THAT THE COURT LACKS JURISDICTION, AND THAT THE CASE IS SUBJECT TO DISMISSAL UNDER RULE 12(b)(6), ARE FRIVOLOUS ................................. 2

    A.  THE BASIC PREMISE OF *ZADVYDAS* IS THAT EVEN ALIENS UNDER FINAL ORDERS OF DEPORTATION HAVE LIBERTY INTERESTS ................................. 4

    B.  AS LAWFUL PERMANENT RESIDENTS, PETITIONERS ARE ENTITLED TO DUE PROCESS, EVEN WHEN DETAINED AT THE BORDER ................................. 6

    C.  UNDER THE CIRCUMSTANCES OF THE CASE AT BAR, WHERE INS HAS AN "INTEREST" IN PETITIONERS' REMOVAL, WHICH INTEREST IS FURTHERED BY THE DENIAL OF PAROLE, DUE PROCESS REQUIRES NOTICE, AND A HEARING BEFORE AN INDEPENDENT ADJUDICATOR ........ 8

    D.  WHETHER *FLEUTI* HAS BEEN LEGISLATIVELY OVERRULED IS AN ISSUE WHICH REMAINS TO BE LITIGATED ........ 12

II.   THE CLAIM WITH RESPECT TO NOTICE OF PAROLE IS NEITHER
      MOOT, NOR BARRED BY 8 U.S.C. §1252(a)(2)(B)(ii), AND
      IS NOT SUBJECT TO DISMISSAL UNDER RULE 12(b)(6) ...... **13**

           A.  MOOTNESS ..................................... **13**
           B.  8 U.S.C. §1252(a)(2)(B)(ii) ................. **15**

III.  SIMILARLY, PETITIONERS' CHALLENGE TO THE PAROLE
      PROCEDURES, AND THEIR INSISTENCE THAT, UNDER CASES
      SUCH AS *MATHEWS v. ELDRIDGE,* (AND *KWOCK JAN FAT*),
      THEY ARE ENTITLED TO A "HEARING IN GOOD FAITH,
      HOWEVER SUMMARY," ON THEIR PAROLE REQUESTS,
      STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED,
      WITHIN THE MEANING OF RULE 12(b)(6) ................. **16**

           A.  EVEN AS A CHALLENGE TO INS' DENIALS OF PETITIONERS'
               INDIVIDUAL PAROLE REQUESTS, THE "FACIALLY LEGITIMATE
               AND BONA FIDE REASON" STANDARD DOES NOT APPLY TO
               PAROLE, FROM CUSTODY, OF PERMANENT RESIDENTS ..... **17**

           B.  THE "FACIALLY LEGITIMATE AND BONA FIDE REASON"
               STANDARD HAS NO BEARING ON A CONSTITUTIONAL
               CHALLENGE TO THE ADMINISTRATION OF THE PAROLE
               AUTHORITY UNDER 8 U.S.C. §1182(d)(5)(A), AS
               IT AFFECTS PERMANENT  RESIDENTS, AND EVEN IF IT
               DID, IT WOULD NOT JUSTIFY THE DENIALS OF PAROLE
               TO PETITIONERS HERNANDEZ AND GRIMALDO .............. **18**

IV.   THE DOCUMENTS CLAIM ................................... **19**

CERTIFICATE OF SERVICE ..................................... **20**

## TABLE OF AUTHORITIES

### CASES

*Arnett v. Kennedy,*
     416 U.S. 134 (1974) . . . . . . . . . . . . . . . . . 10

*Ascencio-Guzman et al v. Trominski et al,*
     CA B-94-215 (S.D.Tx), pending . . . . . . . . . . . . 15

*Carlson v. Landon,*
     342 U.S. 524 (1952) . . . . . . . . . . . . . . . 3, 10

*City of West Covina v. Perkins,*
     525 U.S. 234 (1999) . . . . . . . . . . . . . . . . . 14

ii

*Dickerson v. U.S.,*
     120 S.Ct. 2326 (2000) . . . . . . . . . . . . . . . . . 12

*Dusenbery v. U.S.,*
     122 S.Ct. 694 (2002) . . . . . . . . . . . . . . . . . 14

*Ferreras v. Ashcroft,*
     160 F.2d 617 (S.D.N.Y. 2001) . . . . . . 3, 4, 6, 10, 11, 18

*Fiallo v. Bell,*
     430 U.S. 787 (1977) . . . . . . . . . . . . . . 3, 10, 18

*Fong Yue Ting v. U.S.,*
     149 U.S. 698 (1893) . . . . . . . . . . . . . . . 3, 10

*Galvan v. Press,*
     347 U.S. 522 (1954) . . . . . . . . . . . . . . . 3, 10

*Gisbert v. U.S. Attorney General,*
     998 F.2d 1437 (5th Cir. 1993) . . . . . . . . . . 2, 5

*Goldberg v. Kelly,*
     397 U.S. 254 (1970) . . . . . . . . . . . . . . . . . 6

*Heikkila v. Barber,*
     345 U.S. 229 (1953) . . . . . . . . . . . . . . . . 15

*Hirabayashi v. U.S.,*
     828 F.2d 591 (9th Cir. 1987) . . . . . . . . . . . . 4

*Ho v. Greene,*
     204 F.3d 1045 (10th Cir. 2000) . . . . . . . . . . . 5

*Hoang v. Comfort,*
     282 F.3d 1247 (10th Cir. 2002) . . . . . . . . . 3, 16

*INS v. St. Cyr,*
     121 S.Ct. 2271 (2001) . . . . . . . . . . . . . 15, 17

*Kim v. Ziglar,*
     276 F.3d 523 (9th Cir. 2002) . . . . . . . . . . 3, 16

*Kleindienst v. Mandel,*
     408 U.S. 753 (1972) . . . . . . . . . . . . . . . . 17

*Kwock Jan Fat v. White,*
    253 U.S. 454 (1920) . . . . . . . . . . . . . . . . 16

*Kwong Hai Chew v. Colding,*
    344 U.S. 590 (1953) . . . . . . . . . . . . . . . . . 8

*Landon v. Plasencia,*
    459 U.S. 24 (1982) . . . . . . . . . . . . . 3, 6-8, 18

*Loa-Herrera v. Trominski,*
    231 F.3d 984 (5th Cir. 2000) . . . . . . . . . 13, 15

