United States District Court
Southern District of Texas
FILED

JUN 2 1 2002

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ISRAEL HERNANDEZ-LEIJA, et al, )
)
v. ) C.A. No. B-01-206
)
E.M. TROMINSKI, et al. )
_____ )

**PETITIONERS' POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER GRIMALDO'S ELIGIBILITY FOR PAROLE UNDER 8 U.S.C. §1182(d)(5)**

Petitioners, through counsel, and in order to sharpen the issues and avoid unnecessary delay, would herewith address Respondents' claims that Petitioner Grimaldo is ineligible for parole under 8 U.S.C. §1182(d)(5)(A), and/or that his case is "moot." At the Status Conference on June 19, 2002, Respondents advised the Court of their intention to file further pleadings on this point. By briefing the issue at this time, Petitioners would afford them the opportunity to attempt to rebut Petitioners' arguments in that brief, thereby (hopefully) avoiding one entire round of pleadings.

In their Opposition to Plaintiffs' motion for class certification, (cited as (RespOPP:___), at pages 9-11, Respondents urge that once class members are under administratively final orders of removal, they are ineligible for parole under §1182(d)(5)(A), because their detention thereafter falls under 8 U.S.C. §1231(a), rather than 8 U.S.C. §1225(b). As a result, Respondents argue:

> Under [§1331(a)], an alien must be detained for 90 days after the entry of a final order of removal. 8 U.S.C. § 1331(a)(1)(A) & (a)(2) (Supp. 1997); 8 C.F.R. §241.3 (2002). After ninety days, the Attorney General may continue to detain certain types of criminal aliens. 8 U.S.C. § 1231(a)(6) (Supp. 1997). However, such aliens may seek release from the district director. 8 C.F.R. § 241.4(c).

This is only technically true, and, as is the case with so many other aspects of immigration law, the exceptions have swallowed the

rule. The initial ninety day period is specifically dubbed the "removal period" by §1231(a)(1)(A)(1). Its purpose is to give INS an unfettered opportunity to execute the removal order, after all the legal obstacles have been overcome. As noted in *Zadvydas v. Davis*, 121 S.Ct. 2492, 2494 (2001) (emphasis added):

> The basic federal habeas statute grants the federal courts authority to determine whether post-removal-period detention is pursuant to statutory authority. **In answering that question, the court must ask whether the detention exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's purpose of assuring the alien's presence at the moment of removal.**

See also, *Al Najjar v. Ashcroft*, 186 F.Supp.2d 1235, 1242 (S.D.Fla.2002) (emphasis added):

> **The *Zadvydas* Court made clear that once a final removal order has issued, the primary purpose of detention is to effectuate an alien's removal from the United States.** *Id.* at 2502. An alien may be detained for six months [1] for the sole purpose of ensuring removal, regardless of whether the alien presents a danger to the community or a risk of flight. *Id.*

In other words, the purpose of detention during this period is to execute the removal order. It is this purpose which causes the detention to be justifiable, rather than punitive in nature. *See, Zadvydas*, supra, at 2498-2501. If there were no opportunity to remove the person during that period of time, detention would have no purpose, and detention "regardless of whether the alien presents a danger to the community or a risk of flight" would assume a purely punitive character. This would violate Due Process. *Id.*

---

[1] The six months include the ninety day "removal period," and an additional ninety days, which the Supreme Court found to be reasonable, while removal efforts continue.

Furthermore, where the conduct of the individual creates barriers to removal, the running of the initial removal period is equitably "tolled," and the person cannot assert his or her "right" to be considered for bond. *See, Al Najjar v. Ashcroft, supra* at 1240:

> A plain reading of the statutory provision indicates that the Attorney General has six "unhampered" months from the date of the Eleventh Circuit's mandate in the deportation case within which to effectuate Petitioner's departure from the United States. *See Ogorodnikov v. INS,* 995 F.2d 1063, 1993 WL 192766 at *2 (4th Cir.1993) (per curiam) (adopting rationale of Second Circuit and district courts holding that the Attorney General has six "unhampered" months from date of final deportation order within which it may detain an alien); *Balogun v. INS,* 9 F.3d 347, 350-51 (5th Cir.1993) (remanding for determination of whether alien intentionally prevented INS from effecting his deportation, in which case the six-month period should be equitably tolled until alien begins to cooperate); *Dor v. Dist. Dir., INS,* 891 F.2d 997, 1002-03 (2d Cir.1989) (rejecting alien's claim for release after expiration of six-month period where alien had caused delay of deportation by extensive legal maneuvering); *Bartholomeu v. Dist. Dir., INS,* 487 F.Supp. 315, 319-20 (D.Md.1980); *United States ex rel. Lam Tuk Man v. Esperdy,* 280 F.Supp. 303, 304 (S.D.N.Y.1967); *United States ex rel. Cefalu v. Shaughnessy,* 117 F.Supp. 473, 474 (S.D.N.Y.), aff'd, 209 F.2d 959 (2d Cir.1954) (per curiam).

Black's Law Dictionary, Seventh Edition, 1999, defines the verb "to toll" as follows:

> **toll**, *vb.* **1.** To annul or take away <toll a right of entry>. **2.** (Of a time period, sep. a statutory one) to stop the running of; to abate <toll the limitations period>.

