UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

OCT 3 0 2002

Michael N. Milby
Clerk of Court

| | |
|---|---|
| ISRAEL HERNANDEZ-LEIJA, et al ) | |
| ) | |
| v.                              ) | C.A. No. 01-206 |
| ) | |
| E.M. TROMINSKI, et al,          ) | |
| _____) | |

**PETITIONERS' RESPONSE TO INS' OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, AND OPPOSED MOTION TO ADD THREE NEW NAMED PLAINTIFFS, IN ORDER TO COUNTER RESPONDENTS' ARGUMENTS AS TO TYPICALITY AND COMMONALITY OF THE CLASS REPRESENTATIVES.**

Petitioners, through counsel, hereby respond to INS' Memorandum of Law In Support of Defendants/Respondents' Objections to the Magistrate Judge's Report and Recommendation, (herein referred to as "INS" Memo," and cited as (INSobject:__)).[1] Simultaneously, Plaintiffs' seek leave to add three new named Plaintiffs, in order to resolve any doubts as to whether Plaintiff Grimaldo is an appropriate class representative.[2] *See*, Plaintiffs' Exhibit P, relating to Ramiro Torres-Gonzalez, A90 957 311; Javier Cantu-Rodriguez, A90 874 983 and German Chavez, A72 422 817.[3]

**I. INS' OBJECTIONS**

INS raises five objections, stated as follows, (INSobject:2):

---

[1] As previously, the Report and Recommendation of the Magistrate Judge will be cited as (R&R:__).

[2] The undersigned called Mr. Molina on the morning of October 30, 2002, to determine whether he would be opposed to the instant request, but he was unavailable. She left a message that it would be presumed that he opposed the motion unless he advised her to the contrary, but has received no response. His co-counsel, Lisa Putnam, SAUSA, is back in the hospital, and could not be contacted.

[3] Because of the inherently fluid nature of the class, new people are added almost daily, just as others are either released, having won their cases, or deported. Consequently, it should not be surprising that only one of the initial Plaintiffs remains detained in a case which has been pending for almost a year.

1.  Whether the Court should reject the Report's suggestion that [the] class should be certified.
2.  Whether the Court should reject the Report and dismiss the claims of Plaintiffs Calvillo and Hernandez-Leija where they are no longer in INS detention.
3.  Whether the Court should reject the Report and dismiss Plaintiffs' claim that they are entitled to individualized notice of parole where the availability of parole is published in reporters. [sic]
4.  Whether the Court should reject the Report's decision to displace Congress' chosen requirements for parole where Congress' decision can be supported by a facially legitimate and bona fide reason.
5.  Whether the Court should reject the Report and dismiss Plaintiffs' claim that due process entitles them to a hearing before an immigration judge rather than the district director.

First, Plaintiffs have previously acknowledged that Plaintiffs Calvillo and Hernandez-Leija should be dismissed as Plaintiffs. *See,* Plaintiffs' Objections to Magistrate Judge's Report and Recommendation, (herein cited as (PsObject:__)). at pages 2,4. As also noted therein, (PsObject:1-2,4), and as acknowledged by INS, (INSobject:3), the BIA has reopened Petitioner Grimaldo's case, and remanded it for a hearing on the merits of whether or not he deserves discretionary relief. Therefore, Mr. Grimaldo is again detained at PISPC, having been denied parole by INS, without a Due Process parole hearing, however summary. Other members of the putative class are also detained, and seek the same remedy.

### I. ISSUES PRESENTED

#### A. THE INSTANT CLASS SHOULD BE CERTIFIED

B. PLAINTIFFS ARE ENTITLED TO NOTICE OF THE AVAILABILITY OF PAROLE, EVEN THOUGH SUCH AVAILABILITY IS "PUBLISHED IN REPORTERS"

C. EVEN IF THERE WERE A "FACIALLY LEGITIMATE AND BONA FIDE REASON" FOR TREATING THE PLAINTIFF CLASS AS IF THEY WERE NOT LAWFUL PERMANENT RESIDENTS, BUT WERE SEEKING INITIAL ADMISSION, THIS WOULD NOT BE SUFFICIENT TO DEFEAT PLAINTIFFS' DUE PROCESS CLAIMS.

