39

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
ENTERED

SEP 1 5 2003

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| **ISRAEL HERNANDEZ-LEIJA, ET. AL** | § | |
| | § | |
| **Petitioners,** | § | |
| | § | |
| **v.** | § | **C.A. No. B-01-206** |
| | § | **(consolidated with B-02-109)** |
| | § | |
| **E.M. TROMINSKI, ET. AL** | § | |
| | § | |
| **Respondents.** | § | |

**ORDER**

BE IT REMEMBERED that on September 10, 2003, the Court considered Respondents'[1] and Petitioners' timely objections to the Magistrate Judge's Report and Recommendation ("R&R"). For the reasons that follow, the Court **DECLINES TO ADOPT** the final determination of the Report and Recommendation and **DENIES** Petitioners' habeas petition.

## I. Standard of Review of Magistrate Judge's Report and Recommendation

Petitioners Israel Hernandez-Leija, Carlos Omar-Calvillo-Lopez, Jorge Rivera-Pulido, Jose Antonio Esparza, and Dionicio Grimaldo-Barrientos bring this action pursuant to 28 U.S.C. § 2241 seeking a writ a habeas corpus. After referral to a United States Magistrate Judge, this Court reviews *de novo* those portions of the R&R to which objection is made. "A judge of the court may accept, reject, or modify in whole or in part any findings or recommendations made by the magistrate." 28 U.S.C. §

---

[1]At the time this habeas petition was filed, the Immigration and Naturalization Service ("INS") was an agency organized within the United States Department of Justice. The former INS has now been reorganized into the Bureau of Immigration and Customs Enforcement ("BICE") within the new United States Department of Homeland Security. See Homeland Security Act of 2002, Pub. L. No. 107-296, § 471, 116 Stat. 2135, 2205 (2002). For ease of reference, this decision will refer to the agency as the INS.

1

636(b)(1)(C).  Those portions of the R&R for which there are no objections, the Court reviews for clearly erroneous findings and conclusions of law.  See United States v. Wilson, 864 F.2d 1219, 1221 (5ᵗʰ Cir. 1989).

## II.  **Factual and Procedural Background**

Both the Petitioners and Respondents lodged a number of objections to the Magistrate Judge's R&R.  Many of Respondents' objections concerning factual findings contained in the R&R pertain to the current immigration status of the Petitioners.  For example, one such objection is that Hernandez-Leija was ordered removed on August 5, 2002, and thus his habeas petition is now moot.  See Respondents' Objections, at p. 3 [Dkt. No. 34].  Because the Court does not grant any relief to the Petitioners, this opinion does not unnecessarily address whether certain of the Petitioners' claims have become moot or were moot at the time the R&R was written.[2]  Additionally, because the Court does not grant relief to any of the Petitioners, the Court does not address class certification, and will deny this request as moot.

The remaining Petitioners are all citizens of Mexico and Lawful Permanent Residents ("LPRs") of the United States.  All remaining Petitioners were arrested and charged with drug violations.  The charges against Jose Antonio-Esparza were dismissed.  Petitioners traveled outside the United States for a brief period of time. When they returned, they each applied for admission to the United States as returning LPRs.  At the border, all Petitioners were placed in removal proceedings and detained as arriving aliens pursuant to 8 U.S.C. §§ 1101(a)(13)(C) and 1225(b)(2)(A).

The Magistrate Judge recommended granting relief pursuant to 28 U.S.C. § 2241.  Additionally, the Magistrate Judge recommended granting class certification for those aliens who sought or will seek admission to the United States and were or will be placed in removal proceedings as "arriving aliens" under 8 U.S.C. §§ 1101(a)(13)(C) and 1225(b)(2), and were or are detained pending their removal hearings under 8

_____

[2]Petitioners agree that the Court should dismiss Hernandez-Leija and Calvillo-Lopez as named Petitioners because they have been removed from the United States.