*Manuel Made v. Ashcroft,*
    01Civ - 1039 (D.N.J. 2001), app. dismissed . . . . . . . 12

*Marcello v. Bonds,*
    349 U.S. 302 (1955) . . . . . . . . . . . . . . . . . 9

*Mathews v. Eldridge,*
    424 U.S. 319 (1976) . . . . . . . . . . . . . 6, 14, 16

*Molina v. Sewell,*
    983 F.2d 676 (5th Cir. 1993) . . . . . . . . . . 7, 18

*Mullane v. Central Hanover Bank & Trust,*
    339 U.S. 306 (1950) . . . . . . . . . . . . . . . . 14

*Patel v. Zemski,*
    275 F.3d 299 (3rd Cir. 2001) . . . . . . . . . . 3, 16

*Plyler v. Doe,*
    102 S.Ct. 2382 (1982) . . . . . . . . . . . . . . . 6

*Rodriguez-Fernandez v. Wilkinson,*
    654 F.2d 1382 (10th Cir.1981) . . . . . . . . . . . . 6

*Roe v. Wade,*
    410 U.S. 113 (1973) . . . . . . . . . . . . . . . . 13

*Rosenberg v. Fleuti,*
    374 U.S. 449 (1963) . . . . . . . . . . . . . . . 8, 12

*Sierra v. INS,*
    258 F.3d 1213 (10th Cir. 2001) . . . . . . . . . 3, 5, 15

*Sol v. INS,*
     274 F.3d 648 (2nd Cir. 2001) . . . . . . . . . . . 16

*U.S. ex rel Barbour v. INS,*
     491 F.2d 573 (5th Cir.1974) . . . . . . . . . . . . 17

*U.S. ex rel. Knauff v. Shaughnessy,*
     338 U.S. 537 (1950) . . . . . . . . . . . . . . . 5-7

*Zadvydas v. Davis,*
     121 S.Ct. 2492 (2001) . . . . . . . 2-4, 7, 10, 11, 16, 18

## STATUTES

8 U.S.C. §1101(a)(13) . . . . . . . . . . . . . . . . 12

8 U.S.C. §1182(d)(5)(A) . . . . . . . . . . . . 1, 2, 14, 18

8 U.S.C. §1225(b)(2)(A) . . . . . . . . . . . . . . . 12

8 U.S.C. §1226(a) . . . . . . . . . . . . . . . . 2, 15

8 U.S.C. §1226(c) . . . . . . . . . . . . . . . . . . 3

8 U.S.C. §1226(e) . . . . . . . . . . . . . . . . 5, 15

8 U.S.C. §1229b(a) . . . . . . . . . . . . . . . . . 2

8 U.S.C. §1252(A)(2)(B)(ii) . . . . . . . . . . . 5, 13, 15

28 U.S.C. §2241 . . . . . . . . . . . . . . . . . . 15

## REGULATIONS

8 C.F.R. §212.5(d) . . . . . . . . . . . . . . . . . 2

## OTHER AUTHORITIES

Federal Rules of Civil Procedure,
     Rule 11(b) . . . . . . . . . . . . . . . . . . . 1

Federal Rules of Civil Procedure,
     Rule 12(b)(6) . . . . . . . . . . . 1, 2, 13, 14, 16, 17

United States District Court
Southern District of Texas
FILED

MAY 2 8 2002

Michael N. Milby
Clerk of Court

### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

ISRAEL HERNANDEZ-LEIJA, et al   )
                                   )
v.                                  )     C.A. No.   01-206
                                   )
E.M. TROMINSKI, et al.       )
_____)

**PLAINTIFFS' OPPOSITION TO DEFENDANTS/RESPONDENTS' MOTION TO DISMISS**

Petitioners hereby oppose Respondents' Motion To Dismiss, asserting that this Court lacks jurisdiction over a constitutional challenge by lawful permanent residents to the administration of 8 U.S.C. §1182(d)(5)(A), and that Rule 12(b)(6), F.R.Civ.P. requires that the action be dismissed. [1]   Said motion is patently frivolous.

Service was complete on February 23, 2002, but no Answer or Return has been filed.  Instead, three months later, Respondents reworked their "preliminary" opposition to Petitioners' application for a temporary restraining order and motion for preliminary injunction, styling it a motion to dismiss. This is a clear attempt to delay the instant proceedings to the point that Petitioners become desperate, and accept their deportations, thereby mooting the case. Justice delayed is justice denied, and the Department of Justice should not be allowed to use such tactics. F.R.Civ.P. Rule 11(b). [2]

---

[1]   The instant motion is cited as (RsMotDis:__). Respondents' Preliminary Opposition to Petitioners' Application for Temporary Restraining Order and Motion for Preliminary Injunction is cited as (RsOPP:_), and Petitioners' response thereto is cited as (PET:__).

[2]   The case of Ana Patricia Cerda-Cardenas, A44 344 250, also illustrates the phenomenon of detention as a means of pressuring LPRs into relinquishing their LPR status. Ms. Cerda has been an LPR since she was about three years old. On May 3, 2002, a friend lent her a car, and when she crossed the bridge, it was found to contain marijuana. Ms. Cerda vehemently denies prior knowledge of the contraband, and was not prosecuted. Yet she is detained at PISPC, and has been told by INS agents that if she fights deportation, federal criminal charges will be filed, and that she will spend ten years in prison, after which she will still be deported.  She was never informed of the existence of parole, and when visited by the undersigned, was on the verge of accepting her deportation, out of

**Respondents' motion should be denied, and habeas relief promptly granted to the long-suffering, detained, Petitioners, (including Mr. Prado and Ms. Cerda), ordering that individual hearings be conducted to determine whether they should be paroled, with or without bond, under the criteria of 8 C.F.R. §212.5(d).** [3]

**I. RESPONDENTS' CLAIMS THAT THE COURT LACKS JURISDICTION, AND THAT THE CASE IS SUBJECT TO DISMISSAL UNDER RULE 12(b)(6), ARE FRIVOLOUS**

Respondents' claim that this Court lacks jurisdiction over the case at bar is based primarily on a patently incorrect reading of *Zadvydas v. Davis*, 121 S.Ct. 2492 (2001), and a pre-*Zadvydas* Fifth Circuit case, *Gisbert v. U.S. Attorney General*, 998 F.2d 1437 (5th Cir. 1993). Although their motion covers 44 pages, Respondents dispose of *Zadvydas* in a footnote to their assertion that *Gisbert* stands for the proposition that Petitioners have no liberty interest in being paroled from INS detention. (RsMotDis: 30,n.13):