However, "tolling" is an equitable doctrine. And perhaps the most fundamental of all maxims of equity is that "he who seeks equity must do equity." *Powell Inc. v. Abby,* 669 F.2d 348,350 (5th Cir. 1982); *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist,* 177 F.3d 351,375 (5th Cir. 1999) ("At the outset, we observe that a central, guiding principle underlying equitable

relief is that '[h]e who seeks equity must do equity'"). Therefore, if Respondents are to "seek equity" by asserting the right to an unhampered period to execute a removal order *after* any barriers to removal have been lifted, (such as Mr. Grimaldo's pending habeas petition), they must also "do equity" by not claiming a statutory mandate to detain the person, (without regard to whether s/he is a threat to the community, or a flight risk), during the period when removal is not feasible, at least where the barrier is not created by such bad faith actions as the refusal to cooperate in obtaining travel documents, or filing frivolous legal actions, in which case the person's "unclean hands" would annul any right to seek equity.

The theoretical underpinning of this may be the equitable doctrine of "tolling," (*i.e.*, the running of the "detention period has been "tolled;" stopped, or taken away), but it also has very practical bases. There is no point in spending public money to detain a person who is not a threat to the community, or a flight risk, when the person cannot or should not be deported because a good faith legal challenge to the removal order is pending. And, particularly in the case of LPRs, it would also cause unnecessary financial and emotional suffering for USC and LPR family members.

This equitable principle has also been recognized "on the ground," as witnessed by the scores of habeas petitions seeking review of final orders of deportation and removal which this Court has heard, or has pending, on behalf of *non-detained* immigrants. There were approximately fifty such petitions in the series of *Cantu-Salinas et al v. Trominski et al*, C.A. B-97-183, (S.D.Tx. 1998), of which thirty-two were consolidated before the Fifth Circuit, under the heading of *Cantu-Salinas et al v. Trominski et al*, No. 98-41325. Another two dozen or so were stragglers, and were resolved later, including *Arechiga-Hernandez v. Trominski*, CA B-99-040, one of a group of cases wherein on August 8, 2001, this Court conducted an

emergency hearing on the Respondents' motions to dismiss without prejudice, and *Chavez-Mendoza v. Trominski*, CA B-00-086, part of a second group, wherein INS ultimately filed unopposed motions to remand the cases to the BIA, for reconsideration under *INS v. St. Cyr*, 121 S.Ct. 2271 (2001). There are also several pending cases, including *Salazar-Regino v. Trominsi*, C.A. B-02-045, involving constitutional issues arising from the retroactive application of new interpretations of the law, where the immigrant relied to his or her detriment on the prior state of the law, and similar issues.

In virtually all of these cases, the petitioner has remained at liberty, under the same bond, or parole status, [2] as s/he enjoyed prior to the issuance of the administratively final order of deportation or removal. [3] These are examples of INS "doing equity," so that they may "seek equity," if and when the judicial challenge to the removal or deportation order is lost, and the immigrant must face the reality of returning to his or her country of origin. Then, and only then, would 8 U.S.C. §1231(a)(1)(A) cease to be "tolled," and Respondents could rightfully claim their 90 day "removal period," and thereafter, possibly an additional 90 days, under *Matter of Zadvydas, supra*, of "unhampered" detention time, in which to execute the order of deportation or removal.

Here, Mr. Grimaldo has filed a clearly meritorious habeas petition. He has demonstrated that the Immigration Judge lost sight of the forest, for all the legal trees and underbrush for which immigration law is so famous. In concluding that he was ineligible for §212(c) relief because the ground of inadmissibility created by the fact that he had (allegedly) been sentenced to five years or

---

[2] *See, e.g., Torres-Espino v. Trominski*, CA B-02-062, for an example of an immigrant granted parole under 8 U.S.C. §1182(d)(5).

[3] For example, *Salazar-Regino* is a removal case. *See, Matter of Salazar-Regino*, 23 I&N Dec. 223 (BIA 2002).

more, in aggregate, for the two convictions, (including a firearms offense), the Judge lost sight of the fact that he is charged as an "arriving alien." Unlike *Matter of Esposito*, 21 I&N Dec. 1 (1995), removability is determined by 8 U.S.C. §1182(a). Since neither the "aggravated felony" nor the firearms conviction causes him to be inadmissible under that section, the §212(c) waiver can cure his sole ground of inadmissibility, to wit, the drug offense. [4]

WHEREFORE, it is urged that, as has been the case with other LPRs seeking habeas review of final orders of removal, the "detention period" of 8 U.S.C. §1231(a)(1) has been equitably "tolled," and, even without considering the constitutional ramifications of a contrary holding, Mr. Grimaldo therefore remains eligible for parole under 8 U.S.C. §1182(d)(5)(A). It is also hoped that Respondents will address these arguments in their upcoming brief.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226
(956) 421-3423 (fax)
Fed. ID.  1178
Texas Bar 03052800

Thelma O. Garcia, Attorney
301 E. Madison
Harlingen, TX 78550
(956) 425-3701
(956) 428-3731 (fax)

**CERTIFICATE OF SERVICE**

I certify that the foregoing was faxed to Ernesto Molina, Attorney, at (202) 616-4975, on June 20, 2002, and that a copy thereof was mailed to him, first class postage prepaid, at P.O. Box 878, Ben Franklin Sta., Washington, D.C. 20044, also on June 20, 2002.

---

[4] And even if Mr. Grimaldo were "admitted," such that he was subject to the grounds of deportability under 8 U.S.C. §1227(a), given that neither the firearms offense, nor the aggravated felony, causes him to be "inadmissible," both could be "cured" by adjusting his status through his U.S. citizen wife. Such adjustment applications may be made jointly with requests for §212(c) waivers. *See, Matter of Gabryelski*, 20 I&N Dec. 750 (BIA 1993).