D. GIVEN THAT PLAINTIFFS' STATUS AS LAWFUL PERMANENT RESIDENTS ENTITLES THEM TO DUE PROCESS, THEY ARE ENTITLED TO NOTICE AND A DUE PROCESS HEARING, HOWEVER SUMMARY, BEFORE THEIR REQUESTS FOR PAROLE ARE DENIED.

## II. ARGUMENT

Apart from some issues involving class certification, all the points raised by INS have been previously briefed by both parties, and INS' claims have been rejected by the Magistrate Judge.

### A. THE INSTANT CLASS SHOULD BE CERTIFIED.

INS first urges that the instant class should not be certified, because: 1) 8 U.S.C. §1252(f)(1) precludes a grant of injunctive, and declaratory relief; 2) the class lacks commonality; 3) there has been in insufficient showing of numerosity; 4) Plaintiffs' claims are not typical; and 5) Plaintiffs are not adequate representatives. All of these points have been previously briefed, and rejected by the Magistrate.[4] Plaintiffs will therefore make only a very brief rebuttal.

#### 1. Class Certification Is Not Barred By 8 U.S.C. §1252(f)(1)

Contrary to INS' assertions, 8 U.S.C. §1252(f)(1) does not prohibit Plaintiffs' class claims or preclude the relief requested. In addition to the arguments previously presented, Plaintiffs would note that §1252(f)(1) does not affect the Court's jurisdiction to hear their claims, but only limits the Court's power to issue class-wide injunctions. *See, Reno v. American-Arab Anti-Discrimination Committee*, 119 S.Ct. 936 (1999) (hereinafter "AADC"), where the Supreme Court concluded, 119 S.Ct. at 942, that "[b]y its plain terms, and even by its title, [§1252(f)(1)] is nothing more or less than a limit on injunctive relief."

Further, this limitation applies only to class-wide injunctions which restrain the operation of 8 U.S.C. §§1221-1231. Plaintiffs

---

[4] *See, e.g.,* Plaintiffs' Response to Defendants' Opposition to Motion for Preliminary Injunction, [Dkt. 17], Petitioners' Motion For Class Certification, [Dkt 18], Plaintiffs' Opposition to Motion to Dismiss, [Dkt. ], and Reply to Respondents' Opposition to Their Opposed Motion For Class Certification, [Dkt. 26].

do not seek to restrain or enjoin the operation of any section of the INA, let alone any portion of §§1221-1231. To the contrary, the instant action is directed at collateral issues involving the manner in which §1182(d)(5)(A) is administered. Just as §1252(g) does not apply to the "universe of deportation claims," AADC, 119 S.Ct. at 943, courts have concluded that §1252(f)(1) does not apply to the universe of injunctions affecting the manner in which INS implements §§1221-1231. And in particular, the courts have easily concluded that §1252(f)(1) does not bar injunctions addressing unconstitutional acts by INS, even when implementing §§1221-1231.

For example, in *Grimaldo v. Reno*, 187 F.R.D. 643 (D.Col. 1999), the plaintiffs sought relief very similar to what is requested herein. Specifically, they requested "[i]njunctive relief - commanding Defendants to serve all persons in their custody with warrants, bond determinations, and/or process within 24 hours of incarceration pursuant to the applicable regulations." *Id.* at 647. In concluding that this demand was not barred by §1252(f)(1), the court reasoned as follows, *id.* at 648 [citations omitted]:

> Here, Plaintiff does not seek to enjoin the operation of §§ 1221-1231. Rather, they seek to enjoin alleged unconstitutional violations by the INS in its administration of § 1226 and/or its own regulations... Section 1252(f)(1) does not bar Plaintiff's amendment.