U.S.C. § 1225(b)(2)(C).[3]  See R&R, at p. 10 [Dkt. No. 32].  More specifically, the Magistrate Judge recommended granting Petitioners' application for declaratory and injunctive relief.  This recommendation entailed a directive to the INS to "afford Petitioners Hernandez-Leija and Calvillo-Lopez a bond hearing within 10 days of the proposed order being signed by the district court.  At said hearing, the immigration judge shall state clearly, on the record, the basis of an individualized determination whether any condition or combination of conditions of release will reasonably ensure the Petitioners will not flee and will not endanger the public."  Id.

Because the Court finds the Magistrate Judge's R&R is not supported by the law, the Court **DECLINES TO ADOPT** the R&R.  For the reasons that follow, the Court **DENIES** Petitioners all requested relief.

### III.  Legal Framework

Although all Petitioners are LPRs, upon seeking entry to the United States, they were detained and placed in removal proceedings as arriving aliens pursuant to 8 U.S.C. §§ 1101(a)(13)(C) and 1225(b)(2)(A).  See also 8 C.F.R. § 1.1(q) ("The term arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry . . . . ").  Petitioner LPRs were classified as arriving aliens because each was convicted of an offense identified in 8 U.S.C. § 1182(a)(2).  See 8 U.S.C. § 1101(a)(13)(C)(v) (stating "[a]n alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien– . . . (v) has committed an offense identified in section 1182(a)(2) of this title . . . .").

Aliens already present in the United States, but whom the INS determines are present in violation of the law because they have committed certain enumerated offenses, are apprehended, arrested, and detained pursuant to 8 U.S.C. § 1226(a).  See also 8 U.S.C. § 1226(c)(1) (authorizing the detention of criminal aliens).  Conversely, returning LPRs who have committed certain offenses under section

---

[3]As Petitioners point out, the Magistrate Judge erroneously referred to section 1225(b)(2)(C).  The class should have been defined under section 1225(b)(2)(A).

1182(a)(2) are considered arriving aliens and detained pursuant to 8 U.S.C. § 1225(b)(2)(a). Detention of arriving aliens is generally mandatory. The INA provides that, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a reasonable doubt entitled to be admitted, the alien shall be detained for a proceeding under section 240."[4] INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A). The determination to release an arriving alien on parole[5] is firmly committed to the discretion of the Attorney General. INA § 212(d)(5), 8 U.S.C. § 1182(d)(5)(A). [T]he district director or chief patrol agent may, after review of the individual case, parole into the United States temporarily in accordance with section 212(d)(5)(A) of the Act, any alien applicant for admission, under such terms and conditions . . . as he or she may deem appropriate." 8 C.F.R. § 212.5(c). If arriving aliens are not paroled into the United States they are detained under 8 U.S.C. § 1225(b)(2)(A) while removal proceedings are pending.

The procedures employed for determining whether release from detention is appropriate is dependent upon whether an alien was detained at the border as one seeking admission to the United States or whether an alien was already physically present in the United States and apprehended and arrested by warrant issued by the Attorney General. When an alien is physically present in the United States and is arrested by warrant, the alien is detained pursuant to section 1226(a). See 8 U.S.C. § 1226(a). Procedures governing the release of aliens already present in the United States from detention are established in 8 C.F.R. § 236.1. Under these procedures, appeals of initial custody determinations by district directors may be presented to an

---

[4]Section 240 of the INA governs removal proceedings. See 8 U.S.C. § 1229a.

[5]A paroled alien is one who is temporarily permitted to remain in the United States pending a decision concerning his admission to the United States. Although paroled aliens are permitted to physically enter the United States and pass into the interior, they are considered legally detained at the border within the custody of INS while the agency determines his immigration status. As a result, paroled aliens are not legally admitted to the United States. See 8 U.S.C. § 1182(d)(5)(A).