> The Supreme Court's decision in <u>Zadvydas</u> ... is not to the contrary. Plaintiffs suggest that <u>Zadvydas</u> involved a "liberty interest, to wit, indefinite detention of aliens under deportation orders which could not be promptly effectuated," and that this represents the continued vitality of the Due Process rights at issue here. ... Plaintiffs are mistaken. <u>Zadvydas</u> made no finding regarding a liberty interest. Rather, the Supreme Court merely commented that to hold that a deportable alien could be held indefinitely would present a serious constitutional question. ... Indeed, the <u>Zadvydas</u> Court expressly noted that aliens at the border do not possess the same rights as aliens within the United States, acknowledging that the former type of alien is not "in" the United States and does not obtain

---

her deportation, out of desperation, and hopelessness. Petitioners' Exhibit L, incorporated by reference. This would be doubly tragic, as she is clearly eligible for relief under 8 U.S.C. §1229b(a).

[3]     Petitioners seek release under §1182(d)(5)(A), not §1226(a), as Respondents allege. (RsMotDis:9). Since Respondents appear to be hopelessly confused by Petitioners' use of the analogy to §1226(a), Petitioners will cease to make it, and will refer henceforth solely to the criteria of 8 C.F.R. §212.5(d).

> the protection of the Fifth Amendment.  The Plaintiffs
> here are all detained at the border and are not within
> the scope of Zadvydas.  See Sierra v. INS, 258 F.3d 1213,
> 1218 (10th Cir. 2001) (noting that whatever procedures
> Congress establishes for aliens seeking admission is due
> process for far as such aliens are concerned).  Therefore
> their due process rights are at a minimum.  Landon v.
> Plasencia, 459 U.S. at 33.

Although contained in a footnote, and never revisited, this paragraph represents the heart of Respondents' position. Its burial in a footnote shows that they are aware that it has neither legs, nor life. Respondents have cited no cases, and Petitioners are aware on none, which stand for the proposition "that whatever procedures Congress establishes for aliens seeking admission is due process" so far as LPRs detained at the border are concerned.

Nor have Respondents cited any cases holding that the courts lack *jurisdiction* over such claims, or that such petitions do not state a claim upon which relief can be granted under Rule 12(b)(6).  To the contrary, the one case Petitioners have unearthed supporting Respondents' position on the merits, explicitly found that habeas jurisdiction existed to consider the claim, *Ferreras v. Ashcroft,* 160 F.2d 617 (S.D.N.Y. 2001). *Ferreras* was decided shortly after *Zadvydas,* and before the decisions in *Hoang v. Comfort,* 282 F.3d 1247 (10th Cir. 2002); *Kim v. Ziglar,* 276 F.3d 523 (9th Cir. 2002), and *Patel v. Zemski*, 275 F.3d 299 (3rd Cir. 2001), interpreting and applying *Zadvydas* to the mandatory detention of LPRs, and holding that, as applied to LPRs, 8 U.S.C. §1226(c) is unconstitutional. [4]

---

[4]  Obviously, Petitioners disagree with the reasoning, and the conclusion reached in *Ferreras*. Although the petitioner was an LPR, the Court therein based its decision primarily on the same cases involving non-residents as Respondents cite herein; to wit, *Fiallo v. Bell,* 430 U.S. 787 (1977); *Galvan v. Press,* 347 U.S. 522 (1954); *Fong Yue Ting v. U.S.,* 149 U.S. 698 (1893), and *Carlson v. Landon,* 342 U.S. 524 (1952). *Id.* at 625. Actually, *Fong Yue Ting* concluded

3

**A.  THE BASIC PREMISE OF *ZADVYDAS* IS THAT EVEN ALIENS UNDER FINAL ORDERS OF DEPORTATION HAVE LIBERTY INTERESTS.**

Any fair reading of *Zadvydas* reveals that it rests on the premise that even aliens under final orders of deportation have liberty interests.  Respondents' claim to the contrary is so outrageous that it is hard to believe that it was made in good faith.  In fact, in order for the Supreme Court to conclude that their indefinite detention would "present a serious constitutional problem," as Respondents characterize the Court's holding, there would have to be a constitutional right which would be jeopardized under those circumstances.  As a matter of simple logic, if the aliens in *Zadvydas* had no liberty interests, their indefinite detention would not have posed a "serious constitutional problem."

Indeed, the Court was quite explicit in this regard.  121 S.Ct. at 2498-99 (internal citations omitted) (bold emphasis added):

> A statute permitting indefinite detention of an alien
> would raise a serious constitutional problem.  The Fifth
> Amendment's Due Process Clause forbids the Government to

---

that the "right of a nation to expel or deport foreigners who have not been naturalized, or taken any steps towards becoming citizens of the country, rests upon the same grounds, and is as absolute and unqualified, as the right to prohibit and prevent their entrance into the country." 149 U.S. at 707.  Not only is this no longer good law, but it involved the Chinese Exclusion Act, and carries no more moral authority than the Japanese internment cases. *See, e.g., Hirabayashi v. U.S.*, 828 F.2d 591 (9th Cir. 1987) (granting writ of *coram nobis* and vacating convictions for violating war-time restrictions requiring Japanese-Americans to remain within their residences and to report to civilian control stations, because the key document showing that the decision to impose these restrictions was based on racial prejudice was only recently discovered).

Further, the Court in *Ferreras* found that meaningful consideration, under the appropriate standards, had been given to the petitioner's parole request. By contrast, the requests of the Petitioners herein were denied because INS concluded that releasing them on parole was not in INS' own interests. *See,* Exhibit G, at p.3, and Exhibits A and E.  This is hardly an appropriate basis for denying parole.

4

"depriv[e]" any "person ... of ... liberty ... without due process of law." **Freedom from imprisonment--from government custody, detention, or other forms of physical restraint--lies at the heart of the liberty that Clause protects.** ... And this Court has said that government detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections, ... or, in certain special and "narrow" non-punitive "circumstances, ... where a special justification, such as harm-threatening mental illness, outweighs the "individual's constitutionally protected interest in avoiding physical restraint." ...

The second case cited by Respondents in this footnote is equally unavailing. *Sierra,* like *Gisbert*, involved a Mariel Cuban whose parole had been revoked. In neither case were the petitioners permanent residents, and to stretch the holdings to cover LPRs, (particularly without acknowledging the distinction) flies in the face of a long line of Supreme Court and Fifth Circuit decisions.