A similar conclusion was reached in a case where newspaper publishers challenged an administrative directive which denied them a right of access to deportation hearings in "special interest" cases. In granting a preliminary injunction, the district court held, inter alia, that §§1252(f)(1) did not deprive court of jurisdiction over the subject matter of the action. *North Jersey Media Group Inc. v. Ashcroft*, 205 F.Supp.2d 288 (D.N.J.2002). [5]

---

[5] Reversed on other grounds, *North Jersey Media Group Inc. v. Ashcroft*, __ F.3d __, (3rd Cir. 2002). The government withdrew its

4

>[8 U.S.C. §1252(f)(1)] prohibits injunctions that block the operation of the provisions of 8 U.S.C. §§ 1221-1231. Here, plaintiffs challenge the operation of the Creppy Memo, which is collateral, at best, to the substantive operation of the provisions specifically insulated from injunctive remedies by §§ 1251(f)(1).

Third, even assuming, *arguendo,* that §1252(f)(1) barred the injunctive relief Plaintiffs seek, it would limit only the Court's authority to grant injunctive relief on a class-wide basis. It would not bar individual injunctions, such as in favor of Plaintiff Grimaldo, and class-members Torres-Gonzalez, Cantu-Rodriguez, and Chavez. It would therefore also not preclude a grant of declaratory relief. *North Jersey Media Group, supra* at 295. [6]

Finally, that the requested injunction does **not** violate §1251(f)(1) is seen by the fact that the statute whose administration is challenged is 8 U.S.C. §1182(d)(5)(A), which is not covered by §1252(f)(1). As noted by the Magistrate, the reference to §1225(b)(2) is only the means by which the class is defined.

---

claim under §1252(f)(1) at oral argument. *North Jersey Media Group,* 205 F.Supp.2nd at 305. Moreover, this claim was rejected in *Detroit Free Press v. Ashcroft,* 195 F.Supp.2d 948,955 (E.D. Mich. 2002), and was not among the arguments pressed on appeal. *See Detroit Free Press v. Ashcroft,* 303 F.3d 681, (6th Cir. 2002), holding that the Department of Justice is not entitled to any special deference in the manner in which it chooses to carry out a Congressional mandate. *Id.* at 685-692.

[6] For this reason, cases such as *Texas Employers' Insurance Assoc. v. Jackson,* 862 F.2d 491 (5th Cir. 1988); *California v. Grace Brethren Church,* 457 U.S. 393 (1982), and *American Assoc. of Cosmetology Schools v. Riley,* 170 F.3d 1250 (9th Cir. 1999), are readily distinguishable. Where the issuance of *any* injunction was prohibited, and a declaratory judgment would have the same effect, the courts concluded that declaratory relief was inappropriate, even if not statutorily barred. Here individual injunctions *would be* permissible, so there would be no bar to declaratory relief.

### 2. Where The Class Includes Future Members, Plaintiffs Have Identified a Number of Class Members, Defendants Are In Sole Control Of The Data Relating to Class Size And Have Made No Attempt To Show That The Numbers Are Small, And Common Sense Demonstrates That Joinder Is Impractical Class Certification Is Appropriate.

At least four class members are currently detained by INS at PISPC. During the time that the case has been pending, Plaintiffs have shown that a number of others have come and gone. Defendants, who have sole access to the class, which, by definition, consists of LPRs detained by them, have made no attempt to argue, much less show, that it is rare for LPRs to be detained at the ports of entry, nor have Defendants suggested any procedure by which new class members could be identified, and individual actions filed on their behalf. As the Magistrate concluded, under the unique circumstances of the case at bar, joinder would be unfeasible, and the case should be allowed to proceed as a class action.

### B. PLAINTIFFS ARE ENTITLED TO NOTICE OF PAROLE, EVEN THOUGH SUCH AVAILABILITY IS "PUBLISHED IN REPORTERS" PARTICULARLY WHERE THE ACTUAL PROCEDURES FOR REQUESTING PAROLE ARE NOT PUBLISHED ANYWHERE.