4

immigration judge.  See 8 C.F.R. §236.1(d)(1).  Conversely, parole decisions concerning aliens seeking admission to the United States are governed by procedures established in 8 C.F.R. § 212.5.  Under this provision, there is no similar appeal to an immigration judge.[6]

## IV.  Jurisdiction

The INS argues this Court lacks subject-matter jurisdiction to review any discretionary decisions of the Attorney General concerning parole.  Section 242(a)(2)(B)(ii) of the INA states,

> [n]otwithstanding any other provision of law, no court shall have jurisdiction to review . . . (ii) any other decision or action of the Attorney General the authority for which is specified under this title to be in the discretion of the Attorney General, other than the granting of [asylum] relief under section 208(a).

8 U.S.C. § 1252(a)(2)(B)(ii).  Section 1182(d)(5), which governs parole, falls within the title and subsection referenced above.

Although the INS acknowledges that any bar to jurisdiction does not preclude review of substantial constitutional questions, see, e.g., Sierra v. INS, 258 F.3d 1213, 1217 (10th Cir. 2001), it argues that Petitioners' due process challenges consist of challenges to the Attorney General's discretionary choice of procedures to apply in reviewing parole requests and in granting such relief from detention.  See Respondents' Motion to Dismiss, at p. 14 [Dkt. No. 19].  As such, INS argues Petitioners' claims are not bona fide constitutional challenges.  The Court disagrees with Respondents' contentions.

Petitioners' claims do not arise from "a decision or action of the Attorney General . . . [that is] in the discretion of the Attorney General . . . . " 8 U.S.C. § 1252(a)(2)(B)(ii). Rather, the claims constitute collateral challenges to alleged unconstitutional practices and policies employed by the agency.  See McNary v. Haitian Refugee Ctr., Inc., 498 U.S. 479, 492 (1991).  Given the broad language used in Immigration & Naturalization

---

[6]Petitioners argue in their briefs that they should be treated procedurally in a similar manner as LPRs under 8 U.S.C. § 1226(a).

Serv. v. St. Cyr, 533 U.S. 289, 311-13 (2001), and Calcano-Martinez v. Immigration and Naturalization Service, 533 U.S. 348, 351 (2001), this Court cannot determine that it lacks jurisdiction to review constitutional due process challenges to certain procedures used by INS.[7]  The Supreme Court in St. Cyr stated that statutory language limiting judicial review does not bar habeas jurisdiction because "[a]t no point . . . does [the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA")] make express reference to § 2241.  Given the historic use of § 2241 jurisdiction as a means of reviewing deportation and exclusion orders, Congress' failure to refer specifically to § 2241 is particularly significant."  Id. at 312 n. 35.  See also Calcano-Martinez, 533 U.S. at 351-52.  Courts of Appeals in other circuits have determined that IIRIRA does not preclude habeas jurisdiction.  See, e.g., Wang v. Ashcroft, No. 02-2045, 2003 WL 255958, at *7-*8 (2d Cir. Feb. 6, 2003); Yuthok v. U.S. Immigration & Naturalization Serv., 51 Fed. Appx. 204, 205 (9th Cir. Nov. 12, 2002) (concerning denial of parole); Riley v. Immigration & Naturalization Serv., 310 F.3d 1253, 1255-56 (10th Cir. 2002).

Furthermore, a recent Supreme Court decision, Denmore v. Hyung Joon Kim, seemingly confirms that this Court has jurisdiction to determine Petitioners' claims. 123 S.Ct. 1708, 1714 (2003).   In Denmore, the Supreme Court addressed a related