Moreover, the *Sierra* Court found that neither §1252(a)(2)(B)(ii), nor §1226(e) (assuming it applied), deprived it of jurisdiction in habeas corpus to review the petitioner's claim. *Id.* at 1217-18. In the section cited by Respondents, the Court reasoned as follows:

> The Due Process Clause does not provide him a liberty interest in being released on parole. *See Ho,* 204 F.3d at 1060. [5] Ordinarily, then, "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *United States ex rel. Knauff v. Shaughnessy,* 338 U.S. 537, 544, 70 S.Ct. 309, 94 L.Ed. 317 (1950). [FN3]
>
> FN3. The above rule applies to procedural due process challenges such as Sierra's. This case does not involve, and we do not address, a substantive due process challenge to congressional legislation. *Cf., e.g.,*

---

[5]  *Ho v. Greene,* 204 F.3d 1045 (10th Cir. 2000), was, as the *Sierra* Court acknowledged, 258 F.3d at 1217, overruled by *Zadvydas*.

> *Rodriguez-Fernandez v. Wilkinson,* 654 F.2d 1382, 1387
> (10th Cir.1981) ("Surely Congress could not order the
> killing of Rodriguez-Fernandez and others in his status
> on the ground that Cuba would not take them back and this
> country does not want them.").

Apart from the fact that Petitioners herein, unlike Sierra, are
LPRs, and are raising Substantive as well as Procedural Due Process
claims, the citation to *Knauff* is very telling. *Knauff* involved
the denial of admission of a war bride during a designated period
of national emergency. **Respondents know full well that the quoted
language does not now (and never did) apply to LPRs.** So far as the
undersigned knows and believes, no court in the last 100 years has
reached a contrary conclusion. Yet Respondents would have this
Court believe that *Knauff*, and the cases following it, stand for
the proposition that **lawful permanent residents** have no liberty
interest in freedom from detention while their cases are pending.
*See, e.g.,* (RsMotDis:23), where Respondents quote the same passage
from *Knauff*. Even the Court in *Ferreras* did not go that far.

### B. AS LAWFUL PERMANENT RESIDENTS, PETITIONERS ARE ENTITLED TO DUE PROCESS, EVEN WHEN DETAINED AT THE BORDER

Perhaps most revealing is Respondents' dismissive characterization
of Petitioners' rights as limited to "some due process protections"
or "minimal procedural protections," (RsMotDis:20,n.7). [6]   In
support of this claim, they cite *Landon v. Plasencia,* 459 U.S.
24,32-33 (1982), quoting the following passage (emphasis by INS):

---

[6]   Petitioners would posit that having Due Process rights is
rather like being pregnant. There is no such thing as being "a
little bit pregnant," Nor can Due Process rights be "at a minimum."
It may be that the *process* due is minimal, but that depends on the
nature of the right at stake, not on their citizenship, or where
they were detained. *See, Mathews v. Eldridge,* 424 U.S. 319,335
(1976); *Goldberg v. Kelly,* 397 U.S. 254,263-271 (1970). *See also,
Plyler v. Doe,* 102 S.Ct. 2382 (1982) (even aliens unlawfully
present in the country are entitled to Equal Protection).

6

> [t]he role of the judiciary is limited to determining whether the procedures meet the <u>essential standard of fairness</u> under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy.

This "essential standard of fairness under the Due Process Clause" is exactly what Petitioners seek. And the scope of its protection is far broader than the "minimal procedural protections ... for evaluating their right to remain" to which Respondents would reduce it. (RsMotDis:20,n.7). [7] *See, e.g., Molina v. Sewell*, 983 F.2d 676,680 (5th Cir. 1993), discussed more fully at (PET:10,n.11). [8]

Respondents repeat this claim in Footnote 13, (RsMotDis:30,n.13), asserting that because Petitioners were detained at the border, "their due process rights are at a minimum," again citing *Landon v.*

_____

[7] Respondents later quote *Knauff*, (RsMotDis:23), as follows:

> Whatever the procedure authorized by Congress is, it is due process as far an alien denied entry is concerned.

*Knauff* involved the denial of admission of a war bride during a designated period of national emergency.   Respondents know full well that the quoted language does not (and never did) apply to LPRs, and typifies the bad faith arguments they persist in making. Said arguments are, or should be, beneath the Department of Justice, and should cause this Honorable Court to view the claims they make with great scepticism.  *See also,* Rule 11(b)(1) and (2).

[8] Respondents quoted *Matter of Longstaff,* 716 F.2d 1439,1442-443 (5th Cir. 1983) (RsMotDis:20), as follows:

> The constraints of rationality imposed by the constitutional requirements of substantive due process and of nondiscrimination exacted by the equal protection component of the due process clause do not limit the federal government's power to regulate either immigration or naturalization.

Said case concluded that a homosexual was not "lawfully" admitted for permanent residence, because, as a homosexual, he was excludable at entry.   If the quoted language can still be considered good law at all, under *Zadvydas*, it clearly cannot be extended to the detention of lawful permanent residents.

*Plasencia,* 459 at 33.    However, relying on *Kwong Hai Chew v.
Colding,* 344 U.S. 590 (1953), *Plasencia* reached quite the opposite
conclusion. *Id.* (some internal citations omitted) (emphasis added):

> [In *Kwong Hai Chew v. Colding*] the regulations permitted
> the exclusion of an arriving alien without a hearing. We
> interpreted those regulations not to apply to Chew, a
> permanent resident alien who was returning from a
> five-month voyage abroad as a crewman on an American
> merchant ship. We reasoned that, "**For purposes of his
> constitutional right to due process, we assimilate
> petitioner's status to that of an alien continuously
> residing and physically present in the United States.**"
> 344 U.S. at 596... Then, to avoid constitutional
> problems, we construed the regulation as inapplicable.
> Although the holding was one of regulatory
> interpretation, the rationale was one of constitutional
> law. Any doubts that Chew recognized constitutional
> rights in the resident alien returning from a brief trip
> abroad were dispelled by *Rosenberg v. Fleuti, supra,*
> where we described Chew as holding "that the returning
> resident alien is entitled as a matter of due process to
> a hearing on the charges underlying any attempt to
> exclude him."