INS persists in maintaining its "head in the sand" approach to the fact that information regarding the existence of parole, and the manner in which it may be requested, is not "generally available" to the Plaintiff class, as required by *City of West Covina v. Perkins*, 525 U.S. 234 (1999). The fact that Plaintiffs are informed that they are under removal proceedings, as provided by 8 U.S.C. §1229a, (INS:15), does not mean that they are on notice of 8 U.S.C. §1182(d)(5)(A), much less of the means to request parole. Nor are such materials "generally available" to the instant class.

To the contrary, some detention officers falsely advise class members that there is **no** procedure by which they can seek release while their cases are pending. *See, e.g.,* Plaintiffs' Exhibit L, Declaration of Ana Patricia Cerda. Further, as shown by Plaintiffs'

6

testimony, access to the library at PISPC is very limited, and its contents are even more limited. Defendants have not even claimed that the library contains materials, in Spanish, about parole, much less about how to go about requesting it. Indeed, this is all that Plaintiffs seek: some type of notice, in a language they can understand, provided to them at the time of detention. If such materials existed, (which is highly doubtful), it would not be hard to ensure that they were made available to class members.

**C. EVEN IF THERE WERE A "FACIALLY LEGITIMATE AND BONA FIDE REASON" FOR TREATING THE PLAINTIFF CLASS AS IF THEY WERE NOT LAWFUL PERMANENT RESIDENTS, BUT WERE SEEKING INITIAL ADMISSION, THIS WOULD NOT BE SUFFICIENT TO DEFEAT PLAINTIFFS' DUE PROCESS CLAIMS.**

In urging that Plaintiffs have no liberty interest in parole, (INS: 19-21), INS ignores *Zadvydas v. Davis*, 121 S.Ct. 2492 (2001). *See also, Plyler v. Doe*, 102 S.Ct. 2382 (1982) (even aliens unlawfully present in the United States are entitled to Equal Protection); *Reno v. Flores*, 113 S.Ct. 1439,1449 (1993) (examining immigration statute for Equal Protection violation, and finding none).

And the "facially legitimate and bona fide reason" standard is inapplicable in determining whether Due Process has been violated. Even in determining Equal Protection issues, this is not the correct standard where, as here, fundamental interests, including liberty interests, are involved. In addition to the fact that they are physically detained by INS, the issue addressed in *Zadvydas*, Plaintiffs are all lawful permanent residents, with a fundamental liberty interest in being able to live and work in the U.S., and in remaining here with their families. *See, Landon v. Plasencia*, 459 U.S. 21,34 (1982), citing *Bridges v. Wixon*, 326 U.S. 326 U.S. 135,154 (1945); *Moore v. City of East Cleveland*, 431 U.S. 494,499 (1977), and *Stanley v. Illinois*, 405 U.S. 645,651 (1972):

> Plasencia's interest here is, without question, a weighty one. She stands to lose the right "to stay and live and

7

> work in this land of freedom," ... Further, she may lose the right to rejoin her immediate family, a right that ranks high among the interests of the individual. ...

*Moore* and *Stanley* are both fundamental rights cases, involving family relationships. *Stanley* struck down a conclusive presumption similar to that involved herein, (that LPRs have no more right to or interest in parole than aliens seeking initial admission), and *Moore* simply concluded that the interest advanced by the State was insufficient to justify a given intrusion into the family unit. As LPRs, Plaintiffs enjoy the same Due Process rights, to develop and enjoy intimate family relationships in the United States.

In *Stanley*, the Court addressed the state's ability to interfere with these relationships by establishing a "conclusive presumption" that certain categories of individuals, to wit, unwed fathers, were not worthy of the privilege of being custodians of their children. The Court reasoned as follows, 405 U.S. at 649 (emphasis added):

> ... Is a presumption that distinguishes and burdens all unwed fathers constitutionally repugnant? **We conclude that, as a matter of due process of law, Stanley was entitled to a hearing on his fitness as a parent before his children were taken from him** and that, by denying him a hearing and extending it to all other parents whose custody of their children is challenged, the State denied Stanley the equal protection of the laws guaranteed by the Fourteenth Amendment.