---

[7]The Court acknowledges that in Loa-Herrera v. E.M. Trominski the Fifth Circuit held that "Congress . . . has denied the district court jurisdiction to adjudicate deprivations of the plaintiffs' statutory and constitutional rights to parole." 231 F.3d 984, 990-91 (5th Cir. 2000).  The Fifth Circuit cited section 1226(e) for the proposition that the Attorney General's discretionary determinations regarding parole are not reviewable because challenges to the manner in which INS exercises its discretion is synonymous with challenging the discretion itself.  See id.  This decision was issued before the Supreme Court's decisions in either Immigration & Naturalization Serv. v. St. Cyr, 533 U.S. 289, 311-13 (2001), or Denmore v. Hyung Joon Kim 123 S.Ct. 1708, 1714 (2003). Indeed, Denmore interprets the same statutory provision, section 1226(e), that the Fifth Circuit interpreted as a ban to habeas jurisdiction.  In light of these decisions, this Court determines it retains jurisdiction to review constitutional challenges to the procedures implementing the statutory provisions governing parole.  See, e.g., Sierra v. INS, 258 F.3d 1214 (10th Cir. 2001) (holding habeas jurisdiction remains to review alien's constitutional challenge to procedures used in parole proceedings); Jeanty v. Bulger, 204 F. Supp. 2d 1366 (S.D. Fla. 2002) (holding habeas jurisdiction still exists to determine constitutional challenges to the denial of parole).

6

provision of the statue, section 1226(e), which deprives federal courts of jurisdiction to determine habeas relief for aliens challenging their detention under 1226(c). Section 1226(e) explicitly limits review of "the Attorney General's discretionary judgment" regarding the application of section 1226. Nonetheless, the Supreme Court determined it had jurisdiction to entertain the argument that "the Government may not, consistent with the Due Process Clause of the Fifth Amendment, detain him for the brief period necessary for his removal proceedings." Id. at 1717. The Supreme Court reasoned that "[s]ection 1226(e) contains no explicit provision barring habeas review," and the "clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail." Denmore, 123 S.Ct. at 1714.

Section 1252(a)(2)(B)(ii), the statutory provision governing review of section 1182, contains a similar restriction on judicial review; discretionary acts of the Attorney General are not reviewable. As in Denmore, however, Petitioners here do not contest "a 'decision' that the Attorney General has made regarding [Petitioners'] detention or release." Id. at 1714. Rather, they allege constitutional due process violations because the procedures employed by INS are constitutionally infirm. In light of St. Cyr's edict that Congress must clearly express its intent to foreclose constitutional challenges, and Denmore's determination that a similar statutory provision governing the review of discretionary decisions does not foreclose habeas jurisdiction, this Court determines it has jurisdiction to review Petitioners' due process challenges to the procedures used by INS in notifying arriving aliens of the possibility of parole.

### V. Due Process Claim

The Supreme Court has many times recognized the authority of the Attorney General to detain and exclude inadmissible aliens. See, e.g., Immigration & Naturalization Serv. v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999) (explaining judicial deference to the executive branch is appropriate where officials exercise discretion in the immigration context and "exercise especially sensitive political functions that implicate questions of foreign relations"); Reno v. Flores, 507 U.S. 292, 305-06 (1993) (stating executive branch has broad scope of authority over aliens); Landon v. Plasencia, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial

7

admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative.").

Additionally, it has long been established that resident aliens have the same constitutional rights to due process protections as United States citizens. See Plyler v. Doe, 457 U.S. 202, 210 (1982). Indeed, the courts have always distinguished between those aliens that are arriving and those aliens who are present in the United States. See Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953) (holding immigrants determined to be inadmissible are not entitled to due process protections, unlike those aliens who passed even illegally into the United States). Aliens detained at the border while they await a determination on admission to the United States are not on the same legal footing as those aliens considered to be within the territorial jurisdiction of the United States. See Mezei, 345 U.S. at 212.

The Supreme Court has recently recognized again that more rights are afforded those aliens present in the United States. In Zadvydas v. Davis, 533 U.S. 678, (2001), the Court stated, "[t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law . . . . " 533 U.S. at 293. The Court opined:

It is well settled that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders . . . . . But once an alien enters the county, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.

Id. (citations omitted). The Zadvydas Court's decision applied purely to "aliens who were admitted to the United States but subsequently [were] ordered removed. Aliens who [had] not yet gained initial admission to this country would present a very different question." Id. at 682. In light of this distinction, the Supreme Court concluded that section 1231(a)(6) "limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States. It does not permit indefinite detention." Id. at 689.