Although they were detained at the border, Petitioners are entitled
to Due Process, just as if they had been "continuously residing and
physically present in the United States." It is the nature of the
interest which determines the extent of the procedural protections
to which they are entitled. That interest, it is urged, is vital.

> **C. UNDER THE CIRCUMSTANCES OF THE CASE AT BAR, WHERE INS
> HAS AN "INTEREST" IN PETITIONERS' REMOVAL, WHICH INTEREST
> IS FURTHERED BY THE DENIAL OF PAROLE, DUE PROCESS REQUIRES
> NOTICE, AND A HEARING BEFORE AN INDEPENDENT ADJUDICATOR.**

It can hardly be gainsaid that INS is not impartial in the question
of whether individual Petitioners are given parole, and therefore,
the opportunity to litigate complex constitutional issues affecting
their status as LPRs. It is also obvious that there are no clear,

consistent, and rational criteria which are utilized in determining whether to grant parole. For example, Petitioner Calvillo-Lopez was initially denied parole because it was "not considered to be in the public's interest or of an urgent humanitarian nature." (Exhibit B). His request was reconsidered, and "based upon an interview with [him], and a review of the facts," it was granted. (Government's Exhibit 1). On January 11, 2002, Respondents also agreed that Petitioner Pulido be paroled, upon posting of a $5,000 bond, because "[n]o information in his file nor history of any criminal records reveals that [he] would appear to pose a possible flight risk or danger to the community." (Government Exhibit 2).

Ironically, the criteria applied in Mr. Pulido's case are the very criteria Petitioners urge should be applied in all cases: whether the person is a flight risk, or danger to the community. And, it is urged, if these criteria were applied, Petitioners Hernandez, Grimaldo, Prado, and Cerna would all be granted parole.

But these were not the criteria applied in the cases of Petitioners Grimaldo and Hernandez. Rather, INS concluded that it was "not in the best interest of the U.S. Immigration and Naturalization Service" to release Mr. Grimaldo while his case was pending. (Exh. G, at p.3). And Petitioner Hernandez' request was denied because INS determined that it was "not in the best interest of the service [*i.e.*, INS] or the public" to grant him parole. (Exhs. A and E). [9]

Parole decisions are made by the very agency, INS, which acts as the prosecutor in removal cases. The conflict of interest thus created far surpasses that asserted in *Marcello v. Bonds*, 349 U.S. 302, 311 (1955), which challenged the **independence** of the hearing

---

[9] Citing Plaintiffs' Exhibit B, (relating solely to Mr. Calvillo), Respondents assert, (RsMotDis:23-24), that "each [request for parole] was denied because ... it would not be 'in the public's interest or of an urgent humanitarian nature.'" This is simply false. *See*, Petitioners' Exhibits A, E, and G.

examiner.  At least there was a hearing examiner.  By definition, this means there was a hearing.  Here, the prosecutor makes the decision.  This runs counter to the very concept of Due Process. In *Arnett v. Kennedy,* 416 U.S. 134 (1974) Justice White, concurring in part and dissenting in part, argued that in some cases due process requires an impartial decisionmaker, even at the prehearing stage of an employment dispute, where the stakes were far less than they are in the instant cases.  He reasoned, *id*. at 199:

> Fairness and accuracy are not always threatened simply because the hearing examiner is the supervisor of an employee.... But here the hearing official was the object of slander that was the basis for the employee's proposed discharge.  In ruling that the employee was to be terminated, the hearing examiner's own reputation ... was at stake.

Although a similar claim was rejected in *Ferreras, supra,* there were several flaws in the court's reasoning. First, as noted above, the court erred in adopting INS' argument that an LPR has no more rights at the border than individuals who had never been admitted, and in relying on cases such as *Fiallo v. Bell; Galvan v. Press; Carlson v. Landon*, and even the shameful Nineteenth Century Chinese Exclusion Act case, *Fong Yue Ting v. U.S.*.  The court also over-stated the holding of *Carlson v. Landon. See,* 160 F.Supp2d. at 625:

> Supreme Court authority establishes that there is no constitutional right to bail, such that Congress has the power to deny bail entirely without violating any constitutional rights, including in deportation cases.

As characterized in *Zadvydas, supra* at 2499, *Carlson* only upheld the "temporary detention of alien during deportation proceeding while noting that 'problem of ... unusual delay' was not present." Here, as discussed at (PET:11-12), assuming that Petitioners are able to pursue their cases, the delay could run into years.  And if they are not given a meaningful opportunity to seek parole, it is highly unlikely that they will be able to defend their LPR status.

10

Even persons such as Ms. Cerda, who committed no offense, run a serious risk of being pressured into accepting removal. She has been told by INS detention officers that, one way or another, she will be deported: the only difference being that she would first spend ten years in prison, if she fights deportation. (Exhibit L).

If nothing else, *Zadvydas* stands for the proposition that there are limits to INS detention without a hearing, and that six months is the presumptive outer limit of such detention. Petitioners Grimaldo and Hernandez are approaching, (or have passed), that outer limit. Mr. Grimaldo has been detained since December 13, 2001, and is still in the administrative stage of proceedings. Mr. Hernandez has been detained since November 16, 2001. His case is also still in the administrative phase. In both cases, the BIA's ultimate decision is a foregone conclusion, and **initial** consideration of their constitutional claims will not commence until their removal orders are administratively final, and they can file a habeas petition in this Honorable Court. If not given relief, they will clearly spend many months, if not years, in INS detention, without a hearing, or other meaningful access to parole: assuming, that is, that they do not despair, and accept removal.

Third, the *Ferreras* court concluded that the petitioner therein had not shown that either the final decision, or the process leading to it, was unfair. By contrast, Petitioners have shown that parole decisions in the Harlingen INS district are totally arbitrary. There is not a dime's difference between Petitioners Calvillo, Hernandez, Pulido, and Grimaldo: either in terms of their equities, or the underlying criminal conduct. Yet Mr. Pulido was granted parole, and Mr. Calvillo's request was ultimately granted, after a personal interview, and a "review of the facts." But Mr. Hernandez and Mr. Grimaldo remain in detention, because INS decided that it was not in their interest to release them.