A similar question was raised in *Moore v. City of East Cleveland, supra*. There, the issue was whether the State had gone too far in regulating family relationships, by defining the characteristics of an "acceptable" family, *id.* at 499 (internal citations omitted):

> When a city undertakes such intrusive regulation of the family,.. the usual judicial deference to the legislature is inappropriate. "This Court has long recognized that freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due

8

> Process Clause of the Fourteenth Amendment." ... have consistently acknowledged a "private realm of family life which the state cannot enter." ... Of course, the family is not beyond regulation. ... But when the government intrudes on choices concerning family living arrangements, this Court must examine carefully the importance of the governmental interests advanced and the extent to which they are served by the challenged regulation. ...

Nor is the instant case governed by *Marcello v. Bonds*, 348 U.S. 302 (1955), concluding that the fact that the special inquiry officer had dual functions did not render him incapable of providing a fair hearing. Plaintiffs are given **no hearing** on parole. They submit a written request to the INS, and receive a written reply. There is no face-to-face interview, let alone a "hearing" before INS.

And the claims that the "risk of erroneous deprivation" by these current procedures is "minimal," and that Plaintiffs have not shown "prejudice," (INSobjections:21,22), border on the bizarre. For example, Mr. Grimaldo's request was denied because INS concluded that it was "not in the best interest of the U.S. Immigration and Naturalization Service" to release him pending a decision in his case. (Exhibit G, at p.3). Petitioner Hernandez' request was denied because INS determined that it was "not in the best interest of the service [*i.e.*, INS] or the public" to grant him parole. (Exhibits A and E). If the consequences were not so grave both denials would be laughable: for the lack of procedural safeguards, and for the reasons given. In neither case was there "hearing in good faith, however summary." It is also a "manifest abuse" of discretion to deny parole because it is not in the interest of **INS**, whether in whole or in part. *See, Kwock Jan Fat v. White*, 253 U.S. 454, 457-458 (1920), wherein the Supreme Court granted remanded for a hearing on the merits of a habeas corpus petition contesting an *exclusion* order. *Id.*, (internal citations omitted):

> It is fully settled that the decision by the Secretary of Labor, of such a question as we have here, is final, and

9

> conclusive upon the courts, unless it be shown that the proceedings were 'manifestly unfair,' were 'such as to prevent a fair investigation,' or show 'manifest abuse' of the discretion committed to the executive officers by the statute,... or that 'their authority was not fairly exercised, that is, consistently with the fundamental principles of justice embraced within the conception of due process of law,' .... The decision must be after a hearing in good faith, however summary, ... and it must find adequate support in the evidence, ...

**D. PLAINTIFFS' STATUS AS LAWFUL PERMANENT RESIDENTS ENTITLES THEM TO DUE PROCESS, AND THEY ARE ENTITLED TO NOTICE AND A DUE PROCESS HEARING, HOWEVER SUMMARY, BEFORE PAROLE IS DENIED.**

It must not be forgotten that the issue at bar involves LPRs, who were detained by INS, often after brief, innocent, and casual trips to Mexico, on grounds that are frequently contested. Petitioner Grimaldo has been detained since November 23, 2001, without a parole hearing. His willingness to undergo prolonged detention, in order to fight for his LPR status, is indeed exceptional. INS only recently acknowledged that he is, in fact, eligible for relief from removal, and the case remanded from the BIA for that purpose. It will doubtless be many more months, if not years, before his case is finally resolved. In the interim, his family, and his business, have suffered greatly, solely because INS concluded that it was not **in their own interest** to grant him parole. This is a blatant violation of fundamental fairness, and the Due Process to which he, as a lawful permanent resident, is entitled.

**WHEREFORE,** it is respectfully urged that INS' objections to the Report and Recommendation of the Magistrate Judge be rejected. It is also urged that class members Torres-Gonzalez, Cantu-Rodriguez, and Chavez, be permitted to join Mr. Grimaldo as named Plaintiffs.