8

Despite the distinction between aliens already present in the United States and arriving aliens, and the limited holding of Zadvydas, Petitioners nonetheless ask this Court to issue an injunction.  Petitioners request the Court to

> requir[e] Respondents to grant them a prompt hearing on their requests for parole, before an Immigration Judge or other impartial adjudicator, and that at said hearing, their entitlement to parole, with or without payment of a bond, be adjudged in a manner consistent with determinations under 8 U.S.C. § 1226(a)(2) for granting bond or "conditional parole" to otherwise similarly situated LPRs who are arrested on a warrant issued by the Attorney General and detained pending a decision on whether they are to be removed from the United States, to wit that such applications be adjudicated on the basis of whether they present a flight risk, or constitute a threat or danger to the community.

Petitioners' First Amended Petition, at p. 14 [Dkt. No. 2].

Petitioners' request for injunctive relief in essence asks the Court to obliterate the distinction between aliens already present in the United States and arriving aliens. More specifically, Petitioners' request that the Court declare Section 235(b) of the INA does not apply to aliens who are lawful permanent residents because they should not be considered applicants for admission.  8 U.S.C. § 1225(b)(2)(A) (providing that an alien who is an "applicant for admission . . . shall be detained" for a removal proceeding if an immigration officer determines that the alien is not "clearly and beyond a doubt entitled to be admitted").  In this respect, Petitioners ask that they be treated in the same manner as those resident aliens who are apprehended and arrested under section 236(c) of the INA.  See 8 U.S.C. § 1226(c).  The Court declines to extend this relief to Petitioners.

The Supreme Court's recent decision in Denmore v. Hyung Joon Kim, 123 S.Ct. 1708 (2003), precludes Petitioners' claims concerning due process.  In Denmore, a lawful permanent resident was detained pending removal under 8 U.S.C. § 1226(c) because he had previously been convicted of certain crimes.  The Petitioner argued that his due process rights were violated under section 1226(c) because INS had not made an individual determination that he specifically posed a risk of flight or a danger to

9

the community before detaining him. See id. at 1712. Similar to the case now before this Court, the Petitioner in Denmore did not challenge INS's authority to take him into custody based on his prior convictions. Rather, the Petitioner in Denmore argued that mandatory detention without an individualized determination violated his rights. The Supreme Court held:

> [d]etention during removal proceedings is a constitutionally permissible part of that process. See, e.g., Wong Wing v. United States, 163 U.S. 228, 235 (1896) ("We think it clear that detention, or temporary confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens would be valid"); Carlson v. Lando, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952); Reno v. Flores, 507 U.S. 292, 305-306, 113 S.Ct. 1439, 123 L. Ed.2d 1 (1993). The INS detention of respondent, a criminal alien who has conceded that he is deportable, for the limited period of removal proceedings, is governed by these cases.

Id. at 1721.

Under Denmore, there is no due process right to have an individualized determination that an alien poses a risk of flight before detention pending removal. Because aliens already present in the United States and apprehended and arrested under 1226(c) are traditionally afforded greater due process protections than arriving aliens, there is also no due process right to an individualized determination concerning flight risk under section 1225(b)(2)(a) for an arriving alien. Indeed, the Denmore decision made clear that the due process clause does not require that aliens receive any kind of parole pending their removal proceedings.

Furthermore, even before the Denmore decision, "[t]he right to exclude aliens [was firmly] vested in both the legislative and the executive branches of the federal government." Gisbert v. U.S. Attorney General, 988 F.2d 1437, 1440 (5th Cir. 1993) (citing United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 542 (1950)). As a result, Congress has plenary authority to also establish and implement substantive and procedural rules concerning the admission of aliens. See id. (citing Jean v. Nelson, 727 F.2d 957, 964 (11th Cir. 1984)). Courts give great deference to the agency's

10

interpretation of the INA, and other statutes it is charged with administering.  See
Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844
(1984).