11

And people like Ms. Cerda, who committed no offense, never heard of parole, and thus never made an application, but who is being pressured to accept deportation, have virtually no chance of receiving parole, unless and until they are identified by Petitioners' counsel, and brought before this Honorable Court. [10]

### D. WHETHER *FLEUTI* HAS BEEN LEGISLATIVELY OVERRULED IS AN ISSUE WHICH REMAINS TO BE LITIGATED.

In their exposition of the statutory and regulatory background, Respondents discuss, *inter alia,* the *Fleuti* doctrine, [11] and the changes to 8 U.S.C. §1101(a)(13). However, whether *Fleuti* was statutorily overridden is a key issue to be litigated in the review of Petitioners' removal orders. At least one district court has held that it was not. [12] Petitioners also urge that *Fleuti* was constitutionally based, [13] and *cannot* be statutorily abrogated. *See, Dickerson v. U.S.,* 120 S.Ct. 2326 (2000) (the "Miranda rule" is constitutionally based, and may not be overruled by Congress).

---

[10] Under the direction of Cecilio Ruiz, the former Assistant District Director for Detention and Deportation, who retired this month, LPRs such as Ms. Cerda were paroled without bond as soon as identified. For example, criminal charges against Plaintiff Esparza were dropped. He was paroled the same day he requested it. (Exhibit F). This policy has apparently changed. INS is clearly aware that Ms. Cerda has not been convicted of anything, or they would not be threatening her with (federal) criminal charges if she attempts to defend herself in immigration court.

[11] *Rosenberg v. Fleuti,* 374 U.S. 449 (1963) (LPR who makes an innocent, casual, and brief trip abroad is not seeking "entry" on his return, and is not subject to exclusion proceedings).

[12] *Manuel Made v. Ashcroft,* 01Civ - 1039 (D.N.J. 2001), app. dism., holding that that LPRs seeking readmission after *Fleuti*-type departures are not "arriving aliens" under 8 U.S.C. §1225(b)(2)(A), because IIRIRA did not abolish the *Fleuti* doctrine. (Exhibit K).

[13] *Fleuti,* 374 U.S. at 455-56, showing that although it was decided on the basis of statutory construction, it had constitutional antecedents, which Congress may not repeal or amend.

12

As previously discussed, (PET:11-12), since Petitioners' entire defense flows almost exclusively from constitutional claims, which the BIA cannot entertain, their removal cases will be protracted. In order to defend their LPR status, they therefore are in urgent need of a meaningful opportunity to be released on bond.

Petitioners also seek procedures whereby their personal property will not be "lost in the cracks" of interagency contact during their initial detention at the ports of entry. The facts underlying this claim were well pled, (see, ¶33), and it was the focus of the fourth, fifth, sixth, and seventh causes of action. Yet Respondents urge that it was not properly raised, (RsMotDis:10), and purport to address it only "out of an abundance of caution." Id., at n.3.

## II. THE CLAIM WITH RESPECT TO NOTICE OF PAROLE IS NEITHER MOOT, NOR BARRED BY 8 U.S.C. §1252(a)(2)(B)(ii) AND IS NOT SUBJECT TO DISMISSAL UNDER RULE 12(b)(6).

### A. MOOTNESS

On the merits, INS argues that Plaintiffs' notice claim is moot, (RsMotDis:10-12). See also, (RsOPP:3-4). As previously discussed, (PET:8), this is a quintessential example of a situation that is capable of repetition, yet evading review. See, Roe v. Wade, 410 U.S. 113 (1973). And contrary to Respondents' claim, (RsMotDis:12), Petitioners had standing when the suit was filed, since the failure to provide notice delayed their requests for parole. See, Loa-Herrera v. Trominski, 231 F.3d 984,987-88 (5th Cir. 2000). That the problem could be repeated is seen from those Petitioners who have been released on parole. They are LPRs, and could find themselves in a confrontation with INS at the border in the future, when counsel was not available to explain the mechanics of requesting parole, much less, to prepare and file the request on their behalf.

Furthermore, Ms. Cerda is also seeking to be joined as a named Petitioner. In order not to "contaminate" her, counsel decided to

13

file a separate habeas on her behalf, **before** advising her of the existence of parole, or helping her request it.  This is plain silly, but, under the circumstances, it is a necessary precaution.

Respondents also urge that the notice claim be dismissed under Rule 12(b)(6). (RsMotDis:14-18).  They again assert that the proper test is that of *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306 (1950), [14]  and that the case at bar "is not different from <u>West Covina</u> or <u>Dunesbury</u>." [sic] [15] (RsMotDis:17).  Although the claimant in *Dusenbury* was also detained, the similarities end there.  That case held that Due Process was satisfied where a forfeiture notice was sent to the property owner: (1) by certified mail to the prison where he was incarcerated, (2) to the residence where the arrest occurred, and (3) to his address in the town where his mother lived.  Petitioners would be satisfied with far less:  perhaps one written notice, in Spanish, and oral explanation of parole and how to request it, given to LPRs who are detained at a port of entry.

The only "notice" they receive of parole under §1182(d)(5)(A), and the means for requesting it, is the mere existence of the statute and regulations.  As previously shown, (PET:16-18), the evidence developed at the hearing clearly demonstrates that this is grossly inadequate to provide "notice that is reasonab[le] ... under all the circumstances" to LPRs detained at PISPC. [16]

---

[14]  In fact, although the notice and hearing claims are closely entwined, it is the hearing claim that is most clearly subject to the balancing test of *Mathews v. Eldridge, supra*, and the notice claim is more properly addressed under *Mullane*.

[15]  *City of West Covina v. Perkins*, 525 U.S. 234 (1999), and *Dusenbery v. U.S.*, 122 S.Ct. 694 (2002).

[16]  As illustrated by the case of Ms. Cerda, even LPRs who are improperly detained, because they have been convicted of no offense, and in fact, committed none, could lose their LPR status, (and some doubtless have), because of lack of notice of the possibility of parole, and the means of requesting it. (Exhibit L).

14

## B.  8 U.S.C. §1252(a)(2)(B)(ii)

While conceding that it does not preclude review of "substantial constitutional questions," (RsMotDis:13), Respondents again assert that jurisdiction is barred by 8 U.S.C. §1252(a)(2)(B)(ii). But as previously shown, (PET:1-3), §1252(a)(2)(B)(ii) is inapplicable to all constitutional challenges. "It is never within the Attorney General's discretion to act unconstitutionally." *Sierra, supra* at 1217. *A fortiorai,* it does not apply to constitutional challenges to the administration of the parole authority. Nor does it preclude review of individual cases under 28 U.S.C. §2241. *Sierra, supra.*

And, as was also previously shown, (PET:2-6), such habeas review is not limited to "substantial constitutional questions." Respondents previously expressed disagreement with the holding of *Loa-Herrera, supra,* to the effect that 8 U.S.C. §1226(e) barred review even of constitutional issues arising from the administration of the parole authority under §1226(a). (RsOPP:5,n.2). Yet they now repeat the same arguments they made before the Fifth Circuit in *Loa-Herrera,* urging that "the choice of procedures to implement INA §§ 235 & 236 are discretionary choices of the Attorney General," (RsMotDis:13-14), and that the parole procedures are therefore immune even from constitutional scrutiny. [17]  This is disingenuous to the extreme.