Respectfully Submitted,

*/s/ Lisa S. Brodyaga*

| | |
|---|---|
| Lisa S. Brodyaga, Attorney | Thelma O. Garcia, Attorney |
| 17891 Landrum Park Road | 301 E. Madison |
| San Benito, TX 78586 | Harlingen, TX 78550 |
| (956) 421-3226 | (956) 425-3701 |
| (956) 421-3423 (fax) | (956) 428-3731 (fax) |
| Fed. ID. 1178 | |
| Texas Bar 03052800 | |

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing, with Exhibit P, was mailed to Ernesto Molina, Attorney, OIL, Box 878, Ben Franklin Sta. Wash. D.C. 20044, ~~on this~~ 30th day of October, 2002.

*/s/*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **ISRAEL HERNANDEZ-LEIJA, et al,** | ) | |
| | ) | |
| v. | ) | C.A. No. B-01-206 |
| | ) | |
| **E.M. TROMINSKI, et al.** | ) | |
| _____ | ) | |

**EXHIBIT "P" IN SUPPORT OF**

**PETITIONER'S REPLY TO RESPONDENTS' OPPOSITION TO THEIR
(OPPOSED) MOTION FOR CLASS CERTIFICATION.**

# ProBAR

A Project of the
American Bar Association
Washington, D.C.
(202) 662-1006
State Bar of Texas
Austin, Texas
1 800 204-2222, ext 2155
American Immigration
    Lawyers Association
Washington, D.C.
(202) 371-9377

**South Texas Pro Bono Asylum Representation Project**
301 E. Madison Avenue
Harlingen, Texas 78550
Tel: (956) 425-9231
Fax: (956) 425-9233
E-Mail: ProBARTX@worldnet.att.net
**Meredith Linsky**
Coordinator

October 29, 2002

Lisa Brodyaga, Esq.
Refugio del Rio Grande
San Benito, Texas

                Re:    Ramiro Torres Gonzalez
                       A90-957-311
                       Javier Cantu-Rodriguez
                       A90-874-983
                       German Chavez
                       A72-422-817

Dear Ms. Brodyaga:

      I am writing to ask that you include the above-mentioned detainees in your federal lawsuit for legal permanent residents charged as arrriving aliens in the United States. I am the attorney of record on these cases and my parole requests were denied in each case. I will provide you will a short summary of each case.

Ramiro Torres Gonzalez:

Mr. Torres is a thirty-two year old Mexican national who has been a legal permanent resident of the United States since 1986. Mr. Torres left the United States for less than one day and upon his return was arrested by the INS. The INS originally charged him with INA §212(a)(2)(C)(illicit trafficker) due to a 1993 drug offense. Later, they added two additional charges, INA §§ 212(a)(2)(A)(i)(II)(controlled substance conviction) and 212(a)(6)(C)(ii) due to an alleged false claim on June 25, 1992. We intend to apply for 212(c) relief. I filed the parole request with the deportation section of the INS at the Port Isabel Service Processing Center on October 8, 2002 by hand-delivery. I have not received a response in writing, but yesterday, Robert Adame, the Supervisory Deportation Officer told me by phone that this request had been denied.

Javier Cantu-Rodriguez:

Mr. Cantu is a forty-five year old Mexican national who has been a legal permanent resident since approximately 1990. Mr. Cantu was originally charged under INA §212(a)(2)(A)(i)(I)(CIMT) for an alleged robbery conviction. According to my records, Mr. Cantu was actually convicted of a theft offense with a six month sentence. We intend to apply for cancellation of removal. The INS asked for a continuance at the last hearing because my client supposedly has an assault conviction as well. We intend to deny that the assault is a crime of violence and still apply for cancellation of removal. I filed a parole request on September 26, 2002, by hand-delivery. I have not received a written response but yesterday the Supervisory Deportation Officer Robert Adame told me my request was denied.