Petitioners assert that they should have been given prompt hearings by an
impartial adjudicator.[8]  In addition, Petitioners argue in their petition and in their
objections to the Magistrate Judge's R&R that they should receive prompt notice of the
"right to parole upon detention by the INS."   Petitioners' Objections, at p. 3 [Dkt. No.
35].  Congress, through its enactment of the INA, as amended, has specifically carved
out exceptions for returning lawful permanent aliens who have committed certain
offenses.  See 8 U.S.C. § 1101(a)(13)(C).  By statute, the Attorney General may in his
discretion parole certain aliens into the United States on a case-by-case basis for
"urgent humanitarian reasons or significant public benefit." INA § 212(d)(5)(A), 8 U.S.C.
§ 1182(d)(5)(A).   "[P]etitioners' interest in immigration parole is created by the
immigration statutes and is subject to the exercise of discretion by the Attorney
General." Gisbert, 988 F.2d at 1443 (citing 8 U.S.C. § 1182(d)(5)(A)).  As the Fifth
Circuit has noted, the language of the statute indicates parole is not mandatory and the
statute does not place procedural requirements on the Attorney General's exercise of
his authority under section 1182(d)(5)(A).  "Because petitioners' interests here are
contingent upon the Attorney General's discretion, they have no liberty interest in being
paroled." Id. (citing Velasco-Gutierrez v. Crossland, 732 F.2d 792 (10th Cir. 1984)).
See also Finlay v. Immigration and Naturalization Service, 210 F.3d 556, 557-58 (5th
Cir. 2000) (stating "the denial of discretionary relief does not rise to the level of a
constitutional violation, even if [petitioners] would have been eligible for it" (citing Tefel
v. Reno, 180 F.3d 1286, 1300 (11th Cir. 1999))).

Without a liberty interest in being paroled, there can be no procedural due
process violation.  Stated differently, any procedural rights granted to inadmissible

---

[8]Petitioners, however, were afforded the opportunity to be heard.  Pursuant to
the statute, immigration officials make a case-by-case determination of parole eligibility.
See 8 U.S.C. § 1182(d)(5)(A).  Indeed, several of the Petitioners in this petition actually
received parole after individual determinations.

11

aliens in Petitioners' position must originate from statute or regulation. Under the regulations promulgated by the agency, the Attorney General has delegated the above discretion and authority to District Directors and other agency officials. See 8 C.F.R. § 212.5 (2001). It is fully within INS's authority to promulgate regulations that foreclose hearings by immigration judges concerning parole determinations under section 1182(d)(5)(A). Similarly, it is within INS's authority to promulgate regulations requiring immigration officers to inform arriving aliens of the possibility of parole. In the absence of such regulations, it is not for this Court to impose additional requirements. When rights do not spring from the Due Process Clause itself, the courts cannot impose procedures that entitle Petitioners to rights they do not have under the Constitution.

## VI. **Conclusion**

The Court **DECLINES TO ADOPT** the final determination of the R&R and **DENIES** Petitioners' habeas petition [Dkt. No. 2]. Additionally, the Court

1. **DENIES AS MOOT** Petitioners' Motion for Temporary Restraining Order and Preliminary Injunction [Dkt. Nos. 3-1 & 3-2];

2. **DENIES AS MOOT** Petitioner Prado Rivera's Motion to be Joined as a Named Plaintiff [Dkt. No. 16];

3. **DENIES** Petitioners' Motion for Class Certification [Dkt. No. 18];

4. **GRANTS** Respondents' Motion to Dismiss [Dkt. No. 19]; and

5. **DENIES AS MOOT** Petitioners' Motion to Add Three New Named Plaintiffs, in Order to Counter Respondents' Arguments [Dkt. No. 36].

DONE this 10th day of September 2003, at Brownsville, Texas.

Hilda G. Tagle
United States District Judge