Quite apart from Respondents' new-found conclusion that the Fifth Circuit was in error in holding that similar language in §1226(e) barred review even of constitutional questions, it can no longer be considered good law following *INS v. St. Cyr,* holding that such bars do not apply to habeas review. [18]  And, as more fully discussed

---

[17]  The pertinent pages of Respondents' Fifth Circuit brief were filed as Exhibit "TT" with Plaintiffs' Motion for Rule 11 Sanctions in *Ascencio-Guzman et al v. Trominski et al,* CA B-94-215.

[18]  *INS v. St. Cyr,* 121 S.Ct. 2271,285-86 (2001), citing *Heikkila v. Barber,* 345 U.S. 229 (1953) (In the immigration

at (PET:3-6), the scope of such review *does* encompass "manifest" abuse of discretion, such as shown herein, where INS denied Petitioners' parole requests in whole or part because it was not in **INS' interest** to allow them to be released. *Kwock Jan Fat v. White*, 253 U.S. 454,457-458 (1920) (internal citations omitted):

> It is fully settled that the decision by the Secretary of Labor, of such a question as we have here, is final, and conclusive upon the courts, unless it be shown that the proceedings were "manifestly unfair," were "such as to prevent a fair investigation," or show "manifest abuse" of the discretion committed to the executive officers by the statute,... or that "their authority was not fairly exercised, that is, consistently with the fundamental principles of justice embraced within the conception of due process of law," .... The decision must be after a hearing in good faith, however summary, ... and it must find adequate support in the evidence, ...

Under *Kwock*, the "manifest abuse" of discretion involved herein, is a Due Process violation, reviewable in habeas corpus. [19]  And the constitutional challenge to the procedures utilized does not involve the exercise of discretion, under §1252(a)(2)(B)(ii). These claims are therefore not subject to dismissal under Rule 12(b)(6).

**III.   SIMILARLY, PETITIONERS' CHALLENGE TO THE PAROLE PROCEDURES, AND THEIR INSISTENCE THAT, UNDER CASES SUCH AS *MATHEWS v. ELDRIDGE*, (AND *KWOCK JAN FAT*), THEY ARE ENTITLED TO A "HEARING IN GOOD FAITH, HOWEVER SUMMARY," ON THEIR PAROLE REQUESTS, STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED, WITHIN THE MEANING OF RULE 12(b)(6).**

Respondents' also assert, (RsMotDis:18-38), that Petitioners' Due Process challenges to the denial of Petitioners' individual parole

---

context, the terms "judicial review" or "jurisdiction to review" have historically distinct meanings from "habeas corpus").

[19]   *Sol v. INS*, 274 F.3d 648 (2nd Cir. 2001), cited at (RsMot Dis:14,n.6) is not to the contrary.  No egregious or "manifest" abuse of discretion was claimed.  To the contrary, the Court found that the petitioner failed to establish **any** abuse of discretion, either by the Immigration Judge, or by the BIA. *Id.* at 650

rights of LPRs, [21] much less the detention of such LPRs. They do not even cite *Ferreras,* the one case adopting most of their arguments, possibly because it contradicts their bogus jurisdictional claims.

**B.   THE "FACIALLY LEGITIMATE AND BONA FIDE REASON" STANDARD HAS NO BEARING ON A CONSTITUTIONAL CHALLENGE TO THE ADMINISTRATION OF THE PAROLE AUTHORITY UNDER 8 U.S.C. §1182(d)(5)(A), AS IT AFFECTS LAWFUL PERMANENT RESIDENTS, AND EVEN IF IT DID, IT WOULD NOT JUSTIFY THE DENIALS OF PAROLE TO PETITIONERS HERNANDEZ AND GRIMALDO.**

Respondents also claim that the standard of review, (presumably, of individual parole requests), is whether it is based on a "facially legitimate and bona fide" reason. This claim, in turn, is based on the assertion that Petitioners have no "liberty interest" in parole, (RsMotDis:18-38). Under *Zadvydas,* and *Molina v. Sewell, supra,* this is plainly incorrect. Petitioners are entitled to Due Process, even at the border. *Molina v. Sewell, supra* at 680:

> *Landon* recognized that, unlike an alien seeking to enter the United States for the first time, a returning resident alien retains a constitutional right to due process. 459 U.S. at 32-33. The fact that an alien is subject to deportation proceedings does not affect his status as a permanent resident alien. A permanent resident alien's status terminates only when the order of deportation is affirmed by the BIA or otherwise becomes administratively final.

And, as *Zadvydas* reiterated, *supra* at 2498:

> The Fifth Amendment's Due Process Clause forbids the Government to "depriv[e]" any "person ... of ... liberty

---

[21] *Fiallo v. Bell, supra,* cited at (RsMotDis:20), did not involve an exercise of discretion, but rather an Equal Protection challenge to stricter requirements for men who wanted to immigrate their illegitimate children. The Court held that, even though it impacted on persons lawfully in the U.S., the statute derived from Congress' "exceptionally broad power to determine which classes of aliens may lawfully enter the country," *id.* at 794, and that there were no factors which would warrant a more strict scrutiny.

> ... without due process of law."    **Freedom from
> imprisonment--from government custody, detention, or
> other forms of physical restraint--lies at the heart of
> the liberty that Clause protects.** ...

Precisely because they have Due Process rights, and because
physical restraint "lies at the heart of the liberty" protected by
the Due Process Clause, the same test applies here as in *Zadvydas*.

Wherefor, it is urged that Mr. Hernandez and Mr. Grimaldo, (as well
as Mr. Prado and Ms. Cerda), be given prompt parole hearings, so
that they may meaningfully pursue their cases. [22]

### IV.    THE DOCUMENTS CLAIM

Respondents still misinterpret Petitioners' documents claims.  The
only documents they want to have with them, while in custody, are
names, telephone numbers, etc., (and, perhaps, some evidence of who
has the remainder of their belongings).  As for other property,
they want to ensure that it is properly cared for, that the chain
of custody is well documented, and that they get it back when it is
no longer required, either as evidence, or for safeguarding.