German Chavez-Hernandez

Mr. Chavez is a thirty four year old Mexican national who has been a legal permanent resident since approximately 1992. Mr. Chavez was charged as an arriving alien after a short trip to Mexico for an 1988 arrest for the purchase of cocaine. The INS originally charged him with inadmissibility pursuant to INA §212(a)(2)(C)(reason to believe illiciti trafficker). I filed a parole request on September 18, 2002 by hand-delivery. I never received a response in writing but on September 20, 2002, INS Deportation Officer Robert Adame called me into his office and told me that my request had been denied because my client's residence had been revoked in 1995. The INS filed another charge against my client in court on September 26, 2002. That charge is INA §212(a)(6)(C)(i)(fraud or willful mispreresentation) because, according to the INS, he failed to disclose his 1988 arrest when he adjusted status in 1992 and his residence is not "lawful."

    Attached you will find a declaration stating that all three parole requests have been denied. If you need anything further, do not hesitate to contact me.

Sincerely,

Meredith Linsky
Coordinator

# DECLARATION

I, Meredith Linsky, hereby declare the following:

1. I am the Coordinator of ProBAR, the South Texas Pro Bono Asylum Representation Project, in Harlingen, Texas. ProBAR is a pro bono project sponsored by the American Bar Association, the State Bar of Texas and the American Immigration Lawyers' Association. ProBAR arranges pro bono legal representation for indigent immigrants and asylum-seekers detained by the Immigration and Naturalization Service in South Texas.

2. I am the attorney of record for the following individuals: Ramiro Torres Gonzalez, A90-957-311; Javier Cantu-Rodriguez, A90-874-983; and German Chavez, A72-422-817. These men are all currently detained by the Immigration and Naturalization Service (INS) at the Port Isabel Service Processing Center (PISPC). They are all natives of Mexico and legal permanent residents of the United States who are currently in removal proceedings. The INS has charged them all as arriving aliens.

3. I filed a parole request for Mr. Torres on October 8, 2002, by hand-delivery to the Deportation Section of the INS at PISPC. I have not received a written response but INS Deportation Officer Supervisor Robert Adame told me yesterday by telephone that this request had been denied.

4. I filed a parole request for Mr. Cantu on September 26, 2002, by hand-delivery to the Deportation Section of the INS at PISPC. I have not received a written response but INS Deportation Officer Supervisor Robert Adame told me yesterday by telephone that this request had also been denied.

5. I filed a parole request for Mr. Chavez on September 18, 2002, by hand-delivery to the Deportation Section of the INS at PISPC. I never received a written response, but the INS Deportation Supervisor Robert Adame told me in person on September 20, 2002 that this request had been denied.

I swear under the penalty of perjury that the information contined in this declaration is true and correct.

_Meredith Linsky_ (signature)   10/29/02
Signature                        Date



**U.S. Department of Justice**
Immigration and Naturalization Service

2102 Teege Ave
Harlingen, Texas 78550

October 25, 2002

Meredith Linsky
Attorney at Law
301 E. Madison
Harlingen, Texas 78550

Ms. Linsky,

    A careful review of the case of Ramiro T. Gonzalez, A# 90 957 311, has been conducted. Your request for a parole bond is denied, while he awaits a decision from the Executive Office of Immigration Review.

Sincerely,

Charles Arendale
Acting Director of Detention and Removal
Harlingen Field Office

Cc: File
CA/ra



**U.S. Department of Justice**
Immigration and Naturalization Service

2102 Teege Ave
Harlingen, Texas 78550

October 25, 2002

Meredith Linsky
Attorney at Law
301 E. Madison
Harlingen, Texas 78550

Ms. Linsky,

A careful review of the case of Javier Cantu-Rodriguez, A# 90 874 983, has been conducted. Your request for a parole bond is denied, while he awaits a decision from the Executive Office of Immigration Review.

Sincerely,

Charles Arendale
Acting Director of Detention and Removal
Harlingen Field Office

Cc: File
CA/ra