Respondents now allege that it is the Treasury Department which
seized Mr. Esparza's wallet, and that they have retained it, (to
date), as "potential evidence of Esparza's unlawful conduct."
(RsMotDis:44,n.18).  Mr. Esparza was in custody when his wallet and
other documents were seized, and he is entitled to look to the U.S.
Government for their return, particularly since he received no
notice (until Respondents served counsel with their motion), that
it was Customs who had his property - and apparently intend to keep
it indefinitely, even though the criminal charges were dropped.

---

[22]  Respondents' arguments that "the balance of Due Process
factors favors the government, (RsMotDis:32-37), and the claim that
Petitioners have not shown "actual prejudice (RsMotDis:37-38), were
adequately addressed above, and in (PET:15-16).

Nor have Respondents presented any logical explanation of how his drivers' license, family photographs, the name and phone number of the attorney in Maine representing him in his Workers' Compensation case, and similar papers, could conceivably be "evidence" in the criminal case. Or, if they were "evidence," why copies were not made of the personal papers, and the originals returned to him. And most disconcerting, since he was not told who had his personal documents, and they were not returned when the criminal charges were dropped, he had no means of recovering them.

Rather, the log of property seized appears to be the standard record of property taken from someone who has been arrested. It should have been turned over to the U.S. Marshal, and then to INS, and Mr. Esparza should have been given appropriate documentation with each transfer in the chain of custody of his belongings. The fact that he is no longer detained does not moot this claim. He has suffered greatly from not having such documents as his driver's license, and to date, they have not been returned to him, even though Respondents claim to know who has them.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney          Thelma O. Garcia, Attorney
17891 Landrum Park Road             301 E. Madison
San Benito, TX 78586                Harlingen, TX 78550
(956) 421-3226; 421-3423 (fax)       (956) 425-3701; 428-3731 (fax)
Fed. ID.  1178
Texas Bar 03052800

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing, with Exhibit L, was mailed, first class postage prepaid, to Ernesto Molina, Attorney, OIL, P.O. Box 878, Ben Franklin Sta., Washington, D.C. 20044, May 27, 2002.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

```
ISRAEL HERNANDEZ-LEIJA,          )
CARLOS OMAR CALVILLO-LOPEZ,      )
JORGE RIVERA-PULVIDA,            )
JOSE ANTONIO ESPARZA, and        )
DIONICIO GRIMALDO-BARRIENTOS,    )
   In their own name and right,  )
   and on behalf of all others   )
   similarly situated,           )
                                 )
v.                               )        C.A. No.  01-206
                                 )
E.M. TROMINSKI, INS DISTRICT     )
   DIRECTOR, and                 )
JOHN ASHCROFT, ATTORNEY          )
   GENERAL OF THE UNITED STATES. )
_____)
```

EXHIBIT "L" IN SUPPORT OF

PLAINTIFFS' OPPOSITION TO DEFENDANTS/RESPONDENTS' MOTION TO DISMISS

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION


ISRAEL HERNANDEZ-LEIJA, et al        )
                                     )
v.                                   )        C.A. No.  01-206
                                     )
E.M. TROMINSKI, et al.               )
_____)


**DECLARATION IN SUPPORT OF OPPOSED MOTION OF PUTATIVE CLASS MEMBER
TO BE JOINED AS A NAMED PLAINTIFF IN THE INSTANT ACTION,
SEEKING A WRIT OF HABEAS CORPUS AND CLASS ACTION COMPLAINT
FOR DECLARATORY AND INJUNCTIVE RELIEF**


I, Ana Patricia Cerda-Cardenas, A44 344 250, hereby declare under
penalty of perjury as follows:


I am a lawful permanent resident of the United States, having been
admitted in approximately 1984, at the age of about two or three
years.  I have extensive family members and other equities in the
United States, including the following:


I was admitted as a toddler, with my entire family.  My mother has
since passed away, but my father and all my siblings are still
here.  We live at 1929 Hackberry, in McAllen Texas, where we have
been for about four or five years.  I have never before had any
problems with the law, and was working as a cashier, when the
incident occurred which led to my detention.


I was detained by INS on May 3, 2002.  I was returning from a brief,
casual, and innocent trip to Mexico.  A friend had lent me his car.
He told me to put gas in it, because it was almost empty, and that
when I got to the other side, I would be reimbursed.  I had no idea
that the vehicle was carrying contraband, and would not have gotten
involved if I had been even the least bit suspicious.  However,
when I reached the bridge, they discovered marijuana, and I was

detained, and sent to the detention center near Los Fresnos. They were so rough with me that I still have a painful lump on my hand, where I was injured during their attempt to get me to "admit" that I knew the drugs were there. I never did admit it, because I was innocent. No criminal charges were filed against me, but they are still detaining me. I am innocent, and believe that I should be released. But the "green guards" have scoffed at me, telling me that if I try to fight my case, they will put federal criminal charges against me. They say that I will be in prison for ten years, and that after that, I will be deported anyway, so there is no point in trying to defend myself.

I wanted to pursue my legal remedies, in an attempt to retain my status as a lawful permanent resident, but had concluded that this was hopeless. No-one ever explained to me that there exists any process by which I could request a bond. To the contrary, I have been told that I am not eligible for a bond, and believing that, have not made any written applications for release. In fact, I have never seen the person who is supposed to be my deportation officer. I wanted to talk to her, because I wanted to see if there was some way I could get my deportation more quickly, since I was going to be deported anyway. But I never got the chance to do so.

I have been told that I have a hearing with Immigration Judge Ayala, on Wednesday, May 29, 2002. Depending on what he tells me, I may go ahead and sign my deportation. I am desperate, and scared, as I believe INS' threats, that they will prosecute me in federal court, and that I will go to jail for ten years. Ms. Brodyaga has tried to tell me that this is an empty threat, but that is hard to believe, given everything that I have been told here by INS. Since they are the ones who can do it, it is hard not to believe what they say.

The foregoing was explained to me in the English language, by

2

Attorney Lisa S. Brodyaga, and is true and correct to the best of
my knowledge and belief.


*Patty Cida*

May 27, 2